# EXHIBIT 3

# United States District Court
# Northern District of Illinois - CM/ECF LIVE, Ver 6.2.1 (Chicago)
# CIVIL DOCKET FOR CASE #: 1:18-cv-00367

Rockwell et al v. Pennsylvania Higher Education Assistance
Agency
Assigned to: Honorable John J. Tharp, Jr
Cause: 28:1331 Federal Question

Date Filed: 01/18/2018
Jury Demand: None
Nature of Suit: 480 Consumer Credit
Jurisdiction: Federal Question

## Plaintiff

**Hannah Rockwell**                     represented by   **Daniel A. Edelman**
Edelman, Combs, Latturner & Goodwin
LLC
20 South Clark Street
Suite 1500
Chicago, IL 60603
(312) 739-4200
Email: courtecl@edcombs.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anthony Jack Fiorentino , 1st**
Fiorentino Law Offices Ltd.
180 N. Lasalle Street
Suite 2440
Chicago, IL 60601
(312) 853-0050
Email: anthony@fiorentinolaw.com
*ATTORNEY TO BE NOTICED*

**Cassandra P. Miller**
Edelman, Combs, Latturner & Goodwin
LLC
20 South Clark Street
Suite 1500
Chicago, IL 60603
(312) 739-4200
Email: cmiller@edcombs.com
*ATTORNEY TO BE NOTICED*

**Cathleen M. Combs**
Edelman, Combs, Latturner & Goodwin
LLC
20 South Clark Street
Suite 1500
Chicago, IL 60603
(312) 739-4200
Email: ccombs@edcombs.com
*ATTORNEY TO BE NOTICED*

**James O. Latturner**
Edelman, Combs, Latturner & Goodwin
LLC
20 South Clark Street
Suite 1500
Chicago, IL 60603
(312) 739-4200
Email: jlatturner@edcombs.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Zack Strupeck**                    represented by    **Daniel A. Edelman**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

                                     **Anthony Jack Fiorentino , 1st**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **Cassandra P. Miller**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **Cathleen M. Combs**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **James O. Latturner**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stacey Puccini**                   represented by    **Daniel A. Edelman**
*on behalf of plaintiffs and class members*           (See above for address)
*described herein*                                    *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

                                     **Anthony Jack Fiorentino , 1st**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **Cassandra P. Miller**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **Cathleen M. Combs**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **James O. Latturner**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | |
|---|---|
| **Pennsylvania Higher Education Assistance Agency** *doing business as* Fedloan Servicing Inc. | represented by **Abby L Risner** Greensfelder, Hemker & Gale, P.c. 10 S. Broadway Suite 2000 St. Louis, MO 63102 (314) 241-9090 Email: alr@greensfelder.com *LEAD ATTORNEY* *PRO HAC VICE* *ATTORNEY TO BE NOTICED* |
| | **Elizabeth Ann Austermuehle** Greensfelder, Hemker & Gale, P.C. 200 W. Madison Street Suite 300 Chicago, IL 60606 (312) 419-9090 Email: eaustermuehle@greensfelder.com *ATTORNEY TO BE NOTICED* |
| | **John C. Drake** Greensfelder Hemker & Gale 10 South Broadway Suite 2000 St. Louis, MO 63102 (314) 345.5431 Email: jdrake@greensfelder.com *PRO HAC VICE* *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 01/18/2018 | 1 | COMPLAINT - *Class Action* filed by Hannah Rockwell, Stacey Puccini, Zack Strupeck; Jury Demand. Filing fee $ 400, receipt number 0752-14017419. (Attachments: # 1 Exhibit Exhibits A-L)(Edelman, Daniel) (Entered: 01/18/2018) |
| 01/18/2018 | 2 | CIVIL Cover Sheet (Edelman, Daniel) (Entered: 01/18/2018) |
| 01/18/2018 | 3 | ATTORNEY Appearance for Plaintiffs Stacey Puccini, Hannah Rockwell, Zack Strupeck by Daniel A. Edelman (Edelman, Daniel) (Entered: 01/18/2018) |
| 01/18/2018 | 4 | ATTORNEY Appearance for Plaintiffs Stacey Puccini, Hannah Rockwell, Zack Strupeck by Cassandra P. Miller (Miller, Cassandra) (Entered: 01/18/2018) |
| 01/18/2018 | 5 | ATTORNEY Appearance for Plaintiffs Stacey Puccini, Hannah Rockwell, Zack Strupeck by Cathleen M. Combs (Combs, Cathleen) (Entered: 01/18/2018) |
| 01/18/2018 | 6 | ATTORNEY Appearance for Plaintiffs Stacey Puccini, Hannah Rockwell, Zack Strupeck by James O. Latturner (Latturner, James) (Entered: 01/18/2018) |
| 01/18/2018 | | CASE ASSIGNED to the Honorable John J. Tharp, Jr. Designated as Magistrate Judge the Honorable Sheila M. Finnegan. (jjr, ) (Entered: 01/18/2018) |

| 01/18/2018 | 7 | NOTICE TO THE PARTIES - The Court is participating in the Mandatory Initial Discovery Pilot (MIDP). The key features and deadlines are set forth in the attached Notice which includes the MIDP Standing Order. Also attached is a checklist for use by the parties. In cases subject to the pilot, all parties must respond to the mandatory initial discovery requests set forth in the Standing Order before initiating any further discovery in this case. Please note: The discovery obligations in the Standing Order supersede the disclosures required by Rule 26(a)(1). Any party seeking affirmative relief must serve a copy of the attached documents (Notice to Parties and the Standing Order) on each new party when the Complaint, Counterclaim, Crossclaim, or Third-Party Complaint is served. (tt, ) (Entered: 01/18/2018) |
|---|---|---|
| 01/19/2018 | | SUMMONS Issued as to Defendant Pennsylvania Higher Education Assistance Agency. (kms) (Entered: 01/19/2018) |
| 01/23/2018 | 8 | ATTORNEY Appearance for Plaintiffs Stacey Puccini, Hannah Rockwell, Zack Strupeck by Anthony Jack Fiorentino, 1st *also represents plaintiff classes* (Fiorentino, Anthony) (Entered: 01/23/2018) |
| 02/12/2018 | 9 | SUMMONS Returned Executed by Hannah Rockwell, Stacey Puccini, Zack Strupeck as to Pennsylvania Higher Education Assistance Agency on 1/26/2018, answer due 2/16/2018. (Miller, Cassandra) (Entered: 02/12/2018) |
| 02/13/2018 | 10 | MINUTE entry before the Honorable John J. Tharp, Jr: This case is set for an initial status conference on 3/6/18 at 9:00 a.m. The parties are directed to review the procedures for initial status conferences, located at [http://www.ilnd.uscourts.gov], and to submit the required initial status report no later than 2/27/18. Mailed notice (sxw, ) (Entered: 02/13/2018) |
| 02/14/2018 | 11 | ATTORNEY Appearance for Defendant Pennsylvania Higher Education Assistance Agency by Elizabeth Ann Austermuehle (Austermuehle, Elizabeth) (Entered: 02/14/2018) |
| 02/14/2018 | 12 | MOTION by Defendant Pennsylvania Higher Education Assistance Agency for extension of time to file answer regarding complaint 1 *Unopposed* (Austermuehle, Elizabeth) (Entered: 02/14/2018) |
| 02/14/2018 | 13 | NOTICE of Motion by Elizabeth Ann Austermuehle for presentment of motion for extension of time to file answer 12 before Honorable John J. Tharp Jr. on 2/20/2018 at 09:00 AM. (Austermuehle, Elizabeth) (Entered: 02/14/2018) |
| 02/15/2018 | 14 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-14124715. (Risner, Abby) (Entered: 02/15/2018) |
| 02/15/2018 | 15 | ATTORNEY Appearance for Defendant Pennsylvania Higher Education Assistance Agency by Abby L Risner (Risner, Abby) (Entered: 02/15/2018) |
| 02/15/2018 | 16 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-14128455. (Drake, John) (Entered: 02/15/2018) |
| 02/16/2018 | 17 | MINUTE entry before the Honorable John J. Tharp, Jr: Attorneys Abby Risner and John Drake's motions for leave to appear pro hac vice 14 , 16 are granted. No appearance on the motions is required. Both attorneys are directed to file their appearances.Mailed notice (sxw, ) (Entered: 02/16/2018) |
| 02/20/2018 | 18 | MINUTE entry before the Honorable John J. Tharp, Jr:The defendant's motion for extension of time 12 is granted. No appearance on the motion is required. Defendant has until March 16, 2018 to file a responsive pleading or otherwise respond to the complaint. Mailed notice (air, ) (Entered: 02/20/2018) |
| 02/20/2018 | 19 | Attorney Appearance Form by Pennsylvania Higher Education Assistance Agency (Drake, |

John) (Entered: 02/20/2018)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/22/2018 13:59:17 | | | |
| **PACER Login:** | achristina:5288197:0 | **Client Code:** | 2825 |
| **Description:** | Docket Report | **Search Criteria:** | 1:18-cv-00367 |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HANNAH ROCKWELL, ZACK STRUPECK, and STACEY PUCCINI, on behalf of plaintiffs and class members described herein, | ) ) ) ) ) Civil Action No. |
| Plaintiffs, | ) ) ) |
| v. | ) Jury Trial Demanded ) |
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY doing business as FEDLOAN SERVICING INC., | ) ) ) ) |
| Defendant. | |

## COMPLAINT- CLASS ACTION

### INTRODUCTION

1.     Plaintiffs Hannah Rockwell, Zack Strupeck, and Stacey Puccini, individually and on behalf of all others similarly situated, allege the following against Defendant, Pennsylvania Higher Education Assistance Agency, ("PHEAA"), doing business as FedLoan Servicing Inc. Defendant 1) breached their servicing contract with the federal government, of which Plaintiffs were intended third party beneficiaries; 2) tortiously interfered with written agreements between the federal government and its student loan borrowers; and 3) violated various state and federal laws in connection with the servicing of Plaintiffs' federal student loans. Plaintiffs allege the following upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based on, among other things, independent investigation of the undersigned counsel.

### BACKGROUND ON FEDERAL STUDENT LOANS

2.     Federal student loans are loans that are either funded or guaranteed by the federal

1

government pursuant to Title IV of the Higher Education Act. They come with an array of repayment options to fit a student borrower's short-term and long-term needs.

3. The Department of Education offers several repayment plans for individuals with federal student loans. The "standard repayment plan" is the default payment plan. Under the standard repayment plan, monthly payments are calculated such that the borrower's balance is fully paid within 10-30 years. Borrowers who cannot afford payments under this plan are eligible to enroll in various income-driven repayment plans ("IDR plans") that offer significantly lower monthly payments. For instance, under the "Pay As You Earn" plan, the borrower's monthly payments are capped at ten percent of discretionary income, and the remaining debt is discharged after twenty years of qualifying payments. Under some IDR plans, monthly payments can be as low as zero dollars per month.

4. Borrowers enroll in IDR plans by submitting an IDR request form, along with proof of their adjusted gross income, to their designated loan servicer. Loan servicers are private entities that contract with the Department of Education to handle a multitude of issues for student borrowers, including enrollment in the various IDR plans described above.

5. One such loan servicer is Defendant, PHEAA, which is engaged in nationwide commercial student-loan financial services. In 2009, PHEAA established "Fedloan Servicing Inc." ("Fedloan") to assist the Department of Education in servicing federal loans. PHEAA now manages more than $100 billion in total assets, and administers the loans of nearly four million borrowers through its various programs.

6. PHEAA's statutory and contractual duties as a federal student loan servicer include:

    a. collecting and processing IDR application paperwork submitted by borrowers who request enrollment in, or renewal of, IDR plans;

2

    b.   providing borrowers with adequate notice of federally-mandated disclosures regarding IDR plans to ensure timely renewal of said plans;

    c.   assisting borrowers with enrollment in "direct debit" payment, whereby borrowers receive a 0.25% interest rate reduction if they consent to having monthly payments automatically debited from their bank accounts;

    d.   placing borrowers' loans into the appropriate type of forbearance, as needed, and in accordance with all applicable federal laws.

7.     PHEAA has breached its servicing contract with the federal government, of which Plaintiffs are intended third party beneficiaries, and tortiously interfered with Plaintiffs' contracts with the federal government, in the following ways:

    a.   Failing to provide borrowers with adequate notice of federally-mandated disclosures regarding IDR plan enrollment, which has resulted in the improper cancellation of such plans, and the need for costly forbearances;

    b.   Improperly applying "delinquency forbearances" to the accounts of borrowers who enroll in the direct debt program, causing them to incur significant costs not authorized by federal law;

    c.   Improperly failing to place borrowers' loans into an administrative forbearance, as required by law, when additional time was needed to process their IDR requests;

    d.   Improperly placing borrowers' loans into general forbearance status, in violation of federal law, causing them to incur costly interest capitalizations and to suffer delayed progress toward loan forgiveness;

    e.   Misprocessing borrowers' IDR applications, which has resulted in the improper cancellation of such plans.

8.     The Student Loan Ombudsman of the Consumer Financial Protection Bureau received 3,900 complaints from federal student loan borrowers between March 1, 2016 and August 31, 2016 relating to problems managing or repaying federal student loans.  2016 Annual Report of the CFPB Student Loan Ombudsman, available at https://www.consumerfinance.gov/data-research/research-reports/2016-annual-report-cfpb-student-loan-ombudsman/ (last visited January 17, 2018).

9.     An analysis of these complaints found that consumers with student loans identified a range of problems with payment processing, billing, customer service, borrower communications, and income-driven repayment (IDR) plan enrollment. *Id.*

10.     An analysis of 1,062 consumer complaints made against the top ten student loan servicers found that the most commonly cited issue was problems involving the processing and management of IDR plans, which accounted for 20% of all complaints. *Id.* Notably, complaints involving IDR processing accounted for 39% percent of all complaints made against PHEAA, nearly double the industry average. *Id.*  The second most frequent complaint of borrowers against PHEAA involved its communications with borrowers, which accounted for 15% of all complaints against PHEAA. *Id.*

11.     From March 1, 2016 to August 31, 2016, the CFPB received more complaints from federal student loan borrowers against PHEAA than it did against any other loan servicer, aside from Navient Corp., the nation's largest loan servicer. *Id.*

12.     PHEAA is aware of this problem, yet has failed to rectify it. Instead, PHEAA has consistently shifted the consequences of its processing failures onto the borrowers themselves.

**JURISDICTION ANDVENUE**

4

13.     This Court has subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because this lawsuit has been brought as a class action on behalf of proposed classes each in excess of 100 members; the aggregate claims of the Class members exceed $5 million exclusive of interest and costs; and one or more of the members of each Class is a citizen of a different state than Defendant.

14.     This Court has personal jurisdiction over the Defendant, PHEAA, doing business as Fedloan Servicing Inc., because Defendant does business in this District; and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES
### PLAINTIFF – HANNAH ROCKWELL

15.     Hannah Rockwell ("Ms. Rockwell" or "Plaintiff") is a citizen of the State of Illinois residing in the Northern District of Illinois.  She took out multiple federal student loans under the Federal Family Education Loan Program (FFELP).

16.     On March 25, 2013, these loans were consolidated into a Federal Direct Consolidation Loan Application and Promissory Note ("Ms. Rockwell's Note" hereinafter). *See* 2013 Federal Direct Consolidation Loan Application and Promissory Note, attached as Exhibit A.

17.     Ms. Rockwell's Note contains the following provisions:

a.  "The terms and conditions of loans made under this Note are determined by the [Higher Education Act] and other applicable federal laws and regulations . . . State law, unless it is preempted by federal law, may provide you with certain rights, remedies, and defenses in addition to those stated in the Note . . ."

b.  "Any notice required to be given to me will be effective if sent by first class mail to the most recent address that [the Department of Education] has for me, by electronic means to an address I have provided, or by any other method of notification permitted or required by applicable statute or regulation." *Id.*

### PLAINTIFF – ZACK STRUPECK

18.    Zack Strupeck ("Mr. Strupeck") is and was at all relevant times a citizen of the State of Illinois, residing in the Northern District of Illinois.  He took out federal direct loans to finance his education.  These loans are governed by a 2012 Master Promissory Note ("Mr. Strupeck's Note" hereinafter). *See* Strupeck's Master Promissory Note, attached as <u>Exhibit B</u>.

19.    Mr. Strupeck's Note contains the following provisions:

   a.    The terms of this [Note] will be interpreted in accordance with the Higher Education Act of 1965, as amended, (20 U.S.C. 1070 et seq.), the U.S. Department of Education's (ED's) regulations . . . and other applicable federal laws and regulations . . . Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this MPN."

   b.    "Under certain circumstances, we may . . . give you a forbearance without requiring you to submit a request or documentation.  These circumstances include . . . a period of up to 60 days in order for us to collect and process documentation related to your request for a . . . change in repayment plan (we do not capitalize the interest that is charged during this period)." *Id.*

### PLAINTIFF – STACEY PUCCINI

20.    Stacey Puccini ("Ms. Puccini") is and was at all relevant times a citizen of the State of Illinois, residing in the Northern District of Illinois.  She took out federal student loans between 2010 and 2015.  These loans are governed by a 2010 Master Promissory Note ("Ms. Puccini's Note hereinafter). *See* 2010 Federal Direct Consolidation Loan Application and Promissory Note, attached as <u>Exhibit C</u>.

21.    Ms. Puccini's Note contains the following provisions:

   a.    "The terms of this Application and Master Promissory Note (MPN) will be interpreted in accordance with the Higher Education Act of 1965, as amended (20. U.S.C. 1070 *et seq.*), the U.S. Department of Education's (ED's) regulations, as they may be amended in accordance with their effective date, and other applicable federal laws and regulations (collectively referred to as the "Act"). Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this MPN."

b. "Under certain circumstances, we may . . . give you a forbearance without requiring you to submit a request or documentation. These circumstances include . . . a period of up to 60 days in order for us to collect and process documentation related to your request for a deferment, forbearance, change in repayment plan, or consolidation loan (we do not capitalize the interest that is charged during this period). *Id.*

## DEFENDANT

22. PHEAA is an independent instrumentality, engaged in non-governmental commercial activity throughout the United States, including the state of Illinois. PHEAA is organized under Pennsylvania law as a miscellaneous business corporation, entity number 619191. Its principal offices are in Pennsylvania. Its registered agent and office is CT Corporation System, 600 North 2nd Street, #401, Harrisburg, Pennsylvania 17101.

23. PHEAA is financially independent of the state of Pennsylvania, generates its own commercial revenue, and makes its own fiscal and policy decisions.

24. PHEAA does business as Fedloan Servicing Inc. It contracts with the U.S. Department of Education to service student loans owned by the federal government.

25. In 2009, PHEAA was one of four "Title IV" servicers to be awarded a Federal Loan Servicing Contract by the Department of Education to service federally-owned loans nationally.

## APPLICABLE LAW ON IDR PLANS AND FORBEARANCES

26. When student borrowers enroll in an IDR plan, the plan is effective for a one-year period. In order to renew the plan for each subsequent year, borrowers must annually recertify their income level and family size by submitting a new IDR application, along with proof of income, to their loan servicer. 34 C.F.R. §685.221(e)(3).

27. Between 60 and 90 days prior to the expiration of the IDR plan, the loan servicer must send the borrower a written notice of the "annual deadline" by which the borrower must recertify the plan in order to continue making income-based payments. 34 C.F.R.

§685.221(e)(3)(i). This notice must include the consequences of failing to recertify the IDR plan by the annual deadline. Among these consequences are an increase in monthly payments from a low affordable amount to the amount dictated by the standard ten-year repayment plan. 34 C.F.R. §685.221(e)(7). Moreover, any accrued interest is capitalized, or added the borrower's loan balance, at the time IDR plan is cancelled. 34 C.F.R. §685.221(b)(5).

28.     In addition, for subsidized loans in the first three years of enrollment in an IDR plan, the federal government pays any accrued interest that is not covered by the borrower's monthly payments. When an IDR enrollee fails to recertify before the annual deadline, this valuable interest subsidy is lost.

29.     In view of these consequences, federal law provides certain protections for student borrowers enrolled in IDR plans. For instance, when a borrower timely submits his or her recertification materials, the loan servicer must "promptly" determine the new monthly payment amount. 34 C.F.R. §685.221(e)(8)(i). Thus, the loan servicer has an *affirmative duty* to efficiently process the borrower's recertification materials to ensure smooth re-enrollment from one year to the next. The Department of Education has determined that the appropriate turnaround time to process IDR applications is approximately fifteen days. *See* Danielle Douglas-Gabriel, *Delays. Backlogs. Confusing applications. Obama's latest student loan plan is having growing pains.* Washington Post, Apr. 5, 2016, https://www.washingtonpost.com/news/grade-point/wp/2016/04/05/delays-backlogs-confusing-applications-obamas-latest-student-loanplan-is-having-growing-pains/?utm_term= f858af50bdea).

30.     In addition, when the loan servicer receives a borrower's IDR renewal request prior to the annual deadline, the loan servicer is prohibited from cancelling the IDR plan while the request is being processed. Rather, the servicer "must maintain the borrower's current scheduled

monthly payment amount" until all materials and documents necessary to process the request have been completed and reviewed. 34 C.F.R. §685.221(e)(8)(ii).

31. A borrower's accrued interest may be capitalized if the borrower "chooses" to leave the income-based repayment plan or "no longer has a partial financial hardship." 34 C.F.R. §685.221(b)(4). Thus, if a borrower timely submits a request to renew an IDR plan, which demonstrates a continuing financial hardship and a choice to remain in the plan, the loan servicer may not capitalize the borrower's accrued interest.

32. If additional time is needed to collect and process documents supporting a timely submitted IDR request, loan servicers are to place the borrower's account on an administrative forbearance, pursuant to subsection 34 C.F.R. §685.205(b)(9). Under this provision, a borrower is entitled to a 60-day forbearance, with no resulting capitalization of interest, if the purpose of the forbearance is to allow the loan holder to collect and process documentation supporting the borrower's request for a "change in repayment plan." Because the annual recertification process for IDR plans often involves a change in the monthly repayment amount, due to changes in income and family size, and *always* involves a change in the annual payment period, the administrative forbearance provided under 34 C.F.R §685.205(b)(9) applies to the annual recertification process.

33. Moreover, all administrative forbearances must be granted "without requiring documentation from the borrower." 34 C.F.R. §685.205(b). Thus, loan servicers should grant administrative forbearances automatically when a borrower's IDR request is timely submitted, but the request has not been fully processed at the time the IDR plan expires.

34. In contrast to administrative forbearances under 34 C.F.R. §685.205(b), borrowers may request a "general" forbearance under certain circumstances. 34 C.F.R. §685.205(a). General

forbearances are not intended to provide loan servicers with additional time to process IDR requests. Generally, they are only permitted when one of the following situations is present:

    a) when the borrower is unable to make scheduled payments due to poor health or other acceptable reasons; 34 C.F.R. §685.205(a)(1).

    b) When the borrower's monthly payment is equal to or greater than 20 percent of the borrower's total monthly gross income; 34 C.F.R. §685.205(a)(6).

    c) When the borrower agrees to resume making payments after defaulting on the loan or loans. 34 C.F.R. §685.205(a)(8).

35.    General forbearances are far more costly to the borrower than administrative forbearances granted under 34 C.F.R. §685.205(b) because any unpaid interest that accrues during the forbearance gets "capitalized," or added to the borrower's loan balance. 34 C.F.R. §685.221(b)(5).

36.    General forbearances also differ from administrative forbearances in that, whereas the latter must be granted without requiring documentation from the borrower, the former are authorized only when the borrower "provides sufficient documentation" to justify a forbearance. 34 C.F.R. §685.205(a); see also OMB No. 1845-0018, attached as <u>Exhibit D</u>. The only exception to this documentation requirement is provided for under 34 C.F.R. §685.205(a)(8), which allows the servicer to grant a general forbearance based the borrower's "oral affirmation" to "repay the debt after default." Default is defined as the borrower's failure to make scheduled payments for a period of 270 days. 34 C.F.R. §685.102 (b).

37.    Additionally, whereas "general" forbearances are, in many cases, discretionary, administrative forbearances are mandatory when additional processing time is needed to review

an IDR application. (Whereas a loan servicer "may" grant forbearances under 34 C.F.R. §685.205(a)(8)(i), the servicer "grants forbearance" under 34 C.F.R. §685.205(b)(9)).

### PHEAA'S CONTRACT WITH THE DEPARTMENT OF EDUCATION TO SERVICE FEDERAL STUDENT LOANS

38.    The Department of Education awarded PHEAA a servicing contract in 2009 ("servicing contract"). *See* Servicing Contract, attached as Exhibit E. The servicing contract continues to be in force to the present, subject to various modifications.

39.    The servicing contract  states that "[s]pecific  compliance activities for servicing federally held assets include, but are not limited to, Attachments A-1 through A-3" attached thereto. *Id.* at page 19.

40.    Under Attachment A-1, servicers are required to "meet all statutory and legislative requirements." *Id.* Attachment A-1.  Moreover, "the servicer's procedures and systems shall include a system of internal controls that ensures resource use is consistent with laws, regulations and policies." *Id.*

41.    Under Attachment A-2, loan servicers may only promote services if they meet legislative and regulatory requirements, *Id.* Attachment A-2, and they must respond to written and email questions and requests timely and accurately to resolve customer complaints. *Id.*

42.    Attachment A-2 also requires that the servicer "meet all legislative and regulatory requirements for the Direct Loan Program." *Id.*

43.    Under Attachment A-3, loan servicers must offer a "0.25% interest rate reduction for borrowers making payments through electronic debit accounts." *Id.* Attachment A-3.

44.    Finally, the servicing contract requires the loan servicer to be "responsible for maintaining  a  full  understanding  of  all  federal  and  state  laws  and  regulations  and  FSA

11

requirements and ensuring that all aspects of the service continue to remain in compliance as changes occur." *Id.*

**FACTUAL ALLEGATIONS – STACEY PUCCINI**

45.     In October of 2016, the Department of Education created a modified version of OMB No. 1845-0102, the IDR request form, to replace its previous version of the form. *See* form at https://static.studentloans.gov/images/idrPreview.pdf. The revised version, however, displayed the same expiration date – October 31, 2018 – as did the previous version. *See* form at https://ifap.ed.gov/dpcletters/attachments/18450102IDRFINALExtended.pdf.

46.     Despite its 2016 revisions to OMB No. 1845-0102, the Department of Education continued to display the old version of the form on its website until at least January of 2018. *Id.* On January 13, 2018, a "google" search of the words "income based repayment form" produced the Department of Education's link to the old version of the form on the first page of results. *See* google search on "income based repayment form" attached as <u>Exhibit F</u>. A "google" search of the words "income driven repayment form" also produced this link on the first page of results. *See* google search on "income driven repayment form" attached as <u>Exhibit G</u>.

47.     Because the previous version of the form displayed an expiration date of October 31, 2018, and remained accessible on the Department of Education's website, PHEAA knew or should have known that borrowers would continue to use the old version of the form. PHEAA failed to take any steps to advise its borrowers to use the revised version of the form.

48.     On May 24, 2017, Stacey Puccini sent a completed IDR request form to PHEAA. *See* Ms. Puccini's May 24, 2017 IDR request, attached as <u>Exhibit H</u>. She used the version of the form that was in use prior to the 2016 revisions, which displayed an expiration date of October 31, 2018. Ms. Puccini had accessed this version of the IDR form at the webpage maintained by Federal

Student Aid, an Office of the Department of Education. *See* https://ifap.ed.gov/dpcletters/attachments/18450102IDRFINALExtended.pdf

49. On June 22, 2017, PHEAA sent a letter to Ms. Puccini, informing her that PHEAA could not process her request because the version of the IDR request form she had submitted was expired. *See* June 22, 2017 denial letter, attached as <u>Exhibit I</u>. The letter instructed Ms. Puccini to complete and send the revised version of the IDR request form, a copy of which was enclosed with the letter.

50. Despite the fact that more time was needed to collect and process additional documentation supporting Ms. Puccini's request for a change in repayment plan (from the default "standard repayment plan" to an income-driven plan), PHEAA did not place Ms. Puccini's loans into a 60-day administrative forbearance, pursuant to 34 C.F.R. §685.205(b)(9), when it denied her IDR request. Had it done so, any interest that accrued during the remaining processing of her request would not have been capitalized, or added to her loan balance.

51. Shortly after her first IDR request was denied, Ms. Puccini completed and signed the revised version of the IDR request form and sent it to PHEAA. On July 27, 2017, PHEAA sent a letter to Ms. Puccini, informing her that her second IDR request form could not be processed because it contained "conflicting information." *See* July 27, 2017 letter, attached as <u>Exhibit J</u>. Ms. Puccini called PHEAA's customer service line and inquired as to why her second IDR request was denied. A representative explained that she had answered a question that she was supposed to leave blank, based on her answer to a previous question. (In fact, the information was not "conflicting." Plaintiff merely answered a question that she was not required to answer.) Enclosed with the letter was an additional IDR request form. The letter instructed Ms. Puccini to complete and return the enclosed form with all required documents. *See* <u>Exhibit J</u>.

52.     Despite the fact that more time was needed to collect and process additional documentation supporting Ms. Puccini's request for a change in repayment plan (from the default "standard repayment plan" to an income-driven plan), PHEAA did not place Ms. Puccini's loans into a 60-day administrative forbearance, pursuant to 34 C.F.R. §685.205(b)(9), when it denied her second IDR request.  Had it done so, any interest that accrued during the remaining processing of her request would not have been capitalized, or added to her loan balance.

### FACTUAL ALLEGATIONS – HANNAH ROCKWELL
### IMPROPER NOTICE

53.     Hannah Rockwell signed a Federal Direct Consolidation Loan Application and Promissory Note on March 25, 2013, *See* Exhibit A, which combined her multiple federal student loans into a single loan.  In May of 2014, PHEAA was designated as her loan servicer.

54.     In June of 2016, Ms. Rockwell applied to enroll in the "Revised Pay As You Earn" plan ("REPAYE"), under which monthly payments are limited to ten percent of the borrower's discretionary income.  Her request was approved on June 30, 2016, and her monthly payment under the plan was calculated at $643.35, with the first installment being due on July 7, 2016.

55.     PHEAA did not send Ms. Rockwell written notification of the approval or terms of the plan, either by first class mail, or to an electronic address that Ms. Rockwell had provided to PHEAA.  Rather, PHEAA uploaded an electronic notice of the approval and terms of the plan to a "paperless inbox," a secured online account on PHEAA's website, that PHEAA assigned to Ms. Rockwell. To access the paperless inbox, borrowers are required to log into their online account with an individual username and password.

56.     Ms. Rockwell was not aware that any correspondence regarding her IDR plan was uploaded to her online account.  Because she did not receive any emails or letters regarding her IDR request, she was not aware that her IDR request had been approved.

14

57.     In July of 2016, PHEAA began uploading monthly billing statements to Ms. Rockwell's paperless inbox, but did not send copies of these statements to her by first class mail or by email. Because she did not receive these billing statements, Ms. Rockwell missed multiple monthly payments between June of 2016 and January of 2017, causing her loans to become delinquent.

58.     By January of 2017, Ms. Rockwell still had not received any emails, letters, or billing statements regarding her requested IDR plan. At or around this time, she called PHEAA's customer service line to inquire as to the status of her IDR request. A PHEAA representative informed her that the request had been approved six months earlier, and that she had failed to make monthly payments ever since. The representative also advised Ms. Rockwell that she could avoid missing future payments by enrolling in PHEAA's "direct debit" program, whereby monthly payments are automatically debited from the borrower's bank account. The representative also advised that borrowers who enroll in direct debit receive an interest rate reduction of 0.25%.

59.     In order to miss any future payments, Ms. Rockwell agreed to enroll in direct debit, and provided her bank account and routing information in writing. Her direct debit plan was approved, and timely payments were processed for the remainder of the annual payment period.

60.     On March 24, 2017, PHEAA uploaded a renewal notice to Ms. Rockwell's paperless inbox on PHEAA's website. The notice stated that Ms. Rockwell's IDR plan would soon expire unless she submitted a new IDR request with supporting documentation by May 27, 2017. The notice warned that a failure to do so would result in the capitalization of any unpaid interest, and an increase in monthly payments to $1,704.48. PHEAA did not, however, send this notice to Ms. Rockwell by first class mail or by email.

15

61.     Because Ms. Rockwell did not receive written notification of her IDR plan's renewal deadline, she was unable to recertify the plan before its expiration.  As a result, PHEAA increased her monthly payments to $1,704.48, and added $558.76 of unpaid interest to her loan balance.

62.     Ms. Rockwell's Note states as follows: "Any notice required to be given to me will be effective if sent by first class mail to the most recent address that ED has for me, by electronic means to an address I have provided, or by any other method of notification permitted or required by applicable statute or regulation." *See* Exhibit A at page 4. (Emphasis added)

63.     Under federal law, when a borrower is enrolled in an IDR plan, the loan servicer must send the borrower written notification of the borrower's enrollment, the start and end dates of the annual period, the monthly repayment amount under the plan, and information on how to renew the plan at the end of the annual payment period. 34 C.F.R. §685.221(e)(2). Between 60 and 90 days prior to the expiration of the plan, the loan servicer must send the borrower a written notice of the "annual deadline" by which the borrower must recertify the plan in order to continue making income-based payments. 34 C.F.R. §685.221(e)(3)(i). This notice must include the consequences of failing to recertify before the annual deadline, including an increase in monthly payments from a low affordable amount to the amount dictated by the standard ten-year repayment plan, and the capitalization of any accrued interest at the time IDR plan is cancelled. 34 C.F.R. §685.221(b)(5).

64.     It has been a regular practice of PHEAA to encourage its borrowers to "go paperless" by consenting to receive correspondence from PHEAA electronically.  For instance, borrowers who visit their online account will often be shown a banner that reads, "Would you like to go paperless?  We've made it easy to go paperless, so there's no reason to keep getting paper

communication in the mail. Our FREE service reduces clutter and helps the environment too!" *See* "paperless inbox" banner ad, attached as Exhibit K.

65.     Borrowers who consent to "go paperless" reasonably believe that electronic notices will be sent directly to the email address they have provided to PHEAA, pursuant to the promissory note, and therefore do not frequently access their paperless inbox.  As a result, they do not receive their federally-mandated disclosures regarding the status of the IDR plans.

66.     When legally required notices are uploaded to a borrower's paperless inbox, PHEAA will, in some instances, send the borrower an email stating that a "message" is available on borrower's online account.  However, neither the subject line of these emails, nor their content, make any reference to the substance of the notice.  Rather, these emails will vaguely state, "A new message has been placed in your Fedloan Servicing paperless inbox.  To access this message, select 'Go To Paperless inbox' below and sign in.  Or go to Account Access at MyFedloan.org to view your paperless inbox." *See* PHEAA email, attached as Exhibit L.

67.     Written notification regarding the terms of an IDR plan, and instructions on the recertification process, are legally required disclosures.  Thus, under the terms of Ms. Rockwell's Note, PHEAA was required to send her these disclosures by first class email, or to an email address that she provided.  PHEAA did neither.

68.     PHEAA's servicing contract with the federal government states that "borrowers whose loans are not being serviced in compliance with the Requirements, Policy, and Procedures for servicing federally held debt due to the fault of the servicer (i.e. . . notices sent properly . . .) will not be billable to the Government from the initial point of non-compliance." *See* Exhibit F at page 12. Because PHEAA has billed the federal government for servicing practices that violated

17

the notice policies set forth in the federal promissory note, PHEAA has breached the servicing contract, of which Ms. Rockwell was an intended third party beneficiary.

**FACTUAL ALLEGATIONS – HANNAH ROCKWELL**
**ABUSE OF DIRECT DEBIT**

69.     In or about January of 2017, a PHEAA representative advised Ms. Rockwell to enroll in PHEAA's "direct debit" program, whereby monthly payments are automatically debited from the borrower's bank account. The representative also advised that direct debit participants receive an interest rate reduction of 0.25%. Ms. Rockwell agreed to enroll, and provided her bank account and routing information in writing.

70.     PHEAA approved Ms. Rockwell's direct debit application, but it first applied a "delinquency forbearance" to bring her account current. The delinquency forbearance was applied retroactively to cover the delinquent period of June 27, 2016, through January 12, 2017 (when Ms. Rockwell missed several payments because she did not receive her monthly billing statements). The delinquency forbearance was applied automatically, and without Ms. Rockwell's consent.

71.     As a result of the delinquency forbearance, over $5,000 in unpaid interest was added to Ms. Rockwell's loan balance. PHEAA did not inform Ms. Rockwell that enrollment in the direct debit program would cause her to incur a capitalization of unpaid interest.

72.     No provision of 34 C.F.R. §682.211 or 34 C.F.R. §685.205, which govern the use of forbearances placed on federal student loans, authorizes the use of a delinquency forbearance when a borrower enrolls in a direct debit program. By engaging in this practice, Defendant violated federal law.

73.     Because Ms. Rockwell's written agreement with the federal government requires compliance with all applicable federal law, PHEAA tortiously interfered with the performance of the agreement by unlawfully placing a delinquency forbearance on her account.

74.     Because PHEAA's servicing contract requires compliance with applicable federal law, the aforementioned practice constitutes a breach of the servicing contract, of which Ms. Rockwell was an intended third-party beneficiary.

75.     Alternatively, even if a delinquency forbearance was properly applied to Ms. Rockwell's account, PHEAA should have informed her that any benefit from the 0.25% interest rate reduction would be offset and outweighed by the resulting capitalization of unpaid interest.

## FACTUAL ALLEGATIONS – ZACK STRUPECK

76.     Zack Strupeck took out multiple federal Direct Loans to cover the cost of his post-graduate education.  The terms of his loans are set forth in a Master Promissory Note.  *See* MPN attached as Exhibit B. *See* Strupeck Note, attached as Exhibit B.

77.     When Mr. Strupeck entered into repayment, the Department of Education designated PHEAA as his loan servicer.  In 2015, he enrolled in an IDR plan.  During the first annual payment period, Mr. Strupeck's monthly payments were $0 per month, based on his most recent tax filing.

78.     After securing fulltime employment as a public defender, Mr. Strupeck submitted an electronic IDR request to renew his payment plan for the following year, accompanied by proof of his new income. His electronic request was received by PHEAA on September 16, 2016, prior to the annual renewal deadline. Mr. Strupeck also timely submitted a paper copy of the IDR request, which PHEAA received on September 17, 2016.  Both IDR request forms were properly completed, and accompanied by proof of Mr. Strupeck's income.

19

79.     Mr. Strupeck's IDR request was approved on November 17, 2016, with income-based monthly payments calculated at $423.06.  Mr. Strupeck made a timely payment in this amount for the first month of the annual payment period.  However, on November 24, 2016, PHEAA inexplicably cancelled Mr. Strupeck's IDR plan and switched him to a monthly payment of $894.76.  This amount reflected Mr. Strupeck's placement on the standard ten-year repayment plan.  On December 20, 2016, Mr. Strupeck received a bill for $894.76, which was due on January 10, 2017.

80.     On or about December 23, 2016, Mr. Strupeck called the PHEAA customer service line and informed a PHEAA representative that his IDR request had initially been approved, but was cancelled only a week later.  The representative advised that the cancellation of the IDR plan was based on a "lender error."  Mr. Strupeck asked that the error be resolved so that he could continue making monthly payments of $423.06.  The PHEAA representative assured Mr. Strupeck that the matter would be resolved prior to his next payment deadline of January 10, 2017, and that PHEAA would follow-up with a telephone call to confirm the renewal of his IDR plan once the error was fixed.

81.     On or about January 7, 2016 – three days prior to his next payment deadline – Mr. Strupeck still had not received a follow-up call from PHEAA.  He called the customer service line to inquire as to the status of his IDR request, whereupon a PHEAA representative informed him that the processing error had still not been resolved.  Mr. Strupeck informed the representative that he could not afford monthly payments of $894.76, and asked if he could continue making payments in the amount of $423.06 to avoid any adverse consequences from non-payment.  The representative informed Mr. Strupeck that a partial payment would cause his loans to become

delinquent, and that a partial payment would not count as a qualifying payment toward Public Service Loan Forgiveness (PSLF).

82.     The PHEAA representative advised Mr. Strupeck that, short of making payments of $894.76, the only way to avoid delinquency was to place his account into forbearance status while the error was resolved.  A general forbearance was then processed over the phone.

83.     Because Mr. Strupeck wished to continue making monthly payments that would count toward PSLF, and did not wish to place his loans into forbearance, he did not provide PHEAA with any documentation in support of a forbearance request.

84.     At no time did PHEAA place Mr. Strupeck's loans into administrative forbearance status while it reviewed his IDR request to resolve its own processing error.

85.     On March 1, 2017 – more than four months after PHEAA received Mr. Strupeck's IDR requests – his IDR plan was finally renewed.  The accrued interest that was capitalized at the end of this forbearance amounted to $5,715.93, allowing PHEAA to benefit from its own error.

86.     Mr. Strupeck's loans were placed in forbearance from January 10, 2017 to April 30, 2017.  During this period, he was unable to make any qualifying payments toward PSLF.

87.     If a loan servicer receives a borrower's recertification materials prior to the specified recertification deadline, the loan servicer is prohibited from switching the borrower to the standard ten-year plan while it processes those materials.  Rather, the servicer "must maintain the borrower's current scheduled monthly payment amount until the loan holder determines the new monthly payment amount." 34 C.F.R. §685.221(e)(8)(ii). By cancelling Mr. Strupeck's IDR plan, placing him on the standard repayment plan, and refusing to allow continued income-based payments, despite his timely submission of an IDR renewal request, PHEAA violated federal law.

88.     Under 34 C.F.R. §685.205(a), a forbearance is authorized only when the borrower

"provides sufficient documentation" to support his or her request for forbearance. The only exception to this documentation requirement is provided for under 34 C.F.R. §685.205(a)(8), which allows a servicer to apply a general forbearance based on the borrower's "oral affirmation" to "repay the debt after default." Default is defined as the borrower's failure to make scheduled payments for a period of 270 days. 34 C.F.R. §685.102(b). Because Mr. Strupeck did not submit any documentation requesting a forbearance, and did not fail to make any scheduled payments during his first year under the IDR plan, PHEAA violated federal law by improperly, and without a legal basis, placing his loans into general forbearance.

89.    If a borrower timely submits an IDR renewal request, the servicer must "promptly" determine the borrower's new monthly payment amount. 34 C.F.R. §685.221(e)(8)(i). Thus, the loan holder has an affirmative legal duty to process the borrower's recertification materials in a timely manner. PHEAA violated federal law by taking more than four months to correctly process Mr. Strupeck's IDR request, despite the Department of Education's determination that IDR requests should be processed within 15 days. *See* Danielle Douglas-Gabriel, *Delays. Backlogs. Confusing applications. Obama's latest student loan plan is having growing pains.* Washington Post, Apr. 5, 2016, https://www.washingtonpost.com/news/grade-point/wp/2016/04/05/delays-backlogs-confusing-applications-obamas-latest-student-loanplan-is-having-growing-pains/?utm_term= f858af50bdea).

90.    A borrower is entitled to a 60-day administrative forbearance, with no resulting capitalization of interest, if the purpose of the forbearance is to allow the loan holder to "collect and process documentation supporting the borrower's request for . . . change in repayment plan." 34 C.F.R. §685.205(b)(9). By failing to place Mr. Strupeck's loans into a 60-day administrative forbearance to resolve its own error, and instead placing his loans into general forbearance status

for a period of more than four months, and capitalizing the interest that accrued therein, PHEAA violated federal law and profited from its own inefficiencies.

91.     Because PHEAA's servicing contract requires compliance with all applicable federal law, the aforementioned practices constitute a breach of the servicing contract, of which Mr. Strupeck was an intended third-party beneficiary.

92.     Because Mr. Strupeck's written agreement with the federal government requires compliance with applicable federal law, the aforementioned practices constitute tortious interference with the performance of the contract.

## CLASS  ACTION ALLEGATIONS

93.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(l), (b)(2), and/or (b)(3) on behalf of the following proposed Classes:

### NATIONWIDE GENERAL FORBEARANCE CLASS

All individuals with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action, were enrolled in a forbearance pursuant to 34 C.F.R. §685.205(a), but who did not submit any documentation to PHEAA requesting a forbearance, and who did not fail to make scheduled payments for at least 270 days prior to the forbearance.

### NATIONWIDE ADMINISTRATIVE FORBEARANCE CLASS

All individuals with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action, timely submitted an IDR request that was denied because of alleged errors in completing the form, or because the version of the form was outdated, but who were not granted a 60-day administrative forbearance, with no resulting capitalization of interest, to submit a new IDR request and/or additional supporting documents.

### NATIONWIDE FAILURE-TO-NOTIFY CLASS

All individuals with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action:

1. were enrolled in an IDR plan, but did not receive written notification of the annual renewal deadline in a letter sent by first class mail, or in an email sent to an email address provided to PHEAA by the borrower, and who failed to timely renew the plan, and/or

2. requested enrollment in an IDR plan, but did not receive written notification of their enrollment in the plan in a letter sent by first class mail, or in an email sent to an email address provided to PHEAA by the borrower, and/or

3. were issued billing statements that were not sent by first class mail, or to an email address provided to PHEAA by the borrower.

## NATIONWIDE DIRECT-DEBIT CLASS

All individuals with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action, had a delinquency forbearance applied to their loans as a result of enrolling in the direct debit program.

## NATIONWIDE FAILURE TO PROCESS CLASS

All individuals with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action, were enrolled in an IDR plan, and submitted a request to renew the plan, which was received prior to the annual deadline, but who were nonetheless removed from the plan due to PHEAA's processing errors and/or delays.

## ILLINOIS GENERAL FORBEARANCE CLASS

All Illinois residents with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action, were enrolled in a forbearance pursuant to 34 C.F.R. §685.205(a), but who did not submit any documentation to PHEAA requesting a forbearance, and who did not fail to make scheduled payments for at least 270 days prior to the forbearance.

## ILLINOIS ADMINISTRATIVE FORBEARANCE CLASS

All Illinois residents with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this

action, timely submitted an IDR request that was denied because of alleged errors in completing the form, or because the version of the form was outdated, but who were not granted a 60-day administrative forbearance, with no resulting capitalization of interest, to submit a new IDR request and/or additional supporting documents.

## ILLINOIS FAILURE-TO-NOTIFY CLASS

All Illinois residents with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action:

1. were enrolled in an IDR plan, but did not receive written notification of the annual renewal deadline in a letter sent by first class mail, or in an email sent to an email address provided to PHEAA by the borrower, and who failed to timely renew the plan, and/or

2. requested enrollment in an IDR plan, but did not receive written notification of their enrollment in the plan in a letter sent by first class mail, or in an email sent to an email address provided to PHEAA by the borrower, and/or

3. were issued billing statements that were not sent by first class mail, or to an email address provided to PHEAA by the borrower.

## ILLINOIS DIRECT-DEBIT CLASS

All Illinois residents with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action, had a delinquency forbearance applied to their loans as a result of enrolling in the direct debit program.

## ILLINOIS FAILURE TO PROCESS CLASS

All Illinois residents with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action, were enrolled in an IDR plan, and submitted a request to renew the plan, which was received prior to the annual deadline, but who were nonetheless removed from the plan due to PHEAA's processing errors and/or delays.

## CAUSES OF ACTION

## COUNT I - TORTIOUS INTERFERENCE WITH CONTRACT
### (Zack Strupeck and the Nationwide General Forbearance Class against Defendant for Tortious Interference with the Promissory Note)

95.     Plaintiff Zack Strupeck repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

96.     Plaintiff brings this Count on behalf of members of the Nationwide General Forbearance Class.

97.     At all relevant times, Plaintiff and members of the Class had a valid and enforceable contract with the federal government.

98.     The contracts between the federal government and Plaintiffs and members of the Class required compliance with all applicable federal law.

99.     By placing the loans of Plaintiff and members of the Class into general forbearance status, without documentation to support a request for forbearance, and in the absence of any default on said loans, Defendant violated federal law.

100.     Defendant was aware of the aforementioned contracts, and intentionally and unjustifiably induced the federal government to breach these contracts, through its own acts as agent for the federal government, by placing the loans of Plaintiff and members of the Class into general forbearance status in violation of federal law.

101.     Because the contracts between the federal government and Plaintiff and members of the Class required compliance with all applicable federal law, Defendant's violations thereof tortiously interfered with the performance of the contracts.

102.     Alternatively, even if it is determined that the practices described above did not induce a breach of the express terms of the contracts between the federal government and

26

Plaintiff and the Class, these practices nonetheless induced a breach of the covenant of good faith and fair dealing implied in the contracts.

103.     As a result of Defendant's tortious interference with the performance of the contracts between Plaintiff and the federal government, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to (i) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (ii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

## **COUNT II – BREACH OF CONTRACT**

### **(Zack Strupeck and the Nationwide General Forbearance Class against Defendant for Breach of the Servicing Contract)**

104.     Plaintiff Zack Strupeck repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

105.     Plaintiff brings this Count on behalf of members of the Nationwide General Forbearance Class.

106.     At all relevant times, Defendant was party to a valid and enforceable servicing contract with the federal government, of which Plaintiff and members of the Class were intended third party beneficiaries.

107.     The servicing contract between Defendant and the federal government required compliance with all applicable federal law.

108.     By placing the loans of Plaintiff and members of the Class into general forbearance status, without documentation to support a request for forbearance, and in the absence of any default on said loans, Defendant violated federal law.

109.     Because the servicing contract required compliance with applicable federal law, Defendant's violations thereof constituted a breach of the contract.

110.     Alternatively, even if it is determined that the practices described above did not induce a breach of the servicing contract, these practices nonetheless induced a breach of the covenant of good faith and fair dealing implied in the contract.

111.     As a result of Defendant's breach of the servicing contract, of which Plaintiff and members of the Class were intended third party beneficiaries, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to (i) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (ii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

## COUNT III -  TORTIOUS INTERFERENCE WITH CONTRACT

**(Stacey Puccini and the Nationwide Administrative Forbearance Class against Defendant for Tortious Interference with the Promissory Note)**

112.     Plaintiff Stacey Puccini repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

113.     Plaintiff brings this Count on behalf of members of the Nationwide Administrative Forbearance Class.

114.     At all relevant times, Plaintiff and members of the Class had a valid and enforceable contract with the federal government.

115.     The contracts between the federal government and Plaintiff and members of the Class required compliance with all applicable federal law.

116. By failing to place the loans of Plaintiff and members of the Class into a 60-day administrative forbearance, with no resulting capitalization of interest, despite the fact that additional time was needed to collect and process documentation in support of a timely submitted IDR plan request, Defendant violated federal law.

117. Defendant was aware of the aforementioned contracts, and intentionally and unjustifiably induced the federal government to breach these contracts, through its own acts as agent for the federal government, by failing to place the loans of Plaintiff and members of the Class into a 60-day administrative forbearance, with no resulting capitalization of interest, despite the fact that additional time was needed to collect and process documentation in support of a timely submitted IDR plan request.

118. Because the contracts between the federal government and Plaintiff and members of the Class required compliance with all applicable federal law, Defendant's violations thereof tortiously interfered with the performance of the contracts.

119. Alternatively, even if it is determined that the practices described above did not induce a breach of the express terms of the contracts between the federal government and Plaintiff and the class, these practices nonetheless induced a breach of the covenant of good faith and fair dealing implied in the contracts.

120. As a result of Defendant's tortious interference with the performance of the contracts between Plaintiff and the federal government, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same.

## <u>COUNT IV - BREACH OF CONTRACT</u>

**(Stacey Puccini and the Nationwide Administrative Forbearance Class against Defendant for Breach of the Servicing Contract)**

121.    Plaintiff Stacey Puccini repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

122.    Plaintiff brings this Count on behalf of members of the Nationwide Administrative Forbearance Class.

123.    At all relevant times, Defendant was party to a valid and enforceable servicing contract with the federal government, of which Plaintiff and members of the Class were intended third party beneficiaries.

124.    The servicing contract between Defendant and the federal government required compliance with all applicable federal law.

125.    By failing to place the loans of Plaintiff and members of the Class into a 60-day administrative forbearance, with no resulting capitalization of interest, despite the fact that additional time was needed to collect and process documentation in support of a timely submitted IDR plan request, Defendant violated federal law.

126.    Because the servicing contract required compliance with all applicable federal law, Defendant's violations thereof constituted a breach of the servicing contract.

127.    Alternatively, even if it is determined that the practices described above did not constitute a breach of the express terms of the servicing contract, these practices nonetheless constituted a breach of the covenant of good faith and fair dealing implied in the contract.

128.    As a result of Defendant's breach of the servicing contract, of which Plaintiff and members of the Class were intended third party beneficiaries, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same.

30

## COUNT V - TORTIOUS INTERFERENCE WITH CONTRACT

**(Hannah Rockwell and the Nationwide Failure to Notify Class against Defendants for Tortious Interference with the Promissory Note)**

129.    Plaintiff Hannah Rockwell repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

130.    Plaintiff brings this Count on behalf of members of the Nationwide Failure to Notify Class.

131.    At all relevant times, Plaintiff and members of the Class had a valid and enforceable contract with the federal government.

132.    The contracts between the federal government and Plaintiff and members of the Class required that all legally required notices be sent to Plaintiff and members of the Class by first class mail, or electronically to an address provided by the borrower, unless otherwise permitted by federal law.

133.    Defendant failed to send legally required notices regarding IDR plan enrollment to Plaintiff and members of the Class by first class mail or electronically to an address provided by Plaintiff and members of the Class.

134.    Defendant's practice of posting legally required notices regarding IDR plan enrollment to Defendant's own website is not a manner of notice that is otherwise permitted by federal law.

135.    Defendant was aware of the aforementioned contracts, and intentionally and unjustifiably induced the federal government to breach these contracts, through its own acts as agent for the federal government, by using a method of notice that does not satisfy the notice requirements set forth in the borrowers' contracts.

31

136.    By failing to provide notice as provided in the contracts between the federal government and Plaintiff and members of the Class, Defendant tortiously interfered with the performance of the contracts.

137.    Alternatively, even if it is determined that the practices described above did not induce a breach of the express terms of the contracts between the federal government and Plaintiff and the class, these practices nonetheless induced a breach of the covenant of good faith and fair dealing implied in the contracts.

138.    As a result of Defendant's tortious interference with the performance of the contracts between Plaintiff and the federal government, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, (i) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; (ii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

## COUNT VI – BREACH OF CONTRACT

**(Hannah Rockwell and the Nationwide Failure to Notify Class against Defendants for Breach of the Servicing Contract)**

139.    Plaintiff Hannah Rockwell repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

140.    Plaintiff brings this Count on behalf of members of the Nationwide Failure to Notify Class.

141.    Defendant was party to a valid and enforceable servicing contract with the federal government, of which Plaintiff and members of the Class were intended third party beneficiaries.

142.     The servicing contract between Defendant and the federal government prohibited Defendant from billing services to the federal government that were not provided in compliance with the requirements, policy, and procedures for servicing federally held debt.

143.     Defendant failed to send legally required notices regarding IDR plan enrollment to Plaintiff and members of the Class by first class mail or electronically to an address provided by Plaintiff, as provided in the contracts between the federal government and Plaintiff and members of the Class.

144.     Because Defendant's method of issuing legally required notices regarding IDR plan enrollment does not conform to the policies, procedures, and requirements for servicing federally held debt, as set forth in the federal promissory note, Defendant has breached the servicing contract.

145.     Alternatively, even if it is determined that the practices described above did not constitute a breach of the express terms of the servicing contract, the aforementioned practice nonetheless constitutes a breach of the covenant of good faith and fair dealing implied in the contract.

146.     As a result of Defendant's breach of the servicing contract, of which Plaintiff and members of the Class are third party beneficiaries, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, (i) unpaid interest added to the principal  balance of loans along with amounts accrued as a result of the capitalization of same; (ii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

**COUNT VII -  TORTIOUS INTERFERENCE WITH CONTRACT**

**(Hannah Rockwell and the Nationwide Direct Debit Class against Defendants for Tortious Interference with the Promissory Note)**

147.     Plaintiff Hannah Rockwell repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

148.     Plaintiff brings this Count on behalf of members of the Nationwide Direct Debit Class.

149.     At all relevant times, Plaintiff and members of the Class had a valid and enforceable contract with the federal government.

150.     The contracts between the federal government and Plaintiff and members of the Class required compliance with applicable federal law.

151.     No provision of 34 C.F.R. §682.211 or 34 C.F.R.§685.205, which authorize the use of forbearances in connection with federal student loans under certain circumstances, authorizes the use of a forbearance when a borrower enrolls in a direct debit program. By engaging in this practice, Defendant violated federal law.

152.     Defendant was aware of the aforementioned contracts, and intentionally and unjustifiably induced the federal government to breach these contracts, through its own acts as agent for the federal government, by applying delinquency forbearances to the accounts of direct debit applicants, which were not authorized by federal law.

153.     Because the contracts between the federal government and Plaintiff and members of the Class required compliance with applicable federal law, Defendant tortiously interfered with the performance of these contracts by engaging in the aforementioned practice.

154.     Alternatively, even if it is determined that the practices described above did not induce a breach of the express terms of the contracts between the federal government and

Plaintiff and the Class, these practices nonetheless induced a breach of the covenant of good faith and fair dealing implied in the contracts.

155.     As a result of Defendant's tortious interference with the performance of the contracts between Plaintiff and the federal government, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, (i) unpaid interest added to the principal  balance of loans along with amounts accrued as a result of the capitalization of same; (ii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

## COUNT VIII – BREACH OF CONTRACT

### (Hannah Rockwell and the Nationwide Direct Debit Class against Defendant for Breach of the Servicing Contract)

156.     Plaintiff Hannah Rockwell repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

157.     Plaintiff brings this Count on behalf of members of the Nationwide Direct Debit Class.

158.     Defendant was party to a valid and enforceable servicing contract with the federal government, of which Plaintiff and members of the Class were intended third party beneficiaries.

159.     The servicing contract between Defendant and the federal government required compliance with applicable federal law.

160.     No provision of 34 C.F.R. §682.211 or 34 C.F.R. §685.205, which authorize the use of forbearances in connection with federal student loans under certain circumstances,

authorizes the use of a forbearance when a borrower enrolls in a direct debit program. By engaging in this practice, Defendant violated federal law.

161.    Defendant was aware of the aforementioned contracts, and intentionally and unjustifiably induced the federal government to breach these contracts, through its own acts as agent for the federal government, by applying delinquency forbearances to the accounts of direct debit applicants, which were not authorized by federal law.

162.    Because the servicing contract required compliance with applicable federal law, Defendant breached the servicing contract by engaging in the aforementioned practice.

163.    Alternatively, even if it is determined that the aforementioned practice did not constitute a breach of the express terms of the servicing contract, it nonetheless induced a breach of the covenant of good faith and fair dealing implied in the contract.

164.    As a result of Defendant's breach of the servicing contract, of which Plaintiff and members of the Class are intended third party beneficiaries, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, (i) unpaid interest added to the principal  balance of loans along with amounts accrued as a result of the capitalization of same; (ii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

## **COUNT IX -  TORTIOUS INTERFERENCE WITH CONTRACT**

**(Zack Strupeck and the Failure to Process Class against Defendant for Tortious Interference with the Promissory Note)**

36

165.    Plaintiff Zack Strupeck repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

166.    Plaintiff brings this Count on behalf of members of the Nationwide Failure to Process Class.

167.    At all relevant times, Plaintiff and members of the Class had a valid and enforceable contract with the federal government.

168.    The contracts between the federal government and Plaintiff and members of the Class required compliance with applicable federal law.

169.    Under federal law, if a loan servicer receives a borrower's request to renew an IDR plan prior to the annual renewal deadline, the loan servicer is prohibited from switching the borrower to the standard ten-year repayment plan while it processes the request.  Rather, the servicer must maintain the borrower's current scheduled monthly payment amount until the request is processed.  By cancelling Plaintiff's IDR plan, and placing him on the standard repayment plan, despite his timely submission of an IDR renewal request, PHEAA violated federal law.

170.    If a borrower timely submits an IDR renewal request, the servicer must promptly determine the borrower's new monthly payment amount. Thus, the loan holder has an affirmative legal duty to process the borrower's recertification materials in a timely manner. By taking more than four months to correctly process Mr. Strupeck's IDR request, despite the Department of Education's determination that IDR requests should be processed within 15 days, PHEAA violated federal law.

171.    Defendant was aware of the aforementioned contracts, and intentionally and unjustifiably induced the federal government to breach these contracts, through its own acts as agent for the federal government, by engaging in the aforementioned unlawful practices.

172.    Because the contracts between the federal government and Plaintiff and members of the Class required compliance with applicable federal law, Defendant tortiously interfered with the performance of these contracts by engaging in the aforementioned practices.

173.    Alternatively, even if it is determined that the practices described above did not induce a breach of the express terms of the contracts between the federal government and Plaintiff and the Class, these practices nonetheless induced a breach of the covenant of good faith and fair dealing implied in the contracts.

174.    As a result of Defendant's tortious interference with the performance of the contracts between Plaintiff and the federal government, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, (i) unpaid interest added to the principal  balance of loans along with amounts accrued as a result of the capitalization of same; (ii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

## COUNT X – BREACH OF CONTRACT

### (Zack Strupeck and the Failure to Process Class against Defendant for Breach of the Servicing Contract)

175.    Plaintiff Zack Strupeck repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

38

176.    Plaintiff brings this Count on behalf of members of the Nationwide Failure to Process Class.

177.    At all relevant times, Defendant was party to a valid and enforceable servicing contract with the federal government, of which Plaintiff and members of the Class were intended third party beneficiaries.

178.    The servicing contract between Defendant and the federal government required compliance with applicable federal law.

179.    Under federal law, if a loan servicer receives a borrower's request to renew an IDR plan prior to the annual renewal deadline, the loan servicer is prohibited from switching the borrower to the standard ten-year repayment plan while it processes the request.  Rather, the servicer must maintain the borrower's current scheduled monthly payment amount until the request is processed.  By cancelling Plaintiff's IDR plan, and placing him on the standard repayment plan, despite his timely submission of an IDR renewal request, PHEAA violated federal law.

180.    If a borrower timely submits an IDR renewal request, the servicer must promptly determine the borrower's new monthly payment amount. Thus, the loan holder has an affirmative legal duty to process the borrower's recertification materials in a timely manner. By taking more than four months to correctly process Plaintiff's IDR request, despite the Department of Education's determination that IDR requests should be processed within 15 days, PHEAA violated federal law.

181.    Because the servicing contract required compliance with applicable federal law, the aforementioned practices constitute a breach of the servicing contract.

182.     Alternatively, even if it is determined that the aforementioned practices did not constitute a breach of the express terms of the servicing contract, these practices nonetheless constituted a breach of the covenant of good faith and fair dealing implied in the contracts.

183.     As a result of Defendant's breach of the servicing contract, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, (i) unpaid interest added to the principal  balance of loans along with amounts accrued as a result of the capitalization of same; (ii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

**COUNT XI - VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("ICFDBPA"), 815 ILCS 505/2**

**(All Plaintiffs and all Illinois Classes Against Defendant)**

184.     Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

185.     Plaintiffs bring this Count on behalf of members of all Classes that are limited to residents of the State of Illinois.

186.     Defendant is "person[s]" within  the  meaning  of  815 ILCS 505/1(c).

187.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the

concealment, suppression or omission of any material fact, with intent that others rely upon the

concealment, suppression or omission of such material fact . . . in the conduct of any trade or

commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815

ILCS 505/2.

188. In the course of their business, PHEAA commits, or committed, the following

unfair and/or deceptive acts or practices in violation of the ICFDBPA:

a. Deceptively and unfairly inflating borrower's loan balances by placing their

   accounts into general forbearance status without documentation of the borrower's

   request to do so, and under circumstances not permitted by federal law;

b. Deceptively and unfairly denying to borrowers a legally mandated 60-day

   administrative forbearance, with no capitalization of interest, when additional

   time was needed to process their IDR plan requests;

c. Deceptively and unfairly providing borrowers with inadequate notice of billing

   statements, making it more difficult for them to make scheduled payments;

d. Misrepresenting to borrowers that a general forbearance should be applied to their

   account while PHEAA resolved its own processing errors and delays, allowing

   PHEAA to financially benefit from its own inefficiencies;

e. Deceptively and unfairly applying delinquency forbearances to the accounts of

   borrowers who enrolled in the direct debt program, in violation of federal law,

   and failing to warn said borrowers that such forbearances could outweigh any

   advantage gained by the associated interest rate reduction;

f.  Deceptively and unfairly providing borrowers with inadequate notice of critical information relating to their IDR plans, thereby preventing them from renewing their IDR plans;

g.  Deceptively notifying IDR plan participants of the availability of electronic notices posted to their online account by way of vaguely worded emails that contained no information about the purpose or contents of the electronic notice;

h.  Unfairly cancelling the IDR plans of borrowers who timely submitted their recertification materials, in violation of federal law;

i.  Unfairly and deceptively failing to process IDR applications in a reasonably prompt manner, as required by federal law;

189.  PHEAA knew or should have known that their conduct violated the law.

190.  PHEAA's unfair and deceptive practices were material to Plaintiffs and members of the Illinois Classes.

191.  Plaintiffs and members of the Illinois Classes suffered ascertainable loss and actual damages as a direct and proximate result of PHEAA's deceptive and unfair practices, including, but not limited to, (i) the difference in amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; (iii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; (iv) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same; and (v) adverse credit reporting.

192.    PHEAA's violations present a continuing risk for financial harm to Plaintiffs, members of the Classes, and the general public.  PHEAA's unlawful acts and practices complained of herein affect the public interest.

193.    Plaintiffs and members of the Classes seek damages under the ICFDBPA for injury resulting from the direct and natural consequences of PHEAA's unlawful conduct.

194.    Plaintiffs and members of the Classes also seek an order enjoining PHEAA's unfair, unlawful, and/or deceptive practices;  declaratory  relief; attorneys' fees; and any other just and proper relief available under the ICFDBPA.

195.    PHEAA engaged in gross, oppressive or aggravated conduct justifying the imposition of punitive damages.

## COUNT XII - VIOLATIONS OF 73 Pa. Stat. § 201-1 et seq.
### (All Plaintiffs, and all National Classes, Against Defendant)

196.    Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

197.    Plaintiffs bring this Count on behalf of all members of the National Classes.

198.    In the course of their business, PHEAA commits, or committed, the following unfair and/or deceptive acts or practices in violation of the ICFDBPA:

a.  Deceptively and unfairly inflating borrower's loan balances by placing their accounts into general forbearance status without documentation of the borrower's request to do so, and under circumstances not permitted by federal law;

b.  Deceptively and unfairly denying to borrowers a legally mandated 60-day administrative forbearance, with no capitalization of interest, when additional time was needed to process their IDR plan requests;

43

c. Deceptively and unfairly providing borrowers with inadequate notice of billing statements, making it more difficult for them to make scheduled payments;

d. Misrepresenting to borrowers that a general forbearance should be applied to their account while PHEAA resolved its own processing errors and delays, allowing PHEAA to financially benefit from its own inefficiencies;

e. Deceptively and unfairly applying delinquency forbearances to the accounts of borrowers who enrolled in the direct debt program, in violation of federal law, and failing to warn said borrowers that such forbearances could outweigh any advantage gained by the associated interest rate reduction;

f. Deceptively and unfairly providing borrowers with inadequate notice of critical information relating to their IDR plans, thereby preventing them from renewing their IDR plans;

g. Deceptively notifying IDR plan participants of the availability of electronic notices posted to their online account by way of vaguely worded emails that contained no information about the purpose or contents of the electronic notice;

h. Unfairly cancelling the IDR plans of borrowers who timely submitted their recertification materials, in violation of federal law;

i. Unfairly and deceptively failing to process IDR applications in a reasonably prompt manner, as required by federal law;

199. All of these actions were decided upon, and misrepresented from, Defendant's headquarters in Pennsylvania.

200. As a result of Defendant's violations, Plaintiffs and members of the National Classes have suffered the same sizeable damages, including, but not limited to (i) the difference

in amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; (iii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; (iv) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same; and (v) adverse credit reporting.

201.    The corresponding financial benefit to Defendant was received by them at their headquarters in Pennsylvania.

202.    Plaintiffs and members of the Class seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practice, declaratory relief, attorney's fees, and any other just and proper relief available.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that this Court enter a judgment against Defendant and in favor of Plaintiffs and the class:

A. Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as representatives of the Classes and Plaintiffs' counsel  as counsel for the Classes;

B. Declaring, adjudging, and decreeing the conduct alleged herein as unlawful;

C. Enjoining Defendant from continuing to commit the above-cited violations of law;

D. Awarding compensatory and punitive damages along with pre- and post-judgment interest;

E. Granting Plaintiffs the costs of suit, including reasonable attorneys' fees and expenses; and

F.  Affording Plaintiffs with such other, further, and different relief as the nature of the

case may require or as may be determined to be just, equitable, and proper by this

Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: 1/18/18_____


Respectfully submitted,



EDELMAN COMBS LATTURNER &          FIORENTINO LAW OFFICES, LTD.
GOODWIN, LLC

s/Daniel A. Edelman_____          s/Anthony Fiorentino_____
Daniel A. Edelman                          Anthony Fiorentino
Cathleen M. Combs                          FIORENTINO LAW OFFICES LTD.
James O. Latturner                         180 N. LaSalle Street, Suite 2440
Cassandra P. Miller                        Chicago, Illinois 60602
EDELMAN COMBS LATTURNER &          anthony@fiorentinolaw.com
GOODWIN, LLC                               *Counsel for Hannah Rockwell,*
20 S. Clark Street, Suite 1500             *Zack Strupeck, Stacey Puccini*
Chicago, Illinois 60603                    *and the Classes*
*Counsel for Hannah Rockwell,*
*Zack Strupeck, Stacey Puccini*
*and the Classes*

47

# EXHIBIT A

✔ <u>RETURN THIS PAGE</u>



**Direct Loans**
William D. Ford Federal Direct Loan Program

## Federal Direct Consolidation Loan
## Application and Promissory Note

OMB No. 1845-0053
Form Approved
Exp. Date 02/28/2014

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or any accompanying documentation is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

### Before You Begin

Read the instructions for completing this Federal Direct Consolidation Loan Application and Promissory Note (Note). Print using blue or black ink or type. You must sign and date this form. If you cross out anything and write in new information, put your initials beside the change.

**NOTE: PAGES 1, 2, and 3 OF THIS NOTE MUST BE SUBMITTED FOR YOUR LOAN REQUEST TO BE PROCESSED.**

### Section A: Borrower Information

| 1. Last Name | First Name | Middle Initial | 2. Social Security Number |
|---|---|---|---|
| | | | |

| 3. Permanent Address (if P.O. box or general delivery, see instructions) | 4. Area Code/Telephone Number ( ) |
|---|---|
| | |
| City          State          Zip Code | 5. E-Mail Address (Optional) |

| 6. Former Name(s) | 7. Date of Birth (mm-dd-yyyy) | 8. Driver's License State and Number   State     Number |
|---|---|---|
| | | |

9. Employer's Name

10. Employer's Address

| 11. Work Area Code/Telephone Number ( ) | City | State | Zip Code |
|---|---|---|---|

### Section B: Reference Information

12. **References:** List two persons with different U.S. addresses who do not live with you and who have known you for at least three years:

| Name | 1. | 2. |
|---|---|---|
| Permanent Address | | |
| City, State, Zip Code | | |
| E-Mail Address (optional) | | |
| Area Code/Telephone Number | ( ) | ( ) |
| Relationship to Borrower | | |

### Section C1: Education Loan Indebtedness – Loans You Want to Consolidate (continued on page 2)

*Read the instructions before completing this section.* List each federal education loan that you want to consolidate, including any William D. Ford Federal Direct Loan (Direct Loan) Program loans that you want to include in your Direct Consolidation Loan. If you need more space to list additional loans, use the Additional Loan Listing Sheet included with this Note. List each loan separately. Please print. **IN THIS SECTION, LIST ONLY LOANS THAT YOU WANT TO CONSOLIDATE.**

We will send you a notice before we consolidate your loans. This notice will **(1)** provide you with information about the loans and payoff amounts that we have verified, and **(2)** tell you the deadline by which you must notify us if you want to cancel the Direct Consolidation Loan, or if you do not want to consolidate one or more of the loans listed in the notice. The notice will include information about loans eligible for consolidation that you listed in this section. It will also include information about additional loans eligible for consolidation that you did not list in this section, if you have additional eligible loans with a holder of a loan that you listed in this section. **See the instructions for more information about the notice we will send.**

| 13. Loan Code (See Instructions) | 14. Loan Holder/Servicer Name, Address, and Area Code/Telephone Number (See Instructions) | 15. Loan Account Number | 16. Estimated Payoff Amount |
|---|---|---|---|
| | | | |
| | | | |

**Submit pages 1, 2, and 3**
Page 1 of 9

✔ **RETURN THIS PAGE**

| Borrower's Name (please print) | , | Social Security Number | |
|---|---|---|---|

**Section C1: Education Loan Indebtedness – Loans You Want to Consolidate (continued from page 1)**

| 13. Loan Code (See Instructions) | 14. Loan Holder/Servicer Name, Address, and Area Code/Telephone Number (See Instructions) | 15. Loan Account Number | 16. Estimated Payoff Amount |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**17. Grace Period End Date.** If any of the loans you want to consolidate are in a grace period, you can have the processing of your Direct Consolidation Loan delayed until the end of your grace period by entering your expected grace period end date in the space provided. If you leave this item blank, we will begin processing your Direct Consolidation Loan as soon as we receive this Note and any other required documents and any loans listed in Section C1 that are in a grace period will enter repayment immediately upon consolidation. You will then lose the remaining portion of the grace period on these loans.

**Expected Grace Period End Date (month/year):**
_____

**Section C2: Education Loan Indebtedness – Loans You Do Not Want to Consolidate**

*Read the instructions before completing this section.* List all education loans that you are not consolidating, but want to have considered when your maximum repayment period is calculated. Remember to include any Direct Loan Program loans that you do not want to consolidate. If you need more space to list additional loans, use the Additional Loan Listing Sheet included with this Note. List each loan separately. Please print. **IN THIS SECTION, LIST ONLY LOANS THAT YOU DO NOT WANT TO CONSOLIDATE.**

We will send you a notice before we consolidate your loans. This notice will **(1)** provide you with information about the loans and payoff amounts that we have verified, and **(2)** tell you the deadline by which you must notify us if you want to cancel the Direct Consolidation Loan, or if you do not want to consolidate one or more of the loans listed in the notice. The notice will **not** include information about any loans you listed in this section, and any loans listed in this section will **not** be consolidated. **See the instructions for more information about the notice we will send.**

| 18. Loan Code (See Instructions) | 19. Loan Holder/Servicer Name, Address, and Area Code/Telephone Number (See Instructions) | 20. Loan Account Number | 21. Current Balance |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**Section D: Repayment Plan Selection**

To understand your repayment plan options, carefully read the repayment plan information in the Borrower's Rights and Responsibilities Statement on pages 5-8 of this Note and in any supplemental materials you receive with this Note. Then select a repayment plan for your Direct Consolidation Loan by completing the **Repayment Plan Selection** form that accompanies this Note.

- If you select the Income Contingent Repayment (ICR) Plan or the Income-Based Repayment (IBR) Plan, you must also complete additional forms and/or provide additional documentation as explained on the Repayment Plan Selection form. **Your selection of the ICR Plan or IBR Plan cannot be processed without the required additional forms or documentation.**
- You **must** select the ICR Plan or the IBR Plan for repayment of your Direct Consolidation Loan if **(1)** you want to consolidate a defaulted loan(s) and you have not made a satisfactory repayment arrangement with your current loan holder(s); or **(2)** you are consolidating a delinquent Federal Consolidation Loan that the lender has submitted to the guaranty agency for default aversion, and you are not consolidating any additional eligible loans.

✔ **RETURN THIS PAGE**

| Borrower's Name (please print) | , | Social Security Number |
|---|---|---|
| | | |

**Section E: Borrower Understandings, Certifications, and Authorizations**

**22. I understand that:**

**A.** My Direct Consolidation Loan will, to the extent used to pay off loans made under the Federal Family Education Loan (FFEL), Direct Loan, and Federal Perkins Loan (Perkins Loan) programs, count against the applicable aggregate loan limits under the Act. The term "the Act" is defined under "Governing Law" on page 4 of this Note.

**B.** The amount of my Direct Consolidation Loan is the sum of the balances of my outstanding eligible loans that I have chosen to consolidate. My outstanding balance on each loan to be consolidated includes unpaid principal, unpaid accrued interest and late charges as defined by federal regulations and as certified by the loan holder. Collection costs may also be included. For a Direct Loan Program or FFEL Program loan that is in default, the amount of any collection costs that may be included in the payoff balances of the loans is limited to a maximum of 18.5% of the outstanding principal and interest. For any other defaulted federal education loan, all collection costs that are owed may be included in the payoff balances of the loans.

**C.** Applying for a Direct Consolidation Loan does not obligate me to agree to take the Direct Consolidation Loan. The U.S. Department of Education (ED) will provide me with: **(1)** a notice containing information about the loans and payoff amounts that ED has verified with the holders of my loans or through ED's National Student Loan Data System (NSLDS) before the actual payoffs occur, and **(2)** the deadline by which I must notify ED if I want to cancel the Direct Consolidation Loan, or if I do not want to consolidate any of the loans that ED has verified. The notice that ED sends will include information about loans eligible for consolidation that I listed in Section C1 of this Note ("Education Loan Indebtedness – Loans You Want to Consolidate"). It may also include information about additional loans eligible for consolidation that I did not list in Section C1, if I have additional eligible loans with a holder of a loan listed in Section C1. If I do not inform ED otherwise by the deadline specified in the notice that ED sends to me, all of the loans listed in the notice will be consolidated.

**D.** If the amount ED sends to my loan holders is more than the amount needed to pay off the balances of the selected loans, the holders will refund the excess amount to ED and this excess amount will be applied against the outstanding balance of my Direct Consolidation Loan. If the amount that ED sends to my holders is less than the amount needed to pay off the balances of the loans selected for consolidation, ED will include the remaining amount in my Direct Consolidation Loan.

**E.** Unless I am: **(1)** consolidating a delinquent Federal Consolidation Loan that the lender has submitted to the guaranty agency for default aversion; **(2)** consolidating a defaulted Federal Consolidation Loan; **(3)** consolidating a Federal Consolidation Loan to use the Public Service Loan Forgiveness Program; or **(4)** consolidating a Federal Consolidation Loan to use the no accrual of interest benefit for active duty service members, I may consolidate an existing Federal Consolidation Loan or Direct Consolidation Loan only if I include at least one additional eligible loan in the consolidation.

**F.** If I am consolidating a delinquent Federal Consolidation Loan that the lender has submitted to the guaranty agency for default aversion or a defaulted Federal Consolidation loan, and I am not including another eligible loan, I must agree to repay my Direct Consolidation Loan under the ICR Plan or the IBR Plan.

**G.** If I consolidate my loans, I may no longer be eligible for certain deferments, subsidized deferment periods, certain types of loan discharges or loan forgiveness, or reduced interest rates that were available on the loans I am consolidating.

**H.** Any payments made prior to the date of consolidation on the loans I am consolidating will not count toward **(1)** the 25 years of repayment required for loan forgiveness under the IBR Plan or the ICR Plan (see Item 10 of the Borrower's Rights and Responsibilities Statement in this Note), or **(2)** the 120 qualifying payments required for Public Service Loan Forgiveness (see Item 17 of the Borrower's Rights and Responsibilities Statement).

**I.** If I am consolidating a Perkins Loan: **(1)** I will no longer be eligible for interest-free periods while I am enrolled in school at least half time, in the grace period on my loan, and during deferment periods; and **(2)** I will no longer be eligible for full or partial loan cancellation under the Perkins Loan Program based on years of service in one of the following occupations: teacher in a low-income elementary or secondary school; staff member in a eligible preschool program; special education teacher; member of the Armed Forces who qualifies for special pay; Peace Corps volunteer or volunteer under the Domestic Volunteer Service Act of 1973; law enforcement or corrections officer; attorney in an eligible defender organization; teacher of mathematics, science, foreign languages, bilingual education or any other high-need field; nurse or medical technician providing health care services; employee of a public or private nonprofit child or family service agency that services high-risk children from low-income families and their families; fire fighter; faculty member at a Tribal College or University; librarian; or speech language pathologist.

**J.** If I am consolidating a Direct PLUS Loan or a Federal PLUS Loan that I obtained to help pay for my dependent child's undergraduate education, I will not be eligible to repay my Direct Consolidation Loan under the IBR Plan. However, I may repay my Direct Consolidation Loan under the ICR Plan.

**K.** If I am consolidating any Direct Loan Program loans on which I received an up-front interest rebate, and I have not yet made the first 12 required on-time payments on those loans at the time the loans are consolidated, I must make the first 12 required monthly payments on my Direct Consolidation Loan on time to keep the interest rebate (see Item 9 of the Borrower's Rights and Responsibilities Statement).

**23. Under penalty of perjury, I certify that:**

**A.** The information that I have provided on this Note is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

**B.** All of the loans selected for consolidation have been used to finance my education or the education of my dependent child(ren).

**C.** All of the loans selected for consolidation are in a grace period or in repayment ("in repayment" includes loans in deferment or forbearance).

**D.** If I owe an overpayment on a Federal Perkins Loan, Federal Pell Grant, Federal Supplemental Educational Opportunity Grant, Academic Competitiveness Grant (ACG), National Science and Mathematics Access to Retain Talent (SMART) Grant, or Leveraging Educational Assistance Partnership Grant, I have made satisfactory arrangements with the holder to repay the amount owed.

**E.** If I am in default on any loan I am consolidating (except as provided above in Item 22.F.), I have either made a satisfactory repayment arrangement with the holder of that defaulted loan, or I will repay my Direct Consolidation Loan under the ICR Plan or the IBR Plan.

**F.** If I have been convicted of, or pled *nolo contendere* or guilty to, a crime involving fraud in obtaining federal student aid funds under the Act, I have completed the repayment of those funds to ED, or to the loan holder in the case of a Title IV federal student loan.

**24. I make the following authorizations:**

**A.** I authorize ED to contact the holders of the loans selected for consolidation to determine the eligibility for consolidation and the payoff amounts of the loans listed in Section C1 of this Note and any of my other federal education loans that are held by a holder of a loan listed in Section C1. I further authorize release to ED or its agent of any information required to consolidate my education loans in accordance with the Act.

**B.** I authorize ED to issue the proceeds of my Direct Consolidation Loan to the holders of the selected loans to pay off the debts.

**C.** I authorize ED to investigate my credit record and report information about my loan status to persons and organizations permitted by law to receive that information.

**D.** I authorize my school(s) and ED to release information about my Direct Consolidation Loan to the references on the loan and to members of my immediate family, unless I submit written directions otherwise.

**E.** I authorize my school(s), ED, or their agents to verify my Social Security Number with the Social Security Administration (SSA) and, if the number on my loan record is incorrect, then I authorize SSA to disclose my correct Social Security Number to these parties.

**F.** I authorize my schools, ED, and their respective agents and contractors to contact me regarding my loan request or my loan, including repayment of my loan, at the current or any future number that I provide for my cellular telephone or other wireless device using automated dialing equipment or artificial or prerecorded voice or text messages.

**Section F: Promissory Note (continued on page 4) – to be completed and signed by the borrower.**

**25. Promise to Pay.** I promise to pay to the ED all sums disbursed under the terms of this Note to pay off my prior loan obligations, plus interest and other charges and fees that may become due as provided in this Note. Unless I make interest payments, interest that accrues on my loan during forbearance periods and on the unsubsidized portion of my loan during deferment periods may be added, as provided under the Act, to the principal balance of my loan. If I do not make payments on this Note when due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees.

If ED accepts my application, I understand that ED will send funds to the holders of the loans that I want to consolidate to pay off those loans. I further understand that the amount of my Direct Consolidation Loan will equal the sum of the payoff balances on the loans selected for consolidation. My signature on this Note serves as my authorization to pay off the balances of the loans selected for consolidation as provided by the holders of the loans.

The payoff amount may be greater than or less than the estimated total balance I have indicated in Section C1. Further, I understand that if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance of my Direct Consolidation Loan.

I will not sign this Note before reading the entire Note, even if I am told not to read it. I am entitled to an exact copy of this Note and the Borrower's Rights and Responsibilities Statement. My signature certifies that I have read, understand, and agree to the terms and conditions of this Note, including the Borrower Understandings, Certifications, and Authorizations in Section E, and the Borrower's Rights and Responsibilities Statement.

**I UNDERSTAND THAT THIS IS A LOAN THAT I MUST REPAY.**

| 26. Borrower's Signature _____ | Today's Date (mm-dd-yyyy) _____ |
|---|---|

**Promissory Note – continued from page 3**

### Governing Law

The terms of this Federal Direct Consolidation Loan Application and Promissory Note (Note) will be interpreted in accordance with the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), the U.S. Department of Education's (ED's) regulations, as they may be amended in accordance with their effective date, and other applicable federal laws and regulations (collectively referred to as the "Act"). Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this Note.

### Disclosure of Loan Terms

This Note applies to a Federal Direct Consolidation Loan (Direct Consolidation Loan). Under this Note, the principal amount that I owe and am required to repay will be equal to all sums disbursed to pay off my prior loan obligations, plus any unpaid interest that is capitalized and added to the principal amount.

My Direct Consolidation Loan may have up to two separate loan identification numbers depending on the loans I choose to consolidate. These loan identification numbers will represent prior subsidized loans and prior unsubsidized loans. Each applicable loan identification number is represented by this Note.

When the loans that I am consolidating are paid off, a disclosure statement will be provided to me. The disclosure will identify the amount of my Direct Consolidation Loan, the associated loan identification number(s), and additional terms of the loan, such as the interest rate and repayment schedule. If I have questions about the information disclosed, I may contact my servicer. Important additional information is also contained in the Borrower's Rights and Responsibilities Statement. The Borrower's Rights and Responsibilities Statement and any disclosure I receive in connection with the loan made under this Note are hereby incorporated into this Note.

I understand that ED may use a servicer to handle billing and other communications related to my loan.

### Interest

Interest will be calculated using a formula provided for by the Act. Unless ED notifies me in writing of a lower rate, the interest rate on my Direct Consolidation Loan will be based on the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, but will not exceed 8.25%. This is a fixed interest rate, which means that the rate will remain the same throughout the life of the loan.

I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged, except for interest ED does not charge me during a deferment period on the subsidized portion of my Direct Consolidation Loan. ED may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the Act. This is called capitalization.

### Late Charges and Collection Costs

ED may collect from me: **(1)** a late charge of not more than six cents for each dollar of each late payment if I fail to make any part of a required installment payment within 30 days after it becomes due, and **(2)** any other charges and fees that are permitted by the Act related to the collection of my Direct Consolidation Loan. If I default on my loan, I will pay reasonable collection costs, plus court costs and attorney fees.

### Repayment

I must repay the full amount of the Direct Consolidation Loan made under this Note, plus accrued interest. I will repay my loan in monthly installments during a repayment period that begins on the date of the first disbursement of the loan, unless it is in a deferment or forbearance period. Payments made by me or on my behalf will be applied first to late charges and collection costs that are due, then to interest that has not been paid, and finally to the principal amount of the loan, except during periods of repayment under the Income-Based Repayment (IBR) Plan. Under the IBR Plan, payments will be applied first to interest that is due, then to fees that are due, and then to the principal amount.

ED will provide me with a choice of repayment plans. Information on these plans is included in the Borrower's Rights and Responsibilities Statement. I must select

a repayment plan. If I do not select a repayment plan, ED will choose a plan for me in accordance with the Act.

ED will provide me with a repayment schedule that identifies my payment amounts and due dates. My first payment will be due within 60 days of the first disbursement of my Direct Consolidation Loan unless it is in a deferment or forbearance period. If I am unable to make my scheduled loan payments, ED may allow me to temporarily stop making payments, reduce my payment amount, or extend the time for making payments, as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance.

ED may adjust payment dates on my Direct Consolidation Loan or may grant me forbearance to eliminate a delinquency that remains even though I am making scheduled installment payments.

I may prepay any part of the unpaid balance on my loan at any time without penalty. After I have repaid my Direct Consolidation Loan in full, ED will send me a notice telling me that I have paid off my loan.

### Acceleration and Default

At ED's option, the entire unpaid balance of the Direct Consolidation Loan will become immediately due and payable (this is called "acceleration") if either of the following events occurs: **(1)** I make a false representation that results in my receiving a loan for which I am not eligible; or **(2)** I default on the loan.

The following events will constitute a default on my loan: **(1)** I fail to pay the entire unpaid balance of the loan after ED has exercised its option under the preceding paragraph; **(2)** I fail to make installment payments when due, provided my failure has persisted for at least 270 days; or **(3)** I fail to comply with other terms of the loan, and ED reasonably concludes that I no longer intend to honor my repayment obligation. If I default, ED may capitalize all outstanding interest. This will increase the principal balance, and the full amount of the loan, including the new principal balance and collection costs, will become immediately due and payable.

If I default, the default will be reported to national consumer reporting agencies and will significantly and adversely affect my credit rating. I understand that a default will have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. Following default, I may be required to repay the loan (including potential collection of amounts in excess of the principal and interest) under the Income Contingent Repayment (ICR) Plan or the IBR Plan in accordance with the Act.

### Legal Notices

Any notice required to be given to me will be effective if sent by first class mail to the most recent address that ED has for me, by electronic means to an address I have provided, or by any other method of notification permitted or required by applicable statute or regulation. I will immediately notify ED of a change of contact information or status, as specified in the Borrower's Rights and Responsibilities Statement.

If ED fails to enforce or insist on compliance with any term on this Note, this does not waive any right of ED. No provision of this Note may be modified or waived except in writing by ED. If any provision of this Note is determined to be unenforceable, the remaining provisions will remain in force.

Information about my loan will be submitted to the National Student Loan Data System (NSLDS). Information in NSLDS is accessible to schools, lenders, and guarantors for specific purposes as authorized by ED.

## Borrower's Rights and Responsibilities Statement

*Important Notice: This Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of the loan you will receive under the accompanying Federal Direct Consolidation Loan (Direct Consolidation Loan) Application and Promissory Note (Note). Please keep a copy of the Note and this Borrower's Rights and Responsibilities Statement for your records.*

In this document, the words "we," "us," and "our" refer to the U.S. Department of Education.

**1. The William D. Ford Federal Direct Loan Program.** The William D. Ford Federal Direct Loan (Direct Loan) Program includes the following types of loans, known collectively as "Direct Loans":

- Federal Direct Stafford/Ford Loans (Direct Subsidized Loans)
- Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans)
- Federal Direct PLUS Loans (Direct PLUS Loans)
- Federal Direct Consolidation Loans (Direct Consolidation Loans)

The Direct Loan Program is authorized by Title IV, Part D, of the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 *et seq.* (HEA).

Direct Loans are made by the U.S. Department of Education. We contract with servicers to service, answer questions about, and process payments on Direct Loans. We will provide you with the address and telephone number of the servicer for your loan.

**2. Laws that apply to this Note.** The terms and conditions of loans made under this Note are determined by the HEA and other applicable federal laws and regulations. These laws and regulations are referred to as "the Act" throughout this Borrower's Rights and Responsibilities Statement. State law, unless it is preempted by federal law, may provide you with certain rights, remedies, and defenses in addition to those stated in the Note and this Borrower's Rights and Responsibilities Statement.

**NOTE: Any change to the Act applies to loans in accordance with the effective date of the change.**

**3. Direct Consolidation Loan identification numbers.** Depending on the type(s) of federal education loan(s) that you choose to consolidate, your Direct Consolidation Loan may have up to two individual loan identification numbers. However, you will have only one Direct Consolidation Loan and will receive only one bill.

**3a.** The subsidized portion of your Direct Consolidation Loan ("Direct Subsidized Consolidation Loan") will have one loan identification number representing the amount of the following types of loans that you consolidate:

- Subsidized Federal Stafford Loans
- Direct Subsidized Loans
- Subsidized Federal Consolidation Loans
- Direct Subsidized Consolidation Loans
- Federal Insured Student Loans (FISL)
- Guaranteed Student Loans (GSL)

**3b.** The unsubsidized portion of your Direct Consolidation Loan ("Direct Unsubsidized Consolidation Loan") will have one identification number representing the amount of the following types of loans that you consolidate:

- Unsubsidized and Nonsubsidized Federal Stafford Loans
- Direct Unsubsidized Loans
- Unsubsidized Federal Consolidation Loans
- Direct Unsubsidized Consolidation Loans
- Federal PLUS Loans (for parents or for graduate and professional students)
- Direct PLUS Loans (for parents or for graduate and professional students)
- Direct PLUS Consolidation Loans
- Federal Perkins Loans
- National Direct Student Loans (NDSL)
- National Defense Student Loans (NDSL)
- Federal Supplemental Loans for Students (SLS)
- Parent Loans for Undergraduate Students (PLUS)
- Auxiliary Loans to Assist Students (ALAS)
- Health Professions Student Loans (HPSL)
- Health Education Assistance Loans (HEAL)
- Nursing Student Loans (NSL)
- Loans for Disadvantaged Students (LDS)

**5. Adding eligible loans to your Direct Consolidation Loan.** You may add eligible loans to your Direct Consolidation Loan by submitting a request to us within 180 days of the date your Direct Consolidation Loan is made. (Your Direct Consolidation Loan is "made" on the date we pay off the first loan that you are consolidating.) After we pay off any loans that you add during the 180-day period, we will notify you of the new total amount of your Direct Consolidation Loan and of any adjustments that must be made to your monthly payment amount and/or interest rate.

If you want to consolidate any additional eligible loan(s) after the 180-day period, you must apply for a new Direct Consolidation Loan.

**6. Loans that may be consolidated.** *General.* Only the federal education loans listed in Items 3a and 3b. of this Borrower's Rights and Responsibilities Statement may be consolidated into a Direct Consolidation Loan. You may only consolidate loans that are in a grace period or in repayment (including loans in deferment or forbearance). At least one of the loans that you consolidate must be a Direct Loan Program loan or a Federal Family Education Loan (FFEL) Program loan.

*Defaulted loans.* You may consolidate a loan that is in default if **(a)** you first make satisfactory repayment arrangements with the holder of the defaulted loan, or **(b)** you agree to repay your Direct Consolidation Loan under the Income Contingent Repayment (ICR) Plan or the Income-Based Repayment (IBR) Plan (see Item 10).

*Existing consolidation loans.* Generally, you may consolidate an existing Direct Consolidation Loan or Federal Consolidation Loan into a new Direct Consolidation Loan only if you include at least one additional eligible loan in the consolidation. However, you may consolidate a Federal Consolidation Loan into a new Direct Consolidation Loan without including an additional loan if the Federal Consolidation Loan is delinquent and has been submitted by the lender to the guaranty agency for default aversion, or if the Federal Consolidation Loan is in default. In such cases, you must agree to repay the new Direct Consolidation Loan under the ICR Plan or the IBR Plan. You may also consolidate a single Federal Consolidation Loan into a new Direct Consolidation Loan to use the Public Service Loan Forgiveness program described in Item 17 of this Borrower's Rights and Responsibilities Statement, or the no accrual of interest benefit for active duty service members described in Item 8.

**7. Information you must report to us.** Until your loan is repaid, you must notify your servicer if you:

- Change your address or telephone number;
- Change your name (for example, maiden name to married name);
- Change your employer or your employer's address or telephone number changes; or
- Have any other change in status that would affect your loan (for example, if you receive a deferment while you are unemployed, but you find a job and therefore no longer meet the eligibility requirements for the deferment)

**7. Interest rate.** The interest rate on your Direct Consolidation Loan will be the **lesser** of the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, OR 8.25%. We will send you a notice that tells you the interest rate on your loan.

The interest rate on a Direct Consolidation Loan is a fixed rate. This means that the interest rate will remain the same throughout the life of your loan.

If you qualify under the Servicemembers Civil Relief Act, the interest rate on your loans obtained prior to military service may be limited to 6% during your military service. To receive this benefit, you must contact your servicer for information about the documentation you must provide to show that you qualify.

**8. Payment of interest.** Except as provided below for borrowers who serve in the military, interest accrues on a Direct Consolidation Loan from the date the loan is made until it is paid in full or discharged, including during periods of deferment or forbearance. You are responsible for paying all interest that accrues, except for interest that accrues on the subsidized portion of a Direct Consolidation Loan ("Direct Subsidized Consolidation Loan" – see Item 3a.) during deferment periods.

If you do not pay the interest as it accrues during the periods described above, we will add the interest to the unpaid principal amount of your loan at the end of the deferment or forbearance period. This is called "capitalization." Capitalization increases the unpaid principal balance of your loan, and interest will then accrue on the increased principal amount.

The chart below shows the difference in the total amount you would repay on a $15,000 Direct Unsubsidized Consolidation Loan if you pay the interest as it accrues during a 12-month deferment or forbearance period, compared to the amount you would repay if you do not pay the interest and it is capitalized.

| | If you pay the interest as it accrues… | If you do not pay the interest and it is capitalized… |
|---|---|---|
| Loan Amount | $15,000 | $15,000 |
| Capitalized Interest for 12 Months (at the maximum rate of 8.25%) | $0 | $1,238 |
| Principal to be Repaid | $15,000 | $16,238 |
| Monthly Payment (Standard Repayment Plan) | $146 | $158 |
| Number of Payments | 180 | 180 |
| Total Amount Repaid | $26,209 | $28,359 |

In this example, you would pay $12 less per month and $2,150 less altogether if you pay the interest as it accrues during a 12-month deferment or forbearance period.

You may be able to claim a federal income tax deduction for interest payments you make on Direct Loans. For further information, refer to IRS Publication 970, which is available at http://www.irs.ustreas.gov.

Under the no interest accrual benefit for active duty service members, during periods of qualifying active duty military service interest does not accrue on the portion of a Direct Consolidation Loan that repaid a Direct Loan Program or FFEL Program loan first disbursed on or after October 1, 2008 (for up to 60 months).

**9. Repayment incentive programs.** A repayment incentive is a benefit that we offer to encourage you to repay your loan on time. Under a repayment incentive program, the interest rate we charge on your loan may be reduced. Some repayment incentive programs require you to make a certain number of payments on time to keep the reduced interest rate. For Direct Consolidation Loans, the following repayment incentive program may be available to you:

*Interest Rate Reduction for Automatic Withdrawal of Payments*

Under the automatic withdrawal option, your bank automatically deducts your monthly loan payment from your checking or savings account and sends it to us. Automatic withdrawal helps to ensure that your payments are made on time. In addition, you receive a 0.25% interest rate reduction while you repay under the automatic withdrawal option. We will include information about the automatic withdrawal option in your first bill. You can also get this information on your servicer's web site, or by calling your servicer. Your servicer's web site address and toll-free telephone number are provided on all correspondence that your servicer sends you.

Your servicer can provide you with more information on other repayment incentive programs that may be available.

**Note:** Another repayment incentive program, the up-front interest rebate, is available on Direct Subsidized Loans, Direct Unsubsidized Loans, and Direct PLUS Loans that were first disbursed before July 1, 2012. The rebate is equal to a percentage of the loan amount, and is the same amount that would result if the interest rate on the loan were lowered by a specific percentage. To permanently keep an up-front interest rebate, a borrower must make each of the first 12 required monthly payments on time when the loan enters repayment. If you consolidate a Direct Loan on which you received an up-front interest rebate before you permanently earn the rebate (the correspondence you received about

your loan will tell you if you received a rebate), you will have to make the first 12 required monthly payments on your Direct Consolidation Loan on time to keep the interest rebate. "On time" means that we must receive each payment no later than 6 days after the due date. You will lose the rebate if you do not make all of your first 12 required monthly payments on your Direct Consolidation Loan on time. If you lose the rebate, we will add the rebate amount back to the principal balance on your loan account. This will increase the amount that you must repay.

**10. Repaying your loan.** Unless you receive a deferment or forbearance on your loan (see Item 16), your first payment will be due within 60 days of the first disbursement of your Direct Consolidation Loan. Your servicer will notify you of the date your first payment is due.

You must make payments on your loan even if you do not receive a bill or repayment notice.

Generally, you must repay all of your Direct Loans under the same repayment plan. You may choose one of the following repayment plans to repay any Direct Consolidation Loan:

- **Standard Repayment Plan** – Under this plan, you will make fixed monthly payments and repay your loan in full within 10 to 30 years (not including periods of deferment or forbearance) from the date the loan entered repayment, depending on the amount of your Direct Consolidation Loan and the amount of your other student loan debt (not to exceed the amount you are consolidating) as listed in Section C2 of your Note (see the chart below). Your payments must be at least $50 a month ($600 a year) and will be more, if necessary, to repay the loan within the required time period.

- **Graduated Repayment Plan** – Under this plan, your payments will be lower at first and will then increase over time, usually every two years. You will repay your loan in full within 10 to 30 years (not including periods of deferment or forbearance) from the date the loan entered repayment, depending on the total amount of your Direct Consolidation Loan and the amount of your other student loan debt (not to exceed the amount you are consolidating) as listed in Section C2 of your Note (see the chart below). No single payment under this plan will be more than three times greater than any other payment.

| Maximum Repayment Periods Under the Standard and Graduated Repayment Plans | |
|---|---|
| Total Education Loan Indebtedness | Maximum Repayment Period |
| Less than $7,500 | 10 years |
| $7,500 to $9,999 | 12 years |
| $10,000 to $19,999 | 15 years |
| $20,000 to $39,999 | 20 years |
| $40,000 to $59,999 | 25 years |
| $60,000 or more | 30 years |

- **Extended Repayment Plan** – You may choose this plan only if: **(1)** you had no outstanding balance on a Direct Loan Program loan as of October 7, 1998, or on the date you obtained a Direct Loan Program loan on or after October 7, 1998; and **(2)** you have an outstanding balance on Direct Loan Program Loans that exceeds $30,000. Under this plan, you may choose to make either fixed or graduated monthly payments and will repay your loan in full over a repayment period not to exceed 25 years (not including periods of deferment or forbearance) from the date your loan entered repayment. If you choose to make fixed monthly payments, your payments must be at least $50 a month ($600 a year) and will be more, if necessary, to repay the loan within the required time period. If you choose to make graduated monthly payments, your payments will start out lower and will then increase over time, generally every two years. Under a graduated repayment schedule, your monthly payment must at least be equal to the amount of interest that accrues each month, and no single payment will be more than three times greater than any other payment.

- **Income Contingent Repayment (ICR) Plan** – Under this plan, your monthly payment amount will be based on your adjusted gross income (and that of your spouse if you are married), your family size, and the total amount of your Direct Loans. Until we obtain the information needed to calculate your monthly payment amount, your payment will equal the amount of interest that accrues monthly on your loan unless you request a forbearance. As your income

changes, your payments may change. If you do not repay your loan after 25 years under this plan, the unpaid portion will be forgiven. You may have to pay income tax on any amount forgiven.

In addition to the repayment plans listed above, you may also choose the following repayment plan to repay a Direct Consolidation Loan if you are not consolidating a parent Direct PLUS Loan or a parent Federal PLUS Loan (see Note below):

- **Income-Based Repayment (IBR) Plan** – Under this plan, your required monthly payment amount will be based on your income. To initially qualify for this plan and to continue to make income-based payments, you must have a partial financial hardship. Your monthly payment amount may be adjusted annually. The maximum repayment period under this plan may exceed 10 years. If your loan is not repaid in full after you have made the equivalent of 25 years of qualifying payments and at least 25 years have elapsed, you may qualify for forgiveness of any outstanding balance on your loans. You may have to pay income tax on any amount forgiven.

**NOTE:** A parent PLUS loan is a PLUS loan that you obtained to help pay for your dependent child's undergraduate education. Direct Consolidation Loans that repaid parent Direct PLUS Loans or parent Federal PLUS Loans may not be repaid under the IBR Plan. However, such loans may be repaid under the ICR Plan.

If you can show to our satisfaction that the terms and conditions of these repayment plans are not adequate to meet your exceptional circumstances, we may provide you with an alternative repayment plan.

If you do not choose a repayment plan, we will choose a plan for you in accordance with the Act.

You may change repayment plans at any time after you have begun repaying your loan. There is no penalty if you make loan payments before they are due, or pay more than the amount due each month.

Except for payments made under the IBR Plan, we apply your payments in the following order: **(1)** late charges and collection costs, **(2)** outstanding interest, and **(3)** outstanding principal. For payments made under the IBR Plan, we apply your payments in the following order: **(1)** outstanding interest, **(2)** late charges and collection costs, and **(3)** outstanding principal.

When you have repaid your loan in full, your servicer will send you a notice telling you that you have paid off your loan. You should keep this notice in a safe place.

**11. Transfer of loan.** We may transfer one or all of your loans to another servicer without your consent. If the address to which you must send payments or correspondence changes, you will be notified of the new servicer's name, address and telephone number, the effective date of the transfer, and the date when you must begin sending payments or directing communications to that servicer. Transfer of a loan to a different servicer does not affect your rights and responsibilities under that loan.

**12. Late charges and collection costs.** If you do not make any part of a payment within 30 days after it is due, we may require you to pay a late charge. This charge will not be more than six cents for each dollar of each late payment. If you do not make payments as scheduled, we may also require you to pay other charges and fees involved in collecting your loan.

**13. Demand for immediate repayment.** The entire unpaid amount of your loan becomes due and payable (this is called "acceleration") if you:

- Make a false statement that causes you to receive a loan that you are not eligible to receive; or
- Default on your loan.

**14. Defaulting on your loan.** Default (failing to repay your loan) is defined in detail under "Acceleration and Default" on page 4 of this Note. If you default:

- You will be required to immediately repay the entire unpaid amount of your loan.
- We may sue you, take all or part of your federal tax refund or other federal payments, and/or garnish your wages so that your employer is required to send us part of your wages to pay off your loan.
- You will be required to pay reasonable collection fees and costs, plus court costs and attorney fees.
- You will lose eligibility for other federal student aid and assistance under most federal benefit programs.
- You will lose eligibility for loan deferments.

- We will report your default to national consumer reporting agencies (see Item 15).

**15. Consumer reporting agency notification.** We will report information about your loan to each national consumer reporting agency on a regular basis. This information will include the disbursement dates, amount, and repayment status of your loan (for example, whether you are current or delinquent in making payments). Your loan will be identified as an education loan.

If you default on a loan, we will report the default to national consumer reporting agencies. We will notify you at least 30 days in advance that we plan to report default information to a consumer reporting agency unless you resume making payments on the loan within 30 days of the date of the notice. You will be given a chance to ask for a review of the debt before we report it.

If a consumer reporting agency contacts us regarding objections you have raised about the accuracy or completeness of any information we have reported, we are required to provide the consumer reporting agency with a prompt response.

**16. Deferment and forbearance (postponing payments).** If you meet certain requirements, you may receive a **deferment** that allows you to temporarily stop making payments on your loan. If you cannot make your scheduled loan payments, but do not qualify for a deferment, we may give you a **forbearance**. A forbearance allows you to temporarily stop making payments on your loan, temporarily make smaller payments, or extend the time for making payments.

**Deferment**

You may receive a deferment:

- While you are enrolled at least half time at an eligible school;
- While you are in a full-time course of study in a graduate fellowship program;
- While you are in an approved full-time rehabilitation program for individuals with disabilities;
- While you are unemployed (for a maximum of three years; you must be diligently seeking, but unable to find, full-time employment); or
- While you are experiencing an economic hardship (including Peace Corps service), as determined under the Act (for a maximum of three years).
- While you are serving on active duty during a war or other military operation or national emergency, or performing qualifying National Guard duty during a war or other military operation or national emergency, and if you were serving on or after October 1, 2007, for an additional 180-day period following the demobilization date for your qualifying service; or
- If you are a member of the National Guard or other reserve component of the U.S. Armed Forces (current or retired) and you are called or ordered to active duty while enrolled at an eligible school, or within 6 months of having been enrolled at least half time, you are eligible for a deferment during the 13 months following the conclusion of the active duty service, or until you return to enrolled student status on at least a half-time basis, whichever is earlier.

You may be eligible to receive additional deferments if, at the time you received your first Direct Loan, you had an outstanding balance on a loan made under the Federal Family Education Loan (FFEL) Program before July 1, 1993. If you meet this requirement, contact your servicer about additional deferments that may be available.

You may receive a deferment while you are enrolled in school on at least a half-time basis if: **(1)** you submit a deferment request form to your servicer along with documentation of your eligibility for the deferment; or **(2)** your servicer receives information from the school you are attending that indicates you are enrolled at least half time. If your servicer processes a deferment based on information received from your school, you will be notified of the deferment and will have the option of canceling the deferment and continuing to make payments on your loan.

For all other deferments, you (or, for a deferment based on active military duty or qualifying National Guard duty during a war or other military operation or national emergency, your representative) must submit a deferment request form to your servicer, along with documentation of your eligibility for the deferment. In certain circumstances, you may not be required to provide documentation of your eligibility if your servicer confirms that you have been granted the same deferment for the same period of time on a FFEL Program loan. Your servicer can provide you with a deferment request form that explains the requirements for the type of deferment you are requesting. You may also obtain deferment request forms and information on deferment eligibility requirements from your servicer's web site.

If you are in default on your loan, you are not eligible for a deferment.

You are responsible for paying the interest that accrues on a Direct Unsubsidized Consolidation Loan during a deferment period. You are not responsible for paying the interest that accrues on a Direct Subsidized Consolidation Loan during a deferment period.

**Forbearance**

We may give you a forbearance if you are temporarily unable to make your scheduled loan payments for reasons including, but not limited to, financial hardship and illness.

We will give you a forbearance if:

- You are serving in a medical or dental internship or residency program, and you meet specific requirements;
- The total amount you owe each month for all of the student loans you received under Title IV of the Act is 20% or more of your total monthly gross income (for a maximum of three years);
- You are serving in a national service position for which you receive a national service education award under the National and Community Service Act of 1990 (AmeriCorps). In some cases, the interest that accrues on a qualified loan during the service period will be paid by the Corporation for National and Community Service;
- You qualify for partial repayment of your loans under the Student Loan Repayment Program, as administered by the Department of Defense;
- You are performing service that would qualify you for loan forgiveness under the teacher loan forgiveness program that is available to certain Direct Loan and FFEL program borrowers; or
- You are a member of the National Guard who qualifies for a post-active duty student deferment but not for a military service deferment or other deferment, and you are engaged in active state duty for a period of more than 30 consecutive days.

To request a forbearance, contact your servicer. Your servicer can provide you with a forbearance request form that explains the requirements for the type of forbearance you are requesting. You may also obtain forbearance request forms and information on forbearance eligibility requirements from your servicer's web site. Under certain circumstances, we may give you a forbearance without requiring you to submit a request or documentation. These circumstances include, but are not limited to, the following:

- Periods necessary for us to determine your eligibility for a loan discharge;
- A period of up to 60 days for us to collect and process documentation related to your request for a deferment, forbearance, change in repayment plan, or consolidation loan (we do not capitalize interest charged during this period); or
- Periods when you are involved in a military mobilization or are affected by a local or national emergency.

You are responsible for paying the interest that accrues on your entire Direct Consolidation Loan during a forbearance period.

**17. Discharge (having your loan forgiven).** We will discharge (forgive) your Direct Consolidation Loan if:

- Your servicer receives acceptable documentation of your death. We will also discharge the portion of a Direct Consolidation Loan that repaid one or more Direct PLUS Loans or Federal PLUS Loans obtained on behalf of a student who dies.
- Your loan is discharged in bankruptcy. However, federal student loans are not automatically discharged if you file for bankruptcy. To have your loan discharged in bankruptcy, you must prove to the bankruptcy court in an adversary proceeding that repaying the loan would cause undue hardship.
- You become totally and permanently disabled (as defined in the Act) and meet certain other requirements.

In certain cases, we may also discharge all or a portion of your Direct Consolidation Loan if:

- One or more Direct Loan Program, FFEL Program, or Federal Perkins Loan Program loans that you consolidated was used to pay for a program of study that you (or the dependent student for whom you borrowed a PLUS loan) were unable to complete because the school closed;
- Your eligibility (or the eligibility of the dependent student for whom you borrowed a PLUS loan) for one or more of the Direct Loan Program or FFEL Program loans that you consolidated was falsely certified by the school;

- Your eligibility for one or more of the Direct Loan Program or FFEL Program loans that you consolidated was falsely certified as a result of a crime of identity theft; or
- The school did not pay a required refund of one or more Direct Loan Program or FFEL Program loans that you consolidated.

We may forgive a portion of your Direct Consolidation Loan that repaid Direct Subsidized or Direct Unsubsidized Loans you received after October 1, 1998, or subsidized or unsubsidized Federal Stafford Loans you received under the FFEL program after October 1, 1998 if you: **(1)** teach full time for five consecutive years in certain elementary and/or secondary schools or educational service agencies that serve low-income families; **(2)** meet certain other qualifications; and **(3)** did not owe a Direct Loan or a FFEL Program loan as of October 1, 1998, or as of the date you obtain a loan after October 1, 1998.

A Public Service Loan Forgiveness program is available that provides for the cancellation of the remaining balance due on your eligible Direct Loan Program loans after you have made 120 full, on-time, scheduled monthly payments (after October 1, 2007) on those loans under certain repayment plans while you are employed full-time by certain public service organizations.

The Act may provide for certain loan forgiveness or repayment benefits on your loans in addition to the benefits described above. If other forgiveness or repayment options become available, your servicer will provide information about these benefits.

To request a loan discharge based on one of the conditions described above (except for discharges due to death or bankruptcy), you must complete an application that you may obtain from your servicer.

In some cases, you may assert, as a defense against collection of your loan, that the school did something wrong or failed to do something that it should have done. You can make such a defense against repayment only if the school's act or omission directly relates to your loan or to the educational services that the loan was intended to pay for, and if what the school did or did not do would give rise to a legal cause of action against the school under applicable state law. If you believe that you have a defense against repayment of your loan, contact your servicer.

We do not guarantee the quality of the academic programs provided by schools that participate in federal student financial aid programs. You must repay your loan even if you do not complete your education, are unable to obtain employment in your field of study, or are dissatisfied with, or do not receive, the education you paid for with the loan.

**18. Department of Defense and other federal agency loan repayment.** Under certain circumstances, military personnel may have education loans repaid by the Secretary of Defense. This benefit is offered as part of a recruitment program that does not apply to individuals based on their previous military service or to those who are not eligible for enlistment in the U.S. Armed Forces. For more information, contact your local military service recruitment office.

Other agencies of the federal government may also offer student loan repayment programs as an incentive to recruit and retain employees. Contact the agency's human resources department for more information.

*END OF BORROWER'S RIGHTS AND RESPONSIBILITIES STATEMENT*

**IMPORTANT NOTICES**

**Gramm-Leach-Bliley Act Notice**

In 1999, Congress enacted the Gramm-Leach-Bliley Act (Public Law 106-102). This Act requires that lenders provide certain information to their customers regarding the collection and use of nonpublic personal information.

We disclose nonpublic personal information to third parties only as necessary to process and service your loan and as permitted by the Privacy Act of 1974. See the Privacy Act Notice below. We do not sell or otherwise make available any information about you to any third parties for marketing purposes.

We protect the security and confidentiality of nonpublic personal information by implementing the following policies and practices. All physical access to the sites where nonpublic personal information is maintained is controlled and monitored by security personnel. Our computer systems offer a high degree of resistance to tampering and circumvention. These systems limit data access to our staff and contract staff on a "need-to-know" basis, and control individual users' ability to access and alter records within the systems. All users of these systems are given a unique user ID with personal identifiers. All interactions by individual users with the systems are recorded.

**Privacy Act Notice**

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authority for collecting the requested information from and about you is §451 et seq. of the Higher Education Act (HEA) of 1965, as amended (20 U.S.C. 1087a et seq.) and the authorities for collecting and using your Social Security Number (SSN) are §484(a)(4) of the HEA (20 U.S.C. 1091(a)(4)) and 31 U.S.C. 7701(b). Participating in the William D. Ford Federal Direct Loan (Direct Loan) Program and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge, or forgiveness) under the Direct Loan Program, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect and report on your loan(s) if your loan(s) become delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed, on a case-by-case basis or under a computer matching program, to third parties as authorized under routine uses in the appropriate systems of records notices. The routine uses of this information include, but are not limited to, its disclosure to federal, state, or local agencies, to private parties such as relatives, present and former employers, business and personal associates, to consumer reporting agencies, to financial and educational institutions, and to guaranty agencies in order to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan, to permit the servicing or collection of your loan(s), to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, or to locate you if you become delinquent in your loan payments or if you default. To provide default rate calculations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to state agencies. To provide financial aid history information, disclosures may be made to educational institutions. To assist program administrators with tracking refunds and cancellations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal or state agencies. To provide a standardized method for educational institutions to efficiently submit student enrollment status, disclosures may be made to guaranty agencies or to financial and educational institutions. To counsel you in repayment efforts, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal, state, or local agencies.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary

actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may be made to our contractors for the purpose of performing any programmatic function that requires disclosure of records. Before making any such disclosure, we will require the contractor to maintain Privacy Act safeguards. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

**Financial Privacy Act Notice**

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), ED will have access to financial records in your student loan file maintained in compliance with the administration of the Direct Loan Program.

**Paperwork Reduction Notice**

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless the collection displays a valid OMB control number. Public reporting burden for this collection of information is estimated to average 1.0 hour (60 minutes) per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this collection is required to obtain a benefit in accordance with 34 CFR 685.201(c)(1). Send comments regarding the burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Education, 400 Maryland Ave., SW, Washington, DC 20210-4537 or e-mail ICDocketMgr@ed.gov and reference OMB Control Number 1845-0053. **Note: Please do not return the completed Federal Direct Consolidation Loan Application and Promissory Note to this address.**

**If you have any questions regarding the status of your individual submission of this form, write directly to:**

**U.S. Department of Education**
**Consolidation Department**
**P.O. Box 242800**
**Louisville, KY 40224-2800**

# **<u>EXHIBIT B</u>**

# Direct Loans
*William D. Ford Federal Direct Loan Program*

## Federal Direct Stafford/Ford Loan
## Federal Direct Unsubsidized Stafford/Ford Loan
## Master Promissory Note
## William D. Ford Federal Direct Loan Program

OMB No. 1845-0007
Form Approved
Exp. Date 05/01/2011

**Warning:** Any person who knowingly makes a false statement or misrepresentation on this form will be subject to penalties which may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

### SECTION A: BORROWER INFORMATION — READ THE INSTRUCTIONS IN SECTION F BEFORE COMPLETING THIS SECTION

1. Driver's License State and No.

2. Social Security No.

3. E-mail Address (optional)

4. Name and Address
STRUPECK , ZACK M

5. Date of Birth

6. Area Code/Telephone No

REDACTED

7. References: List two persons with different U.S. addresses who have known you for at least three years. The first reference should be a parent or legal guardian.

| | 1. | 2. |
|---|---|---|
| Name | Karen A Volk | John C McCown |
| Permanent Street Address | | |
| City, State, Zip Code | | |
| Area Code/Telephone No. | | |
| Relationship to Borrower | | |

### SECTION B: SCHOOL INFORMATION — TO BE COMPLETED BY THE SCHOOL

8. School Name and Address
JOHN MARSHALL LAW SCHOOL (THE)
315 SOUTH PLYMOUTH COURT
CHICAGO , IL 606043968

9. School Code/Branch
G01698

10. Identification No.
338846287M13G01698999

### SECTION C: BORROWER REQUEST, CERTIFICATIONS, AUTHORIZATIONS, AND UNDERSTANDINGS — READ CAREFULLY BEFORE SIGNING BELOW

11. This is a Master Promissory Note (MPN) for one or more Federal Direct Stafford/Ford (Direct Subsidized) Loans and/or Federal Direct Unsubsidized Stafford/Ford (Direct Unsubsidized) Loans. I request a total amount of Direct Subsidized Loans and/or Direct Unsubsidized Loans under this MPN not to exceed the allowable maximums under the Act ("the Act" is defined in Section E under Governing Law). My school will notify me of the loan type and loan amount that I am eligible to receive. I may cancel a loan or request a lower amount by contacting my school. Additional information about my right to cancel a loan or request a lower amount is included in the Borrower's Rights and Responsibilities Statement and in the disclosure statements that will be provided to me.

12. Under penalty of perjury, I certify that:

A. The information I have provided on this MPN and as updated by me from time to time is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

B. I will use the proceeds of loans made under this MPN for authorized educational expenses that I incur and I will immediately repay any loan proceeds that cannot be attributed to educational expenses for attendance on at least a half-time basis at the school that certified my loan eligibility.

C. If I owe an overpayment on a Federal Perkins Loan, Federal Pell Grant, Federal Supplemental Educational Opportunity Grant, Academic Competitiveness Grant (ACG), National Science or Mathematics Access to Retain Talent (SMART) Grant, or Leveraging Educational Assistance Partnership Grant, I have made satisfactory arrangements to repay the amount owed.

D. If I am in default on any loan received under the Federal Perkins Loan Program (including National Direct Student Loans), the William D. Ford Federal Direct Loan (Direct Loan) Program, or the Federal Family Education Loan (FFEL) Program, I have made satisfactory repayment arrangements with the holder to repay the amount owed.

E. If I have been convicted of, or pled nolo contendere(no contest) or guilty to, a crime involving fraud in obtaining funds under title IV of the Higher Education Act of 1965 (HEA), as amended, I have completed the repayment of the funds to the U.S. Department of Education (ED) or to the loan holder in the case of a Title IV federal student loan.

13. For each Direct Subsidized Loan and Direct Unsubsidized Loan I receive under this MPN, I make the following authorizations:

A. I authorize my school to certify my eligibility for the loan.

B. I authorize my school to credit my loan proceeds to my student account at the school.

C. I authorize my school to pay to ED any refund that may be due up to the full amount of the loan.

D. I authorize ED to investigate my credit record and report information about my loan status to persons and organizations permitted by law to receive that information.

E. Unless I notify ED differently, I authorize ED to defer repayment of principal on my loan while I am enrolled at least half time at an eligible school.

F. I authorize my school and ED to release information about my loan to the references on the loan and to members of my immediate family, unless I submit written directions otherwise.

G. I authorize my schools, lenders and guarantors, ED, and their agents to release information about my loan to each other.

H. I authorize my schools, ED, and their respective agents and contractors to contact me regarding my loan request or my loan, including repayment of my loan, at the current or any future number that I provide for my cellular telephone or other wireless device using automated dialing equipment or artificial or prerecorded voice or text messages.

14. I will be given the opportunity to pay the interest that ED charges during grace, in-school, deferment, forbearance, and other periods as provided under the Act, including during in-school deferment periods. Unless I pay the interest, I understand that ED may add unpaid interest that is charged on each loan made under this MPN to the principal balance of that loan (this is called "capitalization") at the end of the grace, deferment, forbearance, or other period. Capitalization will increase the principal balance on my loan and the total amount of interest I must pay.

15. I understand that ED has the authority to verify information reported on this MPN with other federal agencies.

### SECTION D: PROMISE TO PAY

16. I promise to pay to ED all loan amounts disbursed under the terms of this MPN, plus interest and other charges and fees that may become due as provided in this MPN. I understand that more than one loan may be made to me under this MPN. I understand that by accepting any disbursement issued at any time under this MPN, I agree to repay the loan associated with that disbursement. I understand that, within certain timeframes, I may cancel or reduce the amount of a loan by refusing to accept or by returning all or a portion of any disbursement that is issued. Unless I make interest payments, interest that ED charges on my loans during grace, in-school, deferment, forbearance, and other periods will be added to the principal balance of the loan as provided under the Act. If I do not make a payment on a loan made under this MPN when it is due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees. I will not sign this MPN before reading the entire MPN, even if I am told not to read it, or told that I am not required to read it. I am entitled to an exact copy of this MPN and the Borrower's Rights and Responsibilities Statement. My signature certifies that I have read, understand, and agree to the terms and conditions of this MPN, including the Borrower Request, Certifications, Authorizations, and Understanding in Section C, the Notice About Subsequent Loans Made Under this MPN in Section E, and the terms and conditions described in Section E of this MPN and in the Borrower's Rights and Responsibilities Statement.

**I UNDERSTAND THAT I MAY RECEIVE ONE OR MORE LOANS UNDER THIS MPN, AND THAT I MUST REPAY ALL LOANS THAT I RECEIVE UNDER THIS MPN.**

17. Borrower's Signature    Zack M Strupeck

18. Today's Date (mm-dd-yyyy)   07/09/2012

Revised 07/2010

# Direct Subsidized Loan and Direct Unsubsidized Loan MPN (continued)

## SECTION E: MPN TERMS AND CONDITIONS

### GOVERNING LAW

The terms of this Application and Master Promissory Note (MPN) will be interpreted in accordance with the Higher Education Act of 1965, as amended (20. U.S.C. 1070 et seq.), the U.S. Department of Education's (ED's) regulations, as they may be amended in accordance with their effective date, and other applicable federal laws and regulations (collectively referred to as the "Act"). Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this MPN.

### DISCLOSURE OF LOAN TERMS

This MPN applies to Federal Direct Stafford/Ford (Direct Subsidized) Loans and Federal Direct Unsubsidized Stafford/Ford (Direct Unsubsidized) Loans. Under this MPN, the principal amount that I owe, and am required to repay, will be the sum of all disbursements that are made (unless I reduce or cancel any disbursements as explained below under Loan Cancellation), plus any unpaid interest that is capitalized and added to the principal amount.

At or before the time of the first disbursement of each loan, a disclosure statement will be sent to me identifying the amount of the loan and additional terms of the loan. Important additional information is also contained in the Borrower's Rights and Responsibilities Statement accompanying this MPN. The Borrower's Rights and Responsibilities Statement and any disclosure statement I receive in connection with any loan under this MPN are hereby incorporated into this MPN.

Loans disbursed under this MPN are subject to the annual and aggregate loan limits specified under the Act. I may request additional loan funds to pay for my educational costs up to the annual and aggregate loan limits by contacting my school's financial aid office. My school will determine if I am eligible for any additional loan funds. I will be notified of any increase or other change in the amount of my loan.

My eligibility for Direct Subsidized Loans and Direct Unsubsidized Loans may increase or decrease based on changes in my financial circumstances. My school will notify me of any changes in my eligibility. I will be notified of any increase or decrease in the amount of my loan.

I understand that each loan made under this MPN is separately enforceable based on a true and exact copy of this MPN.

### LOAN CANCELLATION

I may pay back all or part of a disbursement within the timeframes set by the Act, as explained in the Borrower's Rights and Responsibilities Statement and in a disclosure statement that I will receive. If I return the full loan amount within those timeframes, I will not incur any loan fee or interest charges. If I return part of a disbursement within those timeframes, the loan fee and interest charges will be reduced in proportion to the amount returned.

### INTEREST

Unless ED notifies me in writing of a lower rate, the interest rate for any loan I receive under this MPN is determined using a formula specified in the Act. As explained in the Borrower's Rights and Responsibilities Statement, I will be notified of the actual interest rate for each loan that I receive.

ED does not charge interest on a Direct Subsidized Loan during an in-school, grace, or deferment period, and during certain periods of repayment under the Income-Based Repayment Plan. ED charges interest on a Direct Subsidized Loan during all other periods (including forbearance periods), starting on the day after my grace period ends. ED charges interest on a Direct Unsubsidized Loan during all periods (including in-school, grace, deferment, and forbearance periods), starting on the date of the first disbursement. I agree to pay all interest that is charged to me. I will be given the opportunity to pay the interest that accrues during grace, in-school, deferment, forbearance, or other periods as provided under the Act.

If I do not pay the interest, I understand that ED may capitalize the interest at the end of the grace, deferment, forbearance, or other period.

### LOAN FEE

A loan fee is charged for each Direct Subsidized Loan and Direct Unsubsidized Loan as provided by the Act, and will be deducted proportionately from each disbursement of each of my loans. The loan fee will be shown on disclosure statements that will be issued to me. I understand the loan fee may be refundable only as permitted by the Act.

### LATE CHARGES AND COLLECTION COSTS

ED may collect from me: (1) a late charge of not more than six cents for each dollar of each late payment if I fail to make any part of a required installment payment within 30 days after it becomes due, and (2) any other charges and fees that are permitted by the Act related to the collection of my loans. If I default on my loans, I will pay reasonable collection costs, plus court costs and attorney fees.

### GRACE PERIOD

I will receive a six-month grace period on repayment of each loan made under this MPN. The grace period begins the day after I cease to be enrolled at least half time at an eligible school. I am not required to make any payments on my loan during the grace period. However, interest will accrue on my Direct Unsubsidized Loan during the grace period and will be capitalized if I do not repay it.

### REPAYMENT

I must repay the full amount of the loans made under this MPN, plus accrued interest. I will repay each loan in monthly installments during a repayment period that begins on the day immediately following my 6-month grace period on that loan. Payments made by me or on my behalf will be applied first to late charges and collection costs that are due, then to interest that has not been paid, and finally to the principal amount of the loan, except during periods of repayment under an Income-Based Repayment Plan, when payments will be applied first to interest that is due, then to fees that are due, and then to the principal amount.

ED will provide me with a choice of repayment plans. Information on these repayment plans is included in the Borrower's Rights and Responsibilities Statement.

ED will provide me with a repayment schedule that identifies my payment amounts and due dates. If I am unable to make my scheduled loan payments, ED may allow me to temporarily stop making payments, reduce my payment amount, or extend the time for making payments, as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance.

ED may adjust payment dates on my loans or may grant me forbearance to eliminate a delinquency that remains even though I am making scheduled installment payments.

I may prepay all or any part of the unpaid balance on my loans at any time without penalty. If I do not specify which loans I am prepaying, ED will determine how to apply the prepayment in accordance with the Act. After I have repaid in full a loan made under this MPN, ED will send me a notice telling me that I have paid off my loan.

### ACCELERATION AND DEFAULT

At ED's option, the entire unpaid balance of a loan made under this MPN will become immediately due and payable (this is called "acceleration") if any one of the following events occurs: (1) I do not enroll as at least a half-time student at the school that certified my loan eligibility; (2) I do not use the proceeds of the loan solely for my educational expenses; (3) I make a false representation that results in my receiving a loan for which I am not eligible; or (4) I default on the loan.

The following events will constitute a default on my loan: (1) I do not pay the entire unpaid balance of the loan after ED has exercised its option under items (1), (2), and (3) in the preceding paragraph; (2) I do not make installment payments when due, provided my failure has persisted for at least 270 days; or (3) I do not comply with other terms of the loan, and ED reasonably concludes that I no longer intend to honor my repayment obligation. If I default, ED may capitalize all the outstanding interest into a new principal balance, and collection costs will become immediately due and payable.

If I default, the default will be reported to national consumer reporting agencies and will significantly and adversely affect my credit history. I understand that a default will have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement.

### LEGAL NOTICES

Any notice required to be given to me will be effective if mailed by first class mail to the most recent address ED has for me. I will immediately notify ED of a change of address or status as specified in the Borrower's Rights and Responsibilities Statement.

If ED fails to enforce or insist on compliance with any term of this MPN, this does not waive any right of ED. No provision of this MPN may be modified or waived except in writing by ED. If any provision of this MPN is determined to be unenforceable, the remaining provisions will remain in force.

Information about my loans will be submitted to the National Student Loan Data System (NSLDS). Information in NSLDS is accessible to schools, lenders, and guarantors for specific purposes as authorized by ED.

---

### NOTICE ABOUT SUBSEQUENT LOANS MADE UNDER THIS MPN

This MPN authorizes ED to disburse multiple loans to me to pay my educational expenses during the multi-year term of this MPN, upon my request and upon my school's annual certification of my loan eligibility.

At schools that are authorized to use the multi-year feature of the MPN and choose to do so, subsequent loans may be made under this MPN for subsequent academic years. At any school, subsequent loans may be made under this MPN for the same academic year.

I understand that no subsequent loan will be made under this MPN after the earliest of the following dates: (1) the date ED or my school receives my written notice that no further loans may be made; (2) one year after the date I sign the MPN or the date ED receives the MPN if no disbursements are made under the MPN; or (3) ten years after the date I sign the MPN or the date ED receives the MPN.

Any amendment to the Act governs the terms of any loan disbursed on or after the effective date of the amendment, and any amended terms are considered part of this MPN.

---

Revised 07/2010

## Direct Subsidized Loan and Direct Unsubsidized Loan MPN *(continued)*

This is a Master Promissory Note (MPN) under which you may receive multiple Direct Subsidized Loans and/or Direct Unsubsidized Loans over a maximum ten-year period.

Print using a blue or black ink ballpoint pen or type. Do not use pencil. Report all dates as month-day-year (mm-dd-yyyy). Use only numbers. Example: June 24, 1982 = 06-24-1982.

Some of the items in Section A may have been completed for you. If so, review these items carefully to make sure that the information is correct. Cross out any information that is incorrect and enter the correct information. Put your initials next to any information that you change.

### SECTION A: BORROWER INFORMATION

**Item 1.** Enter the two-letter abbreviation for the state that issued your current driver's license, followed by your driver's license number. If you do not have a driver's license, enter N/A.

**Item 2.** Enter your nine-digit Social Security Number.

**Item 3.** Enter your preferred e-mail address for receiving communications. You are not required to provide this information. If you do, we may use your e-mail address to communicate with you. If you do not have an e-mail address or do not wish to provide one, enter N/A.

**Item 4.** Enter your last name, then your first name and middle initial. Enter your permanent address (number, street, apartment number, or rural route number and box number, then city, state, zip code). If your mailing address is a post office box or general delivery, you must list **both** your street address and your mailing address. A temporary school address is not acceptable.

**Item 5.** Enter your date of birth.

**Item 6.** Enter the area code and telephone number at which you can most easily be reached. If you do not have a telephone, enter N/A.

**Item 7.** Enter the requested information for two adults with different U.S. addresses who have known you for at least three years. The first reference should be a parent or legal guardian. References who live outside the United States are not acceptable. If a reference does not have a telephone number, enter N/A.

### SECTION B: SCHOOL INFORMATION

*This section will be completed by the school that certifies your loan eligibility.*

### SECTION C: BORROWER REQUEST, CERTIFICATIONS, AUTHORIZATIONS, AND UNDERSTANDINGS

**Items 11, 12, 13, 14, and 15.** Read these items carefully.

### SECTION D: PROMISE TO PAY

**Item 16.** Read this item carefully.

**Items 17 and 18.** Sign your full legal name, in blue or black ink, and enter the date you signed this MPN.

By signing this MPN, you:

(1) Acknowledge that you have read, understand, and agree to the terms and conditions of the MPN, including the Borrower Request, Certifications, Authorizations, and Understanding in Section C and the accompanying Borrower's Rights and Responsibilities Statement; and

(2) Agree to repay the loan(s) in full according to the terms and conditions of the MPN.

**GRAMM-LEACH-BLILEY ACT NOTICE**

In 1999, Congress enacted the Gramm-Leach-Bliley Act (Public Law 106-102). This Act requires that lenders provide certain information to their customers regarding the collection and use of nonpublic personal information.

We disclose nonpublic personal information to third parties only as necessary to process and service your loan and as permitted by the Privacy Act of 1974. See the Privacy Act Notice below. We do not sell or otherwise make available any information about you to any third parties for marketing purposes.

We protect the security and confidentiality of nonpublic personal information by implementing the following policies and practices. All physical access to the sites where nonpublic personal information is maintained is controlled and monitored by security personnel. Our computer systems offer a high degree of resistance to tampering and circumvention. These systems limit data access to our staff and contract staff on a "need-to-know" basis, and control individual users' ability to access and alter records within the systems. All users of these systems are given a unique user ID with personal identifiers. All interactions by individual users with the systems are recorded.

**PRIVACY ACT NOTICE**

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authority for collecting the requested information from and about you is §451 et seq. of the Higher Education Act (HEA) of 1965, as amended (20 U.S.C. 1087a et seq.) and the authorities for collecting and using your Social Security Number (SSN) are §484(a)(4) of the HEA (20 U.S.C. 1091(a)(4)) and 31 U.S.C. 7701(b). Participating in the William D. Ford Federal Direct Loan (Direct Loan) Program and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge, or forgiveness) under the Direct Loan Program, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect and report on your loan(s) if your loan(s) become delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed, on a case-by-case basis or under a computer matching program, to third parties as authorized under routine uses in the appropriate systems of records notices. The routine uses of this information include, but are not limited to, its disclosure to federal, state, or local agencies, to private parties such as relatives, present and former employers, business and personal associates, to consumer reporting agencies, to financial and educational institutions, and to guaranty agencies in order to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan, to permit the servicing or collection of your loan(s), to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, or to locate you if you become delinquent in your loan payments or if you default. To provide default rate calculations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to state agencies. To provide financial aid history information, disclosures may be made to educational institutions. To assist program administrators with tracking refunds and cancellations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal or state agencies. To provide a standardized method for educational institutions to efficiently submit student enrollment status, disclosures may be made to guaranty agencies or to financial and educational institutions. To counsel you in repayment efforts, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal, state, or local agencies.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may be made to our contractors for the purpose of performing any programmatic function that requires disclosure of records. Before making any such disclosure, we will require the contractor to maintain Privacy Act safeguards. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

**FINANCIAL PRIVACY ACT NOTICE**

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), ED will have access to financial records in your student loan file maintained in compliance with the administration of the Direct Loan Program.

**PAPERWORK REDUCTION NOTICE**

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0007. The time required to complete this information collection is estimated to average 0.5 hours (30 minutes) per response, including the time to review instructions, search existing data sources, gather and maintain the data needed, and complete and review the information. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving the form, please write to: U.S. Department of Education, Washington, DC 20202-4537.

If you have any comments or concerns regarding the status of *your individual submission* of this form, write directly to:

U.S. Department of Education
Common Origination and Disbursement School Relations Center
Attn: Applicant Services
PO Box 9002
Niagara Falls, NY 14302

Revised 07/2010

# William D. Ford Federal Direct Loan Program
## Direct Subsidized Loan and Direct Unsubsidized Loan Borrower's Rights and Responsibilities Statement

**Important Notice:** This Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of the loans you receive under the accompanying Master Promissory Note (MPN) for Federal Direct Stafford/Ford Loans (Direct Subsidized Loans) and Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans). Please keep this Borrower's Rights and Responsibilities Statement for your records. You may request another copy of this Borrower's Rights and Responsibilities Statement at any time by contacting your servicer.

Throughout this Borrower's Rights and Responsibilities Statement, the words "we," "us," and "our" refer to the U.S. Department of Education. The word "loan" refers to one or more loans made under the accompanying MPN.

**1. The William D. Ford Federal Direct Loan Program.** The William D. Ford Federal Direct Loan (Direct Loan) Program includes the following types of loans, known collectively as "Direct Loans":

- Federal Direct Stafford/Ford Loans (Direct Subsidized Loans)
- Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans)
- Federal Direct PLUS Loans (Direct PLUS Loans)
- Federal Direct Consolidation Loans (Direct Consolidation Loans)

The Direct Loan Program is authorized by Title IV, Part D, of the Higher Education Act of 1965, as amended.

You must complete a Free Application for Federal Student Aid (FAFSA) before you receive a Direct Subsidized Loan or Direct Unsubsidized Loan.

Direct Loans are made by the U.S. Department of Education. Your servicer services, answers questions about, and processes payments on Direct Loans. We will provide you with the address and telephone number of your servicer after the school notifies us that the first disbursement of your loan has been made.

**2. Laws that apply to this MPN.** The terms and conditions of loans made under this MPN are determined by the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.) and other applicable federal laws and regulations. These laws and regulations are referred to as "the Act" throughout this Borrower's Rights and Responsibilities Statement. State law, unless it is preempted by federal law, may provide you with certain rights, remedies, and defenses in addition to those stated in the MPN and this Borrower's Rights and Responsibilities Statement.

**NOTE:** Any change to the Act applies to loans in accordance with the effective date of the change.

**3. Direct Subsidized Loans and Direct Unsubsidized Loans.** Direct Subsidized Loans and Direct Unsubsidized Loans are made to students to help pay for the cost of education beyond high school. To receive a Direct Subsidized Loan, you must have financial need. We do not charge interest on Direct Subsidized Loans while you are in school and during certain other periods. Direct Unsubsidized Loans are not based on financial need. We charge interest on Direct Unsubsidized Loans during all periods. For more information on interest charges, see item #9 of this Borrower's Rights and Responsibilities Statement ("Payment of Interest").

**4. About the MPN.** You may receive more than one loan under this MPN over a period of up to 10 years to pay for your educational costs, as long as the school you are attending is authorized to use the multi-year feature of the MPN and chooses to do so.

If your school is not authorized to use the multi-year feature of the MPN or chooses not to do so, or if you do not want to receive more than one loan under this MPN, you must sign a new MPN for each loan that you receive.

If you do not want to receive more than one loan under this MPN, you must notify your school or your servicer in writing.

**5. Use of your loan money.** You may use the loan money you receive only to pay for your authorized educational expenses for attendance at the school that determined you were eligible to receive the loan. Authorized expenses include the following:

- Tuition
- Room
- Board
- Institutional fees
- Books
- Supplies
- Equipment
- Dependent child care expenses
- Transportation
- Commuting expenses
- Rental or purchase of a personal computer
- Loan fees
- Other documented, authorized costs

**6. Information you must report to us after you receive your loan.** You must notify your servicer and/or the financial aid office at your school about certain changes.

Until you graduate or otherwise leave school, you must notify your school's financial aid office if you:

- Change your address or telephone number;
- Change your name (for example, maiden name to married name);
- Do not enroll at least half-time for the loan period certified by the school
- Do not enroll at the school that determined you were eligible to receive the loan;
- Stop attending school or drop below half-time enrollment;
- Transfer from one school to another school; or
- Graduate.

You must also notify your servicer if any of the above events occur at any time after you receive your loan. In addition, you must notify your servicer if you:

- Change your employer, or your employer's address or telephone number changes; or
- Have any other change in status that would affect your loan (for example, if you received a deferment while you were unemployed, but you have found a job and therefore no longer meet the eligibility requirements for the deferment).

**7. Amount you may borrow.** The charts that follow show the maximum amounts of Direct Subsidized Loans and Direct Unsubsidized Loans that you may borrow for a single academic year (annual loan limits), and the maximum amounts that you may borrow in total for undergraduate and graduate study (aggregate loan limits). The annual and aggregate loan limits for independent undergraduates also apply to dependent undergraduates whose parents are unable to borrow under the PLUS program. If you are enrolled in certain health professions programs, you may qualify for higher annual and aggregate limits on Direct Unsubsidized Loans.

The actual loan amount you receive will be determined by your school, based on your academic level, dependency status, and other factors such as:

- The length of the program or the remaining portion of the program in which you are enrolled, if it is less than a full academic year;
- Your cost of attendance;
- Your Expected Family Contribution;
- Other financial aid you receive; and
- Your remaining eligibility under the annual or aggregate loan limits.

The actual amount you receive for an academic year may be less than the maximum annual amounts shown in the charts.

If you are an undergraduate student, your school must determine your eligibility for a Federal Pell Grant before you may receive a Direct Subsidized Loan or Direct Unsubsidized Loan. Your school is also required to determine your eligibility for a Direct Subsidized Loan before determining your eligibility for a Direct Unsubsidized Loan.

If you have received student loans from another federal student loan program, your are responsible for informing your school and your lender of your other student loans. In some cases, you may not be eligible for loans for which you have applied.

**Annual Loan Limits for Direct Subsidized Loans and Direct Unsubsidized Loans:**

| Dependent Undergraduate Students (except students whose parents cannot borrow PLUS loans): | |
|---|---|
| First Year Total (maximum $3,500 subsidized) | $5,500 |
| Second Year Total (maximum $4,500 subsidized) | $6,500 |
| Third Year and Beyond (each year) (maximum $5,500 subsidized) | $7,500 |

| Independent Undergraduate Students (and dependent students whose parents cannot borrow PLUS loans): | |
|---|---|
| First Year Total (maximum $3,500 subsidized) | $9,500 |
| Second Year (maximum $4,500 subsidized) | $10,500 |
| Third Year and Beyond (each year) (maximum $5,500 subsidized) | $12,500 |

| Graduate and Professional Students: | |
|---|---|
| Total Amount (each year) (maximum $8,500 subsidized) | $20,500 |

**Aggregate Loan Limits for Direct Subsidized and Direct Unsubsidized Loans:**

| Dependent Undergraduate Students (except students whose parents cannot borrow PLUS loans): | |
|---|---|
| Total Amount Cumulative (maximum $23,000 subsidized) | $31,000 |

| Independent Undergraduate Students (and dependent students whose parents cannot borrow PLUS loans): | |
|---|---|
| Total Amount Cumulative (maximum $23,000 subsidized) | $57,500 |

| Graduate and Professional Students: | |
|---|---|
| Total Amount Cumulative (maximum $65,500 subsidized; includes Stafford Loans received for undergraduate study) | $138,500 |

**8. Interest rate.** The interest rate on Direct Subsidized Loans and Direct Unsubsidized Loans is a fixed rate. Different fixed interest rates may apply to separate loans made under this MPN depending on whether the loan is subsidized or unsubsidized, when the loan is first disbursed, and whether you are a graduate or

Revised 07/2010

## William D. Ford Federal Direct Loan Program
### Direct Subsidized Loan and Direct Unsubsidized Loan Borrower's Rights and Responsibilities Statement

undergraduate student. You will be notified of the actual interest rate for each loan you receive in a disclosure statement that we send to you. If you qualify under the Servicemembers Civil Relief Act, the interest rate on your loans obtained prior to military service may be limited to 6 percent during your military service. To receive this benefit, you must contact your servicer for information about the documentation you must provide to show that you qualify.

**9. Payment of interest.** We do not charge interest on a Direct Subsidized Loan while you are enrolled in school at least half time, during your grace period, during deferment periods, and during periods of repayment under the Income-Based Repayment Plan. Except as provided below for certain military borrowers, we charge interest on a Direct Subsidized Loan during all other periods (starting on the day after your grace period ends), including forbearance periods.

Except as provided below for certain military borrowers, we charge interest on a Direct Unsubsidized Loan during all periods (starting on the day your loan is paid out). This includes periods while you are enrolled in school at least half time, during your grace period, and during deferment and forbearance periods. Therefore, you will pay more interest on a Direct Unsubsidized Loan than on a Direct Subsidized Loan.

If you do not pay the interest as it is charged on either type of loan, we will add it to the unpaid principal amount of your loan. This is called "capitalization." Capitalization increases the unpaid principal balance of your loan, and we will then charge interest on the increased principal amount.

Under the no accrual of interest benefit for active duty service members, we do not charge interest on Direct Loan Program Loans first disbursed on or after October 1, 2008 during periods of qualifying active duty military service (for up to 60 months). For Direct Consolidation Loans, this benefit applies to the portion of the consolidation loan that repaid loans first disbursed on or after October 1, 2008.

The chart below shows the difference in the total amount you would repay on a $15,000 Direct Unsubsidized Loan if you pay the interest as it is charged during a 12-month deferment or forbearance period, compared to the amount you would repay if you do not pay the interest and it is capitalized.

| | If you pay the interest as it is charged... | If you pay the interest and it is capitalized... |
|---|---|---|
| Loan Amount | $15,000 | $15,000 |
| Interest for 12 months (at an interest rate of 6.8%) | $1,020 (paid as accrued) | $1,020 (unpaid and capitalized) |
| Principal to be Repaid | $15,000 | $16,020 |
| Monthly Payment (Standard Repayment Plan) | $173 | $184 |
| Number of Payments | 120 | 120 |
| Total Amount Repaid | $21,734 | $22,123 |

In this example, you would pay $11 less per month and $389 less altogether if you pay the interest as it is charged during a 12-month deferment or forbearance period.

You may be able to claim a federal income tax deduction for interest payments you make on Direct Loans. For further information, refer to IRS Publication 970, which is available at http://www.irs.ustreas.gov.

**10. Loan fee.** We charge a loan fee that is a percentage of the principal amount of each loan you receive. The percentage is determined by the Act and varies depending on when a loan is first disbursed. The specific loan fee that you are charged will be shown on a disclosure statement that we send to you. This fee will be subtracted proportionally from each disbursement of your loan.

**11. Repayment incentive programs.** A repayment incentive is a benefit that we offer to encourage you to repay your loan on time. Under a repayment incentive program, the interest rate we charge on your loan may be reduced. Some repayment incentive programs require you to make a certain number of payments on time to keep the reduced interest rate. The two repayment incentive programs described below may be available to you. Your servicer can provide you with more information on other repayment incentive programs that may be available.

*(1) Interest Rate Reduction for Automatic Withdrawal of Payments*

Under the automatic withdrawal option, your bank automatically deducts your monthly loan payment from your checking or savings account and sends it to us. Automatic withdrawal helps to ensure that your payments are made on time. In addition, you receive a 0.25 percent interest rate reduction while you repay under the automatic withdrawal option. We will include information about the automatic withdrawal option in your first bill. You can also get the information on your servicer's web site, or by calling your servicer. Your servicer's web site address and toll-free telephone number are provided on all correspondence that your servicer sends you.

*(2) Up-Front Interest Rebate*

You may receive an up-front interest rebate on your loan. The rebate is equal to a percentage of the loan amount that you borrow. This is the same amount that would result if the interest rate on your loan were lowered by a specific percentage, but you receive the rebate up front. The correspondence that you receive about your loan will tell you if you received an up-front interest rebate.

To keep an up-front interest rebate that you receive on your loan, you must make all of your first 12 required monthly payments on time when your loan enters repayment. "On time" means that we must receive each payment no later than 6 days after the due date.

You will lose the rebate if you do not make all of your first 12 required monthly payments on time. If you lose the rebate, we will add the rebate amount back to the principal balance on your loan account. This will increase the amount that you must repay.

**12. Disbursement** (how your loan money will be paid out). Generally, your school will disburse (pay out) your loan money in more than one installment, usually at the beginning of each academic term (for example, at the beginning of each semester or quarter). If your school does not use academic terms or does not have academic terms that meet certain requirements, it will generally disburse your loan in at least two installments, one at the beginning of the period of study for which you are receiving the loan, and one at the midpoint of that period of study.

In most cases, if the Direct Subsidized Loan or Direct Unsubsidized Loan that you are receiving is your first student loan under either the Direct Loan Program or the Federal Family Education Loan (FFEL) Program, you must complete entrance counseling before your school can make the first disbursement of your loan.

Your school may disburse your loan money by crediting it to your account at the school, or may give some or all of it to you directly by check or other means. Your servicer will notify you in writing each time your school disburses part of your loan money.

If your school credits your loan money to your account and the amount credited is more than the amount of your tuition and fees, room and board, and other authorized charges, the excess amount is called a credit balance. Unless you authorize your school to hold the credit balance for you, your school must pay you the credit balance within the following timeframes:

- If the credit balance occurs after the first day of class of a payment period (your school can tell you this date), your school must pay you the credit balance no later than 14 days after the date the balance occurs.

- If the credit balance occurs on or before the first day of class of a payment period, your school must pay you the credit balance no later than 14 days after the first day of class of the payment period.

**13. Canceling your loan.** Before your loan money is disbursed, you may cancel all or part of your loan at any time by notifying your school. After your loan money is disbursed, there are two ways to cancel all or part of your loan:

- If your school obtains your written confirmation of the types and amounts of Title IV loans that you want to receive for an award year before crediting loan money to your account at the school, you may tell the school that you want to cancel all or part of that loan within 14 days after the date the school notifies you of your right to cancel all or part of the loan, or by the first day of your school's payment period, whichever is later (your school can tell you the first day of the payment period). If the school does not obtain your written confirmation of the types and amounts of loans you want to receive before crediting the loan money to your account, you may cancel all or part of that loan by informing the school within 30 days of the date the school notifies you of your right to cancel all or part of the loan. In either case, your school will return the cancelled loan amount to us. You do not have to pay interest or the loan fee on the part of your loan that you tell your school to cancel within these timeframes. If you received an up-front interest rebate on your loan, the rebate does not apply to the part of your loan that you tell your school to cancel. Your loan will be adjusted to eliminate any interest, loan fee, and rebate amount that applies to the amount of the loan that was cancelled.

  If you ask your school to cancel all or part of your loan outside the timeframes described above, your school may process your cancellation request, but it is not required to do so.

- Within 120 days of the date your school disbursed your loan money (by crediting the loan money to your account at the school, by paying it directly to you, or both), you may return all or part of your loan to us. Contact your servicer for guidance on how and where to return your loan money. You do not have to pay interest or the loan fee on the part of your loan that you return within 120 days of the date that part of your loan is disbursed. If you received an up-front interest rebate on your loan, the rebate does not apply to the part of your loan that you return. Your loan will be adjusted to eliminate any interest, loan fee, and rebate amount that applies to the amount of the loan that you return.

**14. Grace period.** You will receive a six-month grace period on repayment of each Direct Subsidized Loan and Direct Unsubsidized Loan that you receive. Your six-

Revised 07/2010

## William D. Ford Federal Direct Loan Program
## Direct Subsidized Loan and Direct Unsubsidized Loan Borrower's Rights and Responsibilities Statement

month grace period begins the day after you stop attending school or drop below half-time enrollment. You do not have to begin making payments on your loan until after your grace period ends.

If you are called or ordered to active duty for more than 30 days from a reserve component of the U.S. Armed Forces, the period of your active duty service and the time necessary for you to re-enroll in school after your active duty ends are not counted as part of your grace period. However, the total period that is excluded from your grace period may not exceed three years. If the call or order to active duty occurs while you are in school and requires you to drop below half-time enrollment, the start of your grace period will be delayed until after the end of the excluded period. If the call or order to active duty occurs during your grace period, you will receive a full six-month grace period at the end of the excluded period.

**15. Repaying your loan.** The repayment period for each Direct Subsidized Loan and Direct Unsubsidized Loan that you receive begins on the day after your grace period ends. Your servicer will notify you of the date your first payment is due.

You must make payments on your loan even if you do not receive a bill or repayment notice. Billing information is sent to you as a convenience, and you are obligated to make payments even if you do not receive a notice or bill.

You may choose one of the following repayment plans to repay your loan:

- **Standard Repayment Plan** – Under this plan, you will make fixed monthly payments and repay your loan in full within 10 years (not including periods of deferment or forbearance) from the date the loan entered repayment. Your payments must be at least $50 a month and will be more, if necessary, to repay the loan within the required time period.

- **Graduated Repayment Plan** – Under this plan, you will usually make lower payments at first, and your payments will gradually increase over time. You will repay your loan in full within 10 years (not including periods of deferment or forbearance) from the date the loan entered repayment. No single payment will be more than three times greater than any other payment.

- **Extended Repayment Plan** – Under this plan, you will repay your loan in full over a period not to exceed 25 years (not including periods of deferment or forbearance) from the date the loan entered repayment. You may choose to make fixed monthly payments or graduated monthly payments that start out lower and gradually increase over time. If you make fixed monthly payments, your payments must be at least $50 a month and will be more, if necessary, to repay the loan within the required time period. You are eligible for this repayment plan only if (1) you have an outstanding balance on Direct Loan Program loans that exceeds $30,000, and (2) you had no outstanding balance on a Direct Loan Program loan as of October 7, 1998 or on the date you obtained a Direct Loan Program loan after October 7, 1998.

- **Income Contingent Repayment Plan** – Under this plan, your monthly payment amount will be based on your annual income (and that of your spouse if you are married), your family size, and the total amount of your Direct Loans. Until we obtain the information needed to calculate your monthly payment amount, your payment will equal the amount of interest that has accrued on your loan unless you request a forbearance. As your income changes, your payments may change. If you do not repay your loan after 25 years under this plan, the unpaid portion will be forgiven. You may have to pay income tax on any amount forgiven.

- **Income-Based Repayment Plan (effective July 1, 2009)** – Under this plan, your required monthly payment amount will be based on your income during any period when you have a partial financial hardship. Your monthly payment amount may be adjusted annually. The maximum repayment period under this plan may exceed 10 years. If you meet certain requirements over a 25-year period, you may qualify for cancellation of any outstanding balance on your loans.

If you can show to our satisfaction that the terms and conditions of the above repayment plans are not adequate to meet your exceptional circumstances, we may provide you with an alternative repayment plan.

If you do not choose a repayment plan, we will place you on the Standard Repayment Plan.

The chart at the end of this Borrower's Rights and Responsibilities Statement ("Repaying Your Loans") allows you to estimate the monthly and total amounts you would repay under the Standard, Graduated, Extended, and Income Contingent repayment plans based on various initial loan amounts.

You may change repayment plans at any time after you have begun repaying your loan. There is no penalty if you make loan payments before they are due, or pay more than the amount due each month.

Except as provided by the Act for payments made under the Income-Based Repayment Plan, we apply your payments and prepayments in the following order: (1) late charges and collection costs first, (2) outstanding interest second, and (3) outstanding principal last.

When you have repaid a loan in full, your servicer will send you a notice telling you that you have paid off your loan. You should keep this notice in a safe place.

**16. Late charges and collection costs.** If you do not make any part of a payment within 30 days after it is due, we may require you to pay a late charge. This charge will not be more than six cents for each dollar of each late payment. If you do not make payments as scheduled, we may also require you to pay other charges and fees involved in collecting your loan.

**17. Demand for immediate repayment.** The entire unpaid amount of your loan becomes due and payable (on your MPN this is called "acceleration") if you:

- Receive loan money, but do not enroll at least half-time at the school that determined you were eligible to receive the loan;
- Use your loan money to pay for anything other than expenses related to your education at the school that determined you were eligible to receive the loan;
- Make a false statement that causes you to receive a loan that you are not eligible to receive; or
- Default on your loan.

**18. Defaulting on your loan.** Default (failing to repay your loan) is defined in detail in the Terms and Conditions section of your MPN. If you default:

- We will require you to immediately repay the entire unpaid amount of your loan.
- We may sue you, take all or part of your federal and state tax refunds and other federal or state payments, and/or garnish your wages so that your employer is required to send us part of your salary to pay off your loan.
- We will require you to pay reasonable collection fees and costs, plus court costs and attorney fees.
- You may be denied a professional license.
- You will lose eligibility for other federal student aid and assistance under most federal benefit programs.
- You will lose eligibility for loan deferments.

- We will report your default to national consumer reporting agencies (see #19, "Consumer reporting agency notification").

**19. Consumer reporting agency notification.** We will report information about your loan to national consumer reporting agencies. This information will include the disbursement dates, amount, and repayment status of your loan (for example, whether you are current or delinquent in making payments). Your loan will be identified as an education loan.

If you default on a loan, we will also report this to national consumer reporting agencies. We will notify you at least 30 days in advance that we plan to report default information to a consumer reporting agency unless you resume making payments on the loan within 30 days. You will be given a chance to ask for a review of the debt before we report it.

If a consumer reporting agency contacts us regarding objections you have raised about the accuracy or completeness of any information we have reported, we are required to provide the agency with a prompt response.

**20. Deferment and forbearance (postponing payments)**

If you meet certain requirements, you may receive a deferment that allows you to temporarily stop making payments on your loan. If you cannot make your scheduled loan payments, but do not qualify for a deferment, we may give you a forbearance. A forbearance allows you to temporarily stop making payments on your loan, temporarily make smaller payments, or extend the time for making payments.

**Deferment**

You may receive a deferment while you are:

- Enrolled at least half-time at an eligible school;
- In a full-time course of study in a graduate fellowship program;
- In an approved full-time rehabilitation program for individuals with disabilities;
- Unemployed (for a maximum of three years; you must be diligently seeking, but unable to find, full-time employment); or
- Experiencing an economic hardship (including Peace Corps service), as determined under the Act (for a maximum of three years).
- Serving on active duty during a war or other military operation or national emergency or performing qualifying National Guard duty during a war or other military operation or national emergency and, if you were serving on or after October 1, 2007, for an additional 180-day period following the demobilization date for your qualifying service.

If you are a member of the National Guard or other reserve component of the U.S. Armed forces (current or retired) and you are called or ordered to active duty while you are enrolled at least half time at an eligible school or within 6 months of having been enrolled at least half time, you are also eligible for a deferment during the 13 months following the conclusion of your active duty service, or until you return to enrolled student status on at least a half-time basis, whichever is earlier.

You may be eligible to receive additional deferments if, at the time you received your first Direct Loan, you had an outstanding balance on a loan made under the Federal Family Education Loan (FFEL) Program before July 1, 1993. If you meet this requirement, you may receive a deferment while you are:

- Temporarily totally disabled, or unable to work because you are required to care for a spouse or dependent who is disabled (for a maximum of three years);
- On active duty in the U.S. Armed Forces, or active duty in the National Oceanic and Atmospheric

Revised 07/2010

# William D. Ford Federal Direct Loan Program
## Direct Subsidized Loan and Direct Unsubsidized Loan Borrower's Rights and Responsibilities Statement

Administration (NOAA), or serving full-time as an officer in the Commissioned Corps of the Public Health Service (for a combined maximum of three years);

- Serving in the Peace Corps (for a maximum of three years);
- A full-time paid volunteer for a tax-exempt organization or an ACTION program (for a maximum of three years);
- In a medical internship or residency program (for a maximum of two years);
- Teaching in a designated teacher shortage area (for a maximum of three years);
- On parental leave (for a maximum of six months); or
- A working mother entering or re-entering the workforce (for a maximum of one year).

You may receive a deferment based on your enrollment in school on at least a half-time basis if (1) you submit a deferment request form to your servicer along with documentation of your eligibility for the deferment, or (2) your servicer receives information from the school you are attending that indicates you are enrolled at least half-time. If your servicer processes a deferment based on information received from your school, you will be notified of the deferment and will have the option of canceling the deferment and continuing to make payments on your loan.

For all other deferments, you (or, for a deferment based on active duty military service or qualifying National Guard duty during a war or other military operation or national emergency, a representative acting on your behalf) must submit a deferment request form to your servicer, along with documentation of your eligibility for the deferment. In certain circumstances, you may not be required to provide documentation of your eligibility if your servicer confirms that you have been granted the same deferment for the same period of time on a FFEL Program loan. Your servicer can provide you with a deferment request form that explains the eligibility and documentation requirements for the type of deferment you are requesting. You may also obtain deferment request forms and information on deferment eligibility requirements from your servicer's web site.

If you are in default on your loan, you are not eligible for a deferment.

You are not responsible for paying the interest on a Direct Subsidized Loan during a period of deferment. However, you are responsible for paying the interest on a Direct Unsubsidized Loan during a period of deferment.

### Forbearance

We may give you a forbearance if you are temporarily unable to make your scheduled loan payments for reasons including, but not limited to, financial hardship and illness.

We will give you a forbearance if:

- You are serving in a medical or dental internship or residency program, and you meet specific requirements;
- The total amount you owe each month for all of the student loans you received under Title IV of the Act is 20 percent or more of your total monthly gross income (for a maximum of three years);
- You are serving in a national service position for which you receive a national service award under the National and Community Service Trust Act of 1993. In some cases, the interest that accrues on a qualified loan during the service period will be paid by the Corporation for National and Community Service;
- You are performing service that would qualify you for loan forgiveness under the teacher loan forgiveness program that is available to certain Direct Loan and FFEL program borrowers;

- You qualify for partial repayment of your loans under the Student Loan Repayment Program, as administered by the Department of Defense; or
- You are called to active duty in the U.S. Armed Forces.

To request a forbearance, contact your servicer. Your servicer can provide you with a forbearance request form that explains the eligibility and documentation requirements for the type of forbearance you are requesting. You may also obtain forbearance request forms and information on forbearance eligibility requirements from your servicer's web site.

Under certain circumstances, we may also give you a forbearance without requiring you to submit a request or documentation. These circumstances include, but are not limited to, the following:

- Periods necessary for us to determine your eligibility for a loan discharge;
- A period of up to 60 days in order for us to collect and process documentation related to your request for a deferment, forbearance, change in repayment plan, or consolidation loan (we do not capitalize the interest that is charged during this period); or
- Periods when you are involved in a military mobilization, or a local or national emergency.

You are responsible for paying the interest on both Direct Subsidized Loans and Direct Unsubsidized Loans during a period of forbearance.

### 21. Discharge (having your loan forgiven).

We will discharge (forgive) your loan if:

- You die. Your servicer must receive acceptable documentation of your death, as defined in the Act.
- Your loan is discharged in bankruptcy. However, federal student loans are not automatically discharged if you file for bankruptcy. In order to have your loan discharged in bankruptcy, you must prove to the bankruptcy court that repaying the loan would cause undue hardship.
- You become totally and permanently disabled (as defined in the Act) and meet certain other requirements.

In certain cases, we may also discharge all or a portion of your loan if:

- You could not complete a program of study because the school closed;
- Your loan eligibility was falsely certified by the school;
- A loan in your name was falsely certified as a result of a crime of identity theft; or
- The school did not pay a refund of your loan money that it was required to pay under federal regulations.

We may forgive a portion of any student loans you received under the Direct Loan or FFEL program after October 1, 1998 if you teach full time for five consecutive years in certain low-income elementary and/or secondary schools and meet certain other qualifications, and if you did not owe a Direct Loan or FFEL program loan as of October 1, 1998, or as of the date you obtain a loan after October 1, 1998.

A public service loan forgiveness program is also available Under this program, the remaining balance due on your eligible Direct Loan Program loans may be cancelled after you have made 120 payments on those loans (after October 2, 2007) under certain repayment plans while you are employed in certain public service jobs.

The Act may provide for certain loan forgiveness or repayment benefits on your loans in addition to the benefits described above. If other forgiveness or repayment options become available, your servicer will provide information about these benefits.

To request a loan discharge based on one of the conditions described above (except for discharges due to death or bankruptcy), you must complete an application that you may obtain from your servicer.

In some cases, you may assert, as a defense against collection of your loan, that the school did something wrong or failed to do something that it should have done. You can make such a defense against repayment only if the school's act or omission directly relates to your loan or to the educational services that the loan was intended to pay for, and if what the school did or did not do would give rise to a legal cause of action against the school under applicable state law. If you believe that you have a defense against repayment of your loan, contact your servicer.

We do not guarantee the quality of the academic programs provided by schools that participate in federal student financial aid programs. You must repay your loan even if you do not complete the education paid for with the loan, are unable to obtain employment in the field of study for which your school provided training, or are dissatisfied with, or do not receive, the education you paid for with the loan.

### 22. Loan consolidation.
A Direct Consolidation Loan Program is available that allows you to consolidate (combine) one or more of your eligible federal education loans into one loan. Consolidation allows you to extend the period of time that you have to repay your loans, and to combine several loan debts into a single monthly payment. This may make it easier for you to repay your loans. However, you will pay more interest if you extend your repayment period through consolidation, since you will be making payments for a longer period of time. Contact your servicer for more information about loan consolidation.

### 23. Department of Defense and other federal agency loan repayment.
Under certain circumstances, military personnel may have their federal education loans repaid by the Secretary of Defense. This benefit is offered as part of a recruitment program that does not apply to individuals based on their previous military service or to those who are not eligible for enlistment in the U.S. Armed Forces. For more information, contact your local military service recruitment office.

Other agencies of the federal government may also offer student loan repayment programs as an incentive to recruit and retain employees. Contact the agency's human resources department for more information.

### 24. AmeriCorps program education awards.
Under the National and Community Service Act of 1990, you may receive an education award that can be used to repay a Direct Subsidized Loan or Direct Unsubsidized Loan if you successfully complete a term of service in an AmeriCorps program. For more information, contact an official of your program.

Revised 07/2010

# William D. Ford Federal Direct Loan Program
## Direct Subsidized Loan and Direct Unsubsidized Loan Borrower's Rights and Responsibilities Statement

### Repaying Your Loans[1]

| Initial Debt When You Enter Repayment | Standard | | Extended[2,3] | | Graduated | | Income Contingent[5,6] Income = $15,000 | | | | Income Contingent[5,6] Income = $25,000 | | | | Income Contingent[5,6] Income = $45,000 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Single | | Married/HOH[7] | | Single | | Married/HOH[7] | | Single | | Married/HOH[7] | |
| | Per Month | Total | Per Month | Total | Per Month[4] | Total | Per Month | Total | Per Month | Total | Per Month | Total | Per Month | Total | Per Month | Total | Per Month | Total |
| 3,500 | 50 | 4,471 | Not Available | | 25 | 5,157 | 21 | 6,939 | 20 | 6,673 | 27 | 6,092 | 25 | 6,405 | 36 | 5,128 | 36 | 5,128 |
| 5,000 | 58 | 6,605 | Not Available | | 40 | 7,278 | 30 | 9,912 | 29 | 9,533 | 38 | 8,703 | 36 | 9,150 | 51 | 7,326 | 51 | 7,326 |
| 5,500 | 63 | 7,595 | Not Available | | 43 | 8,007 | 33 | 10,903 | 30 | 10,463 | 42 | 9,574 | 40 | 10,065 | 56 | 8,059 | 58 | 8,059 |
| 7,500 | 86 | 10,357 | Not Available | | 59 | 10,919 | 45 | 14,868 | 30 | 14,019 | 57 | 13,065 | 54 | 13,725 | 76 | 10,989 | 76 | 10,989 |
| 10,500 | 121 | 14,500 | Not Available | | 83 | 15,283 | 64 | 20,815 | 30 | 19,877 | 80 | 18,277 | 76 | 19,216 | 107 | 15,385 | 107 | 15,385 |
| 15,000 | 173 | 20,714 | Not Available | | 119 | 21,834 | 87 | 29,885 | 30 | 25,229 | 114 | 26,110 | 108 | 27,451 | 153 | 21,978 | 153 | 21,978 |
| 18,500 | 213 | 25,548 | Not Available | | 146 | 26,929 | 87 | 35,992 | 30 | 29,465 | 140 | 32,203 | 134 | 33,856 | 188 | 27,106 | 188 | 27,106 |
| 23,000 | 265 | 31,762 | Not Available | | 182 | 33,476 | 87 | 43,141 | 30 | 34,128 | 174 | 40,036 | 166 | 42,091 | 234 | 33,699 | 234 | 33,699 |
| 30,000 | 345 | 41,429 | Not Available | | 237 | 43,668 | 87 | 52,340 | 30 | 39,756 | 228 | 52,221 | 197 | 55,743 | 407 | 43,956 | 407 | 43,956 |
| 40,000 | 460 | 55,239 | 277 | 83,289 | 316 | 58,226 | 87 | 62,005 | 30 | 44,827 | 253 | 72,717 | 197 | 84,352 | 468 | 58,608 | 468 | 58,608 |
| 45,000 | 529 | 63,524 | 319 | 95,782 | 363 | 66,956 | 87 | 66,084 | 30 | 46,378 | 253 | 89,828 | 197 | 105,472 | 509 | 67,399 | 509 | 67,399 |
| 50,000 | 575 | 69,048 | 347 | 104,111 | 395 | 72,778 | 87 | 68,153 | 30 | 48,860 | 253 | 103,268 | 197 | 111,576 | 587 | 73,280 | 587 | 73,280 |
| 60,000 | 690 | 82,858 | 391 | 140,816 | 474 | 87,334 | 87 | 71,219 | 30 | 48,934 | 253 | 136,816 | 197 | 124,085 | 587 | 88,251 | 587 | 88,251 |
| 70,000 | 806 | 96,667 | 456 | 164,285 | 535 | 101,890 | 87 | 71,721 | 30 | 48,934 | 253 | 146,651 | 197 | 133,106 | 587 | 106,551 | 587 | 106,551 |
| 80,000 | 920 | 110,477 | 522 | 167,754 | 632 | 116,448 | 87 | 71,721 | 30 | 48,934 | 253 | 157,373 | 197 | 138,907 | 587 | 128,146 | 587 | 128,146 |
| 90,000 | 1,036 | 124,287 | 587 | 211,224 | 711 | 131,002 | 87 | 71,721 | 30 | 48,934 | 253 | 163,227 | 197 | 141,925 | 587 | 152,967 | 587 | 152,967 |
| 100,000 | 1,151 | 138,096 | 652 | 234,693 | 790 | 145,556 | 87 | 71,721 | 30 | 48,934 | 253 | 166,457 | 197 | 142,386 | 587 | 181,224 | 587 | 181,224 |
| 110,000 | 1,266 | 151,906 | 717 | 258,162 | 869 | 160,111 | 87 | 71,721 | 30 | 48,934 | 253 | 167,172 | 197 | 142,386 | 587 | 213,485 | 587 | 213,485 |
| 120,000 | 1,381 | 165,716 | 782 | 281,632 | 948 | 174,668 | 87 | 71,721 | 30 | 48,934 | 253 | 167,172 | 197 | 142,386 | 587 | 250,281 | 587 | 250,281 |
| 130,000 | 1,496 | 179,526 | 848 | 305,101 | 1,024 | 189,224 | 87 | 71,721 | 30 | 48,934 | 253 | 167,172 | 197 | 142,386 | 587 | 292,313 | 587 | 292,313 |
| 138,500 | 1,594 | 191,264 | 903 | 325,050 | 1,094 | 201,596 | 87 | 71,721 | 30 | 48,934 | 253 | 167,172 | 197 | 142,386 | 587 | 332,912 | 587 | 332,912 |

[1] The estimated payments were calculated using a fixed interest rate of 6.80%.

[2] This repayment plan is available only to borrowers who have an outstanding balance on Direct Loan Program loans that exceeds $30,000, and who had no outstanding balance on a Direct Loan Program loan as of October 7, 1998 or on the date they obtained a Direct Loan Program loan on or after October 7, 1998.

[3] These amounts are fixed, rounded to the nearest dollar, and calculated based on a 25-year repayment term.

[4] This is your beginning payment, which may increase during your 10-year repayment term.

[5] Assumes a 5% annual income growth (Census Bureau).

[6] The estimated payments were calculated using the formula requirements in effect during 2006.

[7] HOH is Head of Household; assumes a family size of two.

### TRANSACTION HISTORY

| | |
|---|---|
| Your identity was confirmed by the PIN Web site on | July 09 2012, 02:55:40 PM |
| You agreed to use an electronic MPN on | July 09 2012, 02:55:49 PM |
| You reviewed your draft MPN and confirmed that you read, understood, and agreed to the Borrower Request, Certifications, Authorizations, and Understandings, Promise to Pay, MPN Terms and Conditions, Important Notices and Borrower's Rights and Responsibilities Statement on | July 09 2012, 03:07:19 PM |
| You signed your MPN on | July 09 2012, 03:07:55 PM |
| You reviewed your signed MPN on | July 09 2012, 03:07:55 PM |
| You confirmed your acceptance of the terms and conditions of this MPN and submitted it to us on | July 09 2012, 03:10:10 PM |

Revised 07/2010

# **<u>EXHIBIT C</u>**

WAP3_BC

# Direct Loans
William D. Ford Federal Direct Loan Program

## Federal Direct Consolidation Loan
## Application and Promissory Note

OMB No. 1845-0053
Form Approved
Exp. Date 11/30/2010

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form will be subject to penalties which may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

**Before You Begin**

Read the instructions for completing this Federal Direct Consolidation Loan Application and Promissory Note. Print using blue or black ink or type. You must sign and date this form. If you cross out anything and write in new information, put your initials beside the change.

**NOTE: PAGES 1, 2, and 3 OF THIS FORM MUST BE SUBMITTED IN ORDER TO PROCESS YOUR LOAN REQUEST.**

**Section A: Borrower Information**

| 1. Last Name    First Name    Middle Initial | 2. Social Security Number |
|---|---|

3. Permanent Street Address (if P.O. box or general delivery, see instructions)

City    State    Zip Code

4. Area Code/Telephone Number
( )

5. E-Mail Address (Optional)

| 6. Former Name(s) | 7. Date of Birth (mm-dd-yyyy) | 8. Driver's License State and Number    State --    Number |
|---|---|---|

| 9. Employer's Name | 10. Employer's Address |
|---|---|

| 11. Work Area Code/Telephone Number ( ) | City    State    Zip Code -- |
|---|---|

**Section B: Reference Information**

12. **References:** List two persons with different addresses who have known you for at least three years. Do not list individuals who live with you (for example, your spouse) or who live outside the United States.

Name    1.    2.

Permanent Address

City, State, Zip Code

E-Mail Address (optional)

Area Code/Telephone Number    ( )    ( )

Relationship to Borrower

**Section C1: Education Loan Indebtedness    Loans You Want to Consolidate (continued on page 2)**

*Read the instructions before completing this section.* List each federal education loan that you want to consolidate, including any William D. Ford Federal Direct Loan (Direct Loan) Program loans that you want to include in your Direct Consolidation Loan. If you need more space to list additional loans, use the Additional Loan Listing Sheet included with this package. List each loan separately. Please print. **ONLY LIST LOANS THAT YOU WANT TO CONSOLIDATE IN THIS SECTION.**

| 4. Loan Holder's/Servicer's Name, Address, and Area Code/Telephone Number (See Instructions) | 15. Loan Account Number | 16. Estimated Payoff Amount |
|---|---|---|
| | | |
| | | |

**Borrower's Name (please print)** _____    **Social Security Number** _____

| Section C1: Education Loan Indebtedness    Loans You Want to Consolidate (continued from page 1) | | |
|---|---|---|
| **14.** Loan Holder's/Servicer's Name, Address, and Area Code/Telephone Number (See Instructions) | **15.** Loan Account Number | **16.** Estimated Payoff Amount |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**17. Grace Period End Date.** If any of the loans you want to consolidate are in a grace period, you can delay the processing of your Direct Consolidation Loan until the end of your grace period by entering your expected grace period end date in the space provided. If you leave this item blank, your Direct Consolidation Loan will be processed and any loans listed in Section C1 that are in a grace period will enter repayment immediately upon consolidation.

**Expected Grace Period End Date (month/year):** _____

| Section C2: Education Loan Indebtedness    Loans You Do Not Want to Consolidate | | |
|---|---|---|

***Read the instructions before completing this section.*** List all education loans that you are not consolidating, but want to have considered when calculating your maximum repayment period. Include any Direct Loan Program loans that you do not want to consolidate. If you need more space to list additional loans, use the Additional Loan Listing Sheet included with this package. List each loan separately. Please print. ONLY LIST LOANS THAT YOU DO NOT WANT TO CONSOLIDATE IN THIS SECTION.

| **18.** Loan Type (See Instructions) | **19.** Loan Holder's/Servicer's Name, Address, and Area Code/Telephone Number (See Instructions) | **20.** Loan Account Number | **21.** Current Balance |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| Section D: Repayment Plan Selection |
|---|

To understand your repayment plan options, carefully read the repayment plan information in the Borrower's Rights and Responsibilities Statement on pages 5-8 of this Application and Promissory Note (Note) and in any supplemental materials you receive with this Note. Then select a repayment plan by completing the **Repayment Plan Selection** form that accompanies this Note. Please note the following:

- If you select the Income Contingent Repayment (ICR) Plan, you must also complete the **Income Contingent Repayment Plan Consent to Disclosure of Tax Information** form that is included with this Note. **Your selection of the ICR Plan cannot be processed without this form.**
- If you want to consolidate a defaulted loan(s) and you have not made a satisfactory repayment arrangement with your current holder(s), you must select the ICR Plan, or effective July 1, 2009, the Income-Based Repayment Plan. You must also select the ICR Plan or the Income-Based Repayment Plan if you are consolidating a delinquent Federal Consolidation Loan that the lender has submitted to the guaranty agency for default aversion, and you are not consolidating any additional eligible loans.

**Borrower's Name (please print)** _____,    **Social Security Number** _____

Section E: Borrower Understandings, Certifications, and Authorizations

22. I understand that:

A. My Direct Consolidation Loan will, to the extent used to pay off loans that I have selected for consolidation, count against the applicable aggregate loan limits under the Act. The term "the Act" is defined under "Governing Law" on page 4 of this Note.

B. The amount of my Direct Consolidation Loan is the sum of the balances of my outstanding eligible loans that I have chosen to consolidate. My outstanding balance on each loan to be consolidated includes unpaid principal, unpaid accrued interest, and late charges as defined by federal regulations and as certified by each holder. Collection costs may also be included. For a Direct Loan Program or Federal Family Education Loan (FFEL) Program loan that is in default, the U.S. Department of Education (ED) limits collection costs that may be included in the payoff balances of the loans to a maximum of 18.5 percent of the outstanding principal and interest. For any other defaulted federal education loans, all collection costs that are owed may be included in the payoff balances of the loans.

C. ED will provide me with information about the loans and payoff amounts that ED verifies with the holders of my loans before the actual payoffs occur. If I do not want to consolidate any of the loans that ED has verified, I must notify ED before the loans are paid off.

D. If the amount ED sends to my holders is more than the amount needed to pay off the balances of the selected loans, the holders will refund the excess to ED and it will be applied against the outstanding balance of my Direct Consolidation Loan. If the amount that ED sends to my holders is less than the amount needed to pay off the balances of the loans selected for consolidation, ED will include the remaining amount in my Direct Consolidation Loan.

E. Unless I am consolidating a delinquent Federal Consolidation Loan that the lender has submitted to the guaranty agency for default aversion or a defaulted Federal Consolidation Loan, or, effective July 1, 2008, I am consolidating a Federal Consolidation Loan into the Direct Loan Program to use the Public Service Loan Forgiveness Program, I may consolidate an existing Federal Consolidation Loan or Direct Consolidation Loan only if I include at least one additional eligible loan in the consolidation.

F. If I am consolidating a delinquent Federal Consolidation Loan that the lender has submitted to the guaranty agency for default aversion or a defaulted Federal Consolidation loan, and I am not including another eligible loan, I must agree to repay my Direct Consolidation Loan under the Income Contingent Repayment Plan or, effective July 1, 2009, the Income-Based Repayment Plan.

23. Under penalty of perjury, I certify that:

A. The information that I have provided on this Note is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

B. I do not have any other application pending for a Federal Consolidation Loan with any FFEL Program lender.

C. All of the loans selected for consolidation have been used to finance my education or the education of my dependent student(s).

D. All of the loans selected for consolidation are in a grace period or in repayment (including loans in deferment or forbearance).

E. Unless I am consolidating a delinquent Federal Consolidation Loan that the lender has submitted to the guaranty agency for default aversion or a defaulted Federal Consolidation Loan, or, effective July 1, 2008, I am consolidating one or more FFEL Program loans into the Direct Loan Program to use the Public Service Loan Forgiveness Program, if none of the loans I am consolidating is a Direct Loan Program loan, I have sought and been unable to obtain a Federal Consolidation Loan from a FFEL Program lender, or I have been unable to obtain a Federal Consolidation Loan with income-sensitive repayment terms or, effective July 1, 2009, income-based repayment terms that are acceptable to me.

F. If I owe an overpayment on a Federal Perkins Loan, Federal Pell Grant, Federal Supplemental Educational Opportunity Grant, Academic Competitiveness Grant (ACG), National Science or Mathematics Access to Retain Talent (SMART) Grant, or Leveraging Educational Assistance Partnership Grant, I have made satisfactory arrangements with the holder to repay the amount owed.

G. If I am in default on any loan I am consolidating (except as provided above in Item 22.F.), I have either made a satisfactory repayment arrangement with the holder of that defaulted loan, or I will repay my Direct Consolidation Loan under the income contingent repayment plan or, effective July 1, 2009, the Income-Based Repayment Plan.

H. If I have been convicted of, or pled *nolo contendere* or guilty to, a crime involving fraud in obtaining federal student aid funds under Title IV of the Higher Education Act of 1965, as amended (the Act), I have completed the repayment of those funds to ED, or to the loan holder in the case of a Title IV federal student loan.

24. I make the following authorizations:

A. I authorize ED to contact the holders of the loans selected for consolidation to determine the eligibility of the loans for consolidation and the payoff amounts. I further authorize release to ED or its agent of any information required to consolidate my education loans in accordance with the Act.

B. I authorize ED to issue the proceeds of my Direct Consolidation Loan to the holders of the selected loans to pay off the debts.

C. I authorize ED to investigate my credit record and report information about my loan status to persons and organizations permitted by law to receive that information.

D. I authorize my school(s) and ED to release information about my Direct Consolidation Loan to the references on the loan and to members of my immediate family, unless I submit written directions otherwise.

E. I authorize my school(s), ED, or their agents to verify my social security number with the Social Security Administration (SSA) and, if the number on my loan record is incorrect, then I authorize SSA to disclose my correct social security number to these parties.

Section F: Promissory Note (continued on page 4)   to be completed and signed by the borrower.

25. Promise to Pay:

I promise to pay to the U.S. Department of Education (ED) all sums disbursed under the terms of this Note to pay off my prior loan obligations, plus interest and other charges and fees that may become due as provided in this Note. If I do not make payments on this Note when due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees.

If ED accepts my application, I understand that ED will on my behalf send funds to the holders of the loans that I want to consolidate to pay off those loans. I further understand that the amount of my Direct Consolidation Loan will equal the sum of the amounts that the holders of the loans verified as the payoff balances on the loans selected for consolidation. My signature on this Note serves as my authorization to pay off the balances of the loans selected for consolidation as provided by the holders of the loans.

The payoff amount may be greater than or less than the estimated total balance I have indicated in Section C1. Further, I understand that if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance of my Direct Consolidation Loan.

I will not sign this Note before reading the entire Note, even if I am told not to read it. I am entitled to an exact copy of this Note and the Borrower's Rights and Responsibilities Statement. My signature certifies that I have read, understand, and agree to the terms and conditions of this Note, including the Borrower Understandings, Certifications, and Authorizations in Section E, and the Borrower's Rights and Responsibilities Statement.

**I UNDERSTAND THAT THIS IS A LOAN THAT I MUST REPAY.**

**26. Borrower's Signature** _____    **Today's Date (mm-dd-yyyy)**   5/9/11 _____

**Promissory Note    continued from page 3**

## Governing Law

The terms of this Federal Direct Consolidation Loan Application and Promissory Note (Note) will be interpreted in accordance with the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), the U.S. Department of Education's (ED's) regulations, as they may be amended in accordance with their effective date, and other applicable federal laws and regulations (collectively referred to as the "Act"). Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this Note.

## Disclosure of Loan Terms

This Note applies to a Federal Direct Consolidation Loan (Direct Consolidation Loan). Under this Note, the principal amount that I owe, and am required to repay, will be equal to all sums disbursed to pay off my prior loan obligations, plus any unpaid interest that is capitalized and added to the principal amount.

My Direct Consolidation Loan may have up to two separate loan identification numbers depending on the loans I choose to consolidate. These loan identification numbers will represent prior subsidized loans and prior unsubsidized loans. Each applicable loan identification number is represented by this Note.

When the loans that I am consolidating are paid off, a disclosure statement will be sent to me identifying the amount of my Direct Consolidation Loan, the associated loan identification numbers, and additional terms of the loan. Important additional information is also contained in the Borrower's Rights and Responsibilities Statement. The Borrower's Rights and Responsibilities Statement and any disclosure I receive in connection with the loan made under this Note are hereby incorporated into this Note.

## Interest

Interest will be calculated using a formula provided for by the Act. Unless ED notifies me in writing of a lower rate, the interest rate on my Direct Consolidation Loan will be based on the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, but will not exceed 8.25%. This is a fixed interest rate, which means that the rate will remain the same throughout the life of the loan.

Except for interest ED does not charge me during a deferment period on the subsidized portion of my Direct Consolidation Loan, I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged. ED may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the Act. This is called capitalization.

## Late Charges and Collection Costs

ED may collect from me: (1) a late charge of not more than six cents for each dollar of each late payment if I fail to make any part of a required installment payment within 30 days after it becomes due, and (2) any other charges and fees that are permitted by the Act related to the collection of my Direct Consolidation Loan. If I default on my loan, I will pay reasonable collection costs, plus court costs and attorney fees.

## Repayment

I must repay the full amount of the Direct Consolidation Loan made under this Note, plus accrued interest. I will repay my loan in monthly installments during a repayment period that begins on the date of the first disbursement of the loan, unless it is in a deferment or forbearance period. Payments made by me or on my behalf will be applied first to late charges and collection costs that are due, then to interest that has not been paid, and finally to the principal amount of the loan, except during periods of repayment under the Income-Based Repayment Plan. Under the Income-Based Repayment Plan, payments will be applied first to interest that is due, then to fees that are due, and then to the principal amount.

ED will provide me with a choice of repayment plans. Information on these plans is included in the Borrower's Rights and Responsibilities Statement. I must select a repayment plan. If I do not select a repayment plan, ED will choose a plan for me in accordance with ED's regulations.

ED will provide me with a repayment schedule that identifies my payment amounts and due dates. My first payment will be due within 60 days of the first disbursement of my Direct Consolidation Loan unless it is in a deferment or forbearance period. If I am unable to make my scheduled loan payments, ED may allow me to temporarily stop making payments, reduce my payment amount, or extend the time for making payments, as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance.

ED may adjust payment dates on my Direct Consolidation Loan or may grant me forbearance to eliminate a delinquency that remains even though I am making scheduled installment payments.

I may prepay any part of the unpaid balance on my loan at any time without penalty. After I have repaid my Direct Consolidation Loan in full, ED will send me a notice telling me that I have paid off my loan.

## Acceleration and Default

At ED's option, the entire unpaid balance of the Direct Consolidation Loan will become immediately due and payable (this is called "acceleration") if either of the following events occurs: (1) I make a false representation that results in my receiving a loan for which I am not eligible; or (2) I default on the loan.

The following events will constitute a default on my loan: (1) I fail to pay the entire unpaid balance of the loan after ED has exercised its option under the preceding paragraph; (2) I fail to make installment payments when due, provided my failure has persisted for at least 270 days; or (3) I fail to comply with other terms of the loan, and ED reasonably concludes that I no longer intend to honor my repayment obligation. If I default, ED may capitalize all outstanding interest into a new principal balance, and collection costs will become immediately due and payable.

If I default, the default will be reported to national credit bureaus and will significantly and adversely affect my credit rating. I understand that a default will have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. I also understand that if I default, ED may require me to repay the loan under an income contingent repayment plan in accordance with the Act.

## Legal Notices

Any notice required to be given to me will be effective if mailed by first class mail to the most recent address that ED has for me. I will immediately notify ED of a change of address or status, as specified in the Borrower's Rights and Responsibilities Statement.

If ED fails to enforce or insist on compliance with any term on this Note, this does not waive any right of ED. No provision of this Note may be modified or waived except in writing by ED. If any provision of this Note is determined to be unenforceable, the remaining provisions will remain in force.

## Borrower's Rights and Responsibilities Statement

*Important Notice: This Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of the loan you will receive under the accompanying Federal Direct Consolidation Loan (Direct Consolidation Loan) Application and Promissory Note (Note). **Please keep a copy of the Note and this Borrower's Rights and Responsibilities Statement for your records.***

*In this document, the words "we," "us," and "our" refer to the U.S. Department of Education. The word "loan" refers to your Direct Consolidation Loan.*

**1. The William D. Ford Federal Direct Loan Program.** The William D. Ford Federal Direct Loan (Direct Loan) Program includes the following types of loans, known collectively as "Direct Loans":

- Federal Direct Stafford/Ford Loans (Direct Subsidized Loans)
- Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans)
- Federal Direct PLUS Loans (Direct PLUS Loans)
- Federal Direct Consolidation Loans (Direct Consolidation Loans)

The Direct Loan Program is authorized by Title IV, Part D, of the Higher Education Act of 1965, as amended.

Direct Loans are made by the U.S. Department of Education. Our Direct Loan Servicing Center services, answers questions about, and processes payments on Direct Loans. We will provide you with the Direct Loan Servicing Center's address and telephone number.

**2. Laws that apply to this Note.** The terms and conditions of loans made under this Note are determined by the Higher Education Act of 1965, as amended (20 U.S.C. 1070 *et seq.*) and other applicable federal laws and regulations. These laws and regulations are referred to as "the Act" throughout this Borrower's Rights and Responsibilities Statement. State law, unless it is preempted by federal law, may provide you with certain rights, remedies, and defenses in addition to those stated in the Note and this Borrower's Rights and Responsibilities Statement.

**NOTE: Any change to the Act applies to loans in accordance with the effective date of the change.**

**3. Direct Consolidation Loan identification numbers.** Depending on the type(s) of federal education loan(s) that you choose to consolidate, your loan may have up to two individual loan identification numbers. However, you will have only one Direct Consolidation Loan and will receive only one bill.

**3a.** The subsidized portion of your loan ("Direct Subsidized Consolidation Loan") will have one loan identification number representing the amount of the following types of loans that you consolidate:

- Subsidized Federal Stafford Loans
- Direct Subsidized Loans
- Subsidized Federal Consolidation Loans
- Direct Subsidized Consolidation Loans
- Federal Insured Student Loans (FISL)
- Guaranteed Student Loans (GSL)

**3b.** The unsubsidized portion of your loan ("Direct Unsubsidized Consolidation Loan") will have one loan identification number representing the amount of the following types of loans that you consolidate:

- Unsubsidized and Nonsubsidized Federal Stafford Loans
- Direct Unsubsidized Loans
- Unsubsidized Federal Consolidation Loans
- Direct Unsubsidized Consolidation Loans
- Federal PLUS Loans (for parents or for graduate and professional students)
- Direct PLUS Loans (for parents or for graduate and professional students)
- Direct PLUS Consolidation Loans
- Federal Perkins Loans
- National Direct Student Loans (NDSL)
- National Defense Student Loans (NDSL)
- Federal Supplemental Loans for Students (SLS)
- Parent Loans for Undergraduate Students (PLUS)
- Auxiliary Loans to Assist Students (ALAS)
- Health Professions Student Loans (HPSL)
- Health Education Assistance Loans (HEAL)
- Nursing Student Loans (NSL)
- Loans for Disadvantaged Students (LDS)

**4. Adding eligible loans to your Direct Consolidation Loan.** You may add eligible loans to your Direct Consolidation Loan by submitting a request to us within 180 days of the date your Direct Consolidation Loan is made. (Your Direct Consolidation Loan is "made" on the date we pay off the first loan that you are consolidating.) After we pay off any loans that you add during the 180-day period, we will notify you of the new total amount of your Direct Consolidation Loan and of any adjustments that must be made to your monthly payment amount.

If you want to consolidate an additional eligible loan after the 180-day period, you must apply for a new Direct Consolidation Loan.

**5. Loans that may be consolidated.** *General.* Only the federal education loans listed in Items 3a.and 3b. of this Borrower's Rights and Responsibilities Statement may be consolidated into a Direct Consolidation Loan. You may only consolidate loans that are in a grace period or in repayment (including loans in deferment or forbearance). At least one of the loans that you consolidate must be a Direct Loan Program loan or a Federal Family Education Loan (FFEL) Program loan.

*Defaulted loans.* You may consolidate a loan that is in default if **(a)** you first make satisfactory repayment arrangements with the holder of the defaulted loan, or **(b)** you agree to repay your Direct Consolidation Loan under the Income Contingent Repayment Plan (see Item 10).

*Existing consolidation loans.* Generally, you may consolidate an existing Direct Consolidation Loan or Federal Consolidation Loan into a new Direct Consolidation Loan only if you include at least one additional eligible loan in the consolidation. However, you may consolidate a Federal Consolidation Loan into a new Direct Consolidation Loan without including an additional loan if the Federal Consolidation Loan is delinquent and has been submitted by the lender to the guaranty agency for default aversion, or if the Federal Consolidation Loan is in default. In such cases, you must agree to repay the new Direct Consolidation Loan under the Income Contingent Repayment Plan or, effective July 1, 2009, the Income-Based Repayment Plan. Effective July 1, 2008, you may also consolidate a single Federal Consolidation Loan into a new Direct Consolidation Loan for purposes of using the public service loan forgiveness program described in Item 16 of this Borrower's Rights and Responsibilities Statement.

**6. Information you must report to us.** Until your loan is repaid, you must notify the Direct Loan Servicing Center if you:

- Change your address or telephone number;
- Change your name (for example, maiden name to married name);
- Change your employer or your employer's address or telephone number changes; or
- Have any other change in status that would affect your loan (for example, if you received a deferment while you were unemployed, but have found a job and therefore no longer meet the eligibility requirements for the deferment)

**7. Interest rate.** The interest rate on your Direct Consolidation Loan will be the **lesser** of the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, OR 8.25%. We will send you a notice that tells you the interest rate on your loan.

The interest rate on a Direct Consolidation Loan is a fixed rate. This means that the interest rate will remain the same throughout the life of your loan.

**8. Payment of interest.** We charge interest on a Direct Consolidation Loan from the date the loan is made until it is paid in full or discharged, including during periods of deferment or forbearance. However, we do not charge interest on the subsidized portion of a Direct Consolidation Loan ("Direct Subsidized Consolidation Loan" – see Item 3a.) during deferment periods.

If you do not pay the interest as it is charged during the periods described above, we will add the interest to the unpaid principal amount of your loan at the end of the deferment or forbearance period. This is called "capitalization." Capitalization increases the unpaid principal balance of your loan, and we will then charge interest on the increased principal amount.

The chart below shows the difference in the total amount you would repay on a $15,000 Direct Unsubsidized Consolidation Loan if you pay the interest as it is charged during a 12-month deferment or forbearance period, compared to the amount you would repay if you do not pay the interest and it is capitalized.

| | If you pay the interest as it is charged... | If you do not pay the interest and it is capitalized... |
|---|---|---|
| Loan Amount | $15,000 | $15,000 |
| Capitalized Interest for 12 months (at the maximum rate of 8.25%) | $0 | $1,238 |
| Principal to be Repaid | $15,000 | $16,238 |
| Monthly Payment (Standard Repayment Plan) | $146 | $158 |
| Number of Payments | 180 | 180 |
| Total Amount Repaid | $26,209 | $28,359 |

In this example, you would pay $12 less per month and $2,150 less altogether if you pay the interest as it is charged during a 12-month deferment or forbearance period.

You may be able to claim a federal income tax deduction for interest payments you make on Direct Loans. For further information, refer to IRS Publication 970, which is available at http://www.irs.ustreas.gov.

**9. Repayment incentive programs.** A repayment incentive is a benefit that we offer to encourage you to repay your loan on time. Under a repayment incentive program, the interest rate we charge on your loan may be reduced. Some repayment incentive programs require you to make a certain number of payments on time to keep the reduced interest rate. For Direct Consolidation Loans, the following repayment incentive program may be available to you:

*Interest Rate Reduction for Electronic Debit Account Repayment*

Under the Electronic Debit Account (EDA) repayment option, your bank automatically deducts your monthly loan payment from your checking or savings account and sends it to us. EDA helps to ensure that your payments are made on time. In addition, you receive a 0.25 percent interest rate reduction while you repay under the EDA option. We will include information about the EDA option in your first bill. You can also get this information on the Direct Loan Servicing Center's web site, or by calling the Direct Loan Servicing Center's toll-free telephone number (the web site address and telephone number are provided on all correspondence that the Direct Loan Servicing Center sends you).

The Direct Loan Servicing Center can provide you with more information on other repayment incentive programs that may be available.

**Note:** Another repayment incentive program, the up-front interest rebate, is available on Direct Subsidized Loans, Direct Unsubsidized Loans, and Direct PLUS Loans. The rebate is equal to a percentage of the loan amount, and is the same amount that would result if the interest rate on the loan were lowered by a specific percentage. To permanently keep an up-front interest rebate, a borrower must make each of the first 12 required monthly payments on time when the loan enters repayment. If you consolidate a Direct Loan on which you received an up-front interest rebate before you permanently earn the rebate (the correspondence you received about your loan will tell you if you received a rebate), you will have to make the first 12 required monthly payments on your Direct Consolidation Loan on time to keep the interest rebate. You will lose the rebate if you do not make all of your first 12 required monthly payments on time. If you lose the rebate, we will add the rebate amount back to the principal balance on your loan account. This will increase the amount that you must repay.

**10. Repaying your loan.** Your first payment will be due within 60 days of the first disbursement of your Direct Consolidation Loan unless your loan is in a deferment or forbearance period. The Direct Loan Servicing Center will notify you of the date your first payment is due.

You must make payments on your loan even if you do not receive a bill or repayment notice. Billing information is sent to you as a convenience, and you are obligated to make payments even if you do not receive a bill or notice.

You may choose one of the following repayment plans to repay your loan:

- **Standard Repayment Plan** – Under this plan, you will make fixed monthly payments and repay your loan in full within 10 to 30 years (not including periods of deferment or forbearance) from the date the loan entered repayment, depending on the amount of your Direct Consolidation Loan and the amount of your other student loan debt as listed in Section C2 of your Note (see the chart below). Your payments must be at least $50 a month and will be more, if necessary, to repay the loan within the required time period.

- **Graduated Repayment Plan** – Under this plan, your payments will be lower at first and will then increase over time, usually every two years. You will repay your loan in full within 10 to 30 years (not including periods of deferment or forbearance) from the date the loan entered repayment, depending on the total amount of your Direct Consolidation Loan and the amount of your other student loan debt as listed in Section C2 of your Note (see the chart below). No single payment under this plan will be more than three times greater than any other payment.

| Maximum Repayment Periods Under the Standard and Graduated Repayment Plans | |
|---|---|
| Total Education Loan Indebtedness | Maximum Repayment Period |
| Less than $7,500 | 10 years |
| $7,500 to $9,999 | 12 years |
| $10,000 to $19,999 | 15 years |
| $20,000 to $39,999 | 20 years |
| $40,000 to $59,999 | 25 years |
| $60,000 or more | 30 years |

- **Extended Repayment Plan** – You may choose this plan only if (1) you had no outstanding balance on a Direct Loan Program loan as of October 7, 1998, or on the date you obtained a Direct Loan Program loan on or after October 7, 1998, and (2) you have an outstanding balance on Direct Loan Program loans that exceeds $30,000. Under this plan, you may choose to make either fixed or graduated monthly payments and will repay your loan in full over a repayment period not to exceed 25 years (not including periods of deferment or forbearance) from the date your loan entered repayment. If you choose to make fixed monthly payments, your payments must be at least $50 a month and will be more, if necessary, to repay the loan within the required time period. If you choose to make graduated monthly payments, your payments will start out lower and will then increase over time, generally every two years. Under a graduated repayment schedule, your monthly payment must at least be equal to the amount of interest that accrues each month, and no single payment will be more than three times greater than any other payment.

- **Income Contingent Repayment Plan** – Under this plan, your monthly payment amount will be based on your adjusted gross income (and that of your spouse if you are married), your family size, and the total amount of your Direct Loans. Until we obtain the information needed to calculate your monthly payment amount, your payment will equal the amount of interest that has accrued on your loan unless you request a forbearance. As your income changes, your payments may change. If you do not repay your loan after 25 years under this plan, the unpaid portion will be forgiven. You may have to pay income tax on any amount forgiven.

- **Income-Based Repayment Plan (effective July 1, 2009)** – Under this plan, your required monthly payment amount will be based on your income during any period when you have a partial financial hardship. Your monthly payment amount may be adjusted annually. The maximum repayment period under this plan may exceed 10 years. If you meet certain requirements over a specified period, you may qualify for cancellation of any outstanding balance on your loans. **NOTE:** Direct Consolidation Loans that repaid parent Direct

PLUS Loans or parent Federal PLUS Loans may not be repaid under the Income-Based Repayment Plan.

If you can show to our satisfaction that the terms and conditions of these repayment plans are not adequate to meet your exceptional circumstances, we may provide you with an alternative repayment plan.

If you do not choose a repayment plan, we will choose a plan for you in accordance with the Act.

You may change repayment plans at any time after you have begun repaying your loan. There is no penalty if you make loan payments before they are due, or pay more than the amount due each month.

Except as provided by the Act for payments made under the Income-Based Repayment Plan, we apply your payments and prepayments in the following order: late charges and collection costs first, outstanding interest second, and outstanding principal last.

When you have repaid your loan in full, the Direct Loan Servicing Center will send you a notice telling you that you have paid off your loan. You should keep this notice in a safe place.

**11. Late charges and collection costs.** If you do not make any part of a payment within 30 days after it is due, we may require you to pay a late charge. This charge will not be more than six cents for each dollar of each late payment. If you do not make payments as scheduled, we may also require you to pay other charges and fees involved in collecting your loan.

**12. Demand for immediate repayment.** The entire unpaid amount of your loan becomes due and payable (on your Note this is called "acceleration") if you:

- Make a false statement that causes you to receive a loan that you are not eligible to receive; or
- Default on your loan.

**13. Defaulting on your loan.** Default (failing to repay your loan) is defined in detail in the "Promissory Note" section on page 4 of your Note. If you default:

- We will require you to immediately repay the entire unpaid amount of your loan.
- We may sue you, take all or part of your federal tax refund or other federal payments, and/or garnish your wages so that your employer is required to send us part of your wages to pay off your loan.
- We will require you to pay reasonable collection fees and costs, plus court costs and attorney fees.
- You will lose eligibility for other federal student aid and assistance under most federal benefit programs.
- You will lose eligibility for loan deferments.
- We will also report your default to national credit bureaus (see Item 14).

**14. Credit bureau notification.** We will report information about your loan to one or more national credit bureaus. This information will include the disbursement dates, amount, and repayment status of your loan (for example, whether you are current or delinquent in making payments).

If you default on a loan, we will also report this to national credit bureaus. We will notify you at least 30 days in advance that we plan to report default information to a credit bureau unless you resume making payments on the loan within 30 days. You will be given a chance to ask for a review of the debt before we report it.

If a credit bureau contacts us regarding objections you have raised about the accuracy or completeness of any information we have reported, we are required to provide the credit bureau with a prompt response.

**15. Deferment and forbearance (postponing payments).** If you meet certain requirements, you may receive a **deferment** that allows you to temporarily stop making payments on your loan. If you cannot make your scheduled loan payments, but do not qualify for a deferment, we may give you a **forbearance**. A forbearance allows you to temporarily stop making payments on your loan, temporarily make smaller payments, or extend the time for making payments.

**Deferment**

You may receive a deferment while you are:

- Enrolled at least half-time at an eligible school;
- In a full-time course of study in a graduate fellowship program;
- In an approved full-time rehabilitation program for individuals with disabilities;
- Unemployed (for a maximum of three years; you must be conscientiously seeking, but unable to find, full-time employment); or

- Experiencing an economic hardship (including Peace Corps service), as determined under the Act (for a maximum of three years).
- Serving on active duty during a war or other military operation or national emergency, or performing qualifying National Guard duty during a war or other military operation or national emergency, and if you are serving on or after October 1, 2007, for the 180-day period following the demobilization date for your qualifying service.

Effective October 1, 2007, if you are a member of the National Guard or other reserve component of the U.S. Armed Forces (current or retired) and you are called or ordered to active duty while enrolled at an eligible school, or within 6 months of having been enrolled, you are eligible for a deferment during the 13 months following the conclusion of the active duty service, or until the date you return to enrolled student status, whichever is earlier.

You may be eligible to receive additional deferments if, at the time you received your first Direct Loan, you had an outstanding balance on a loan made under the Federal Family Education Loan (FFEL) Program before July 1, 1993. If you meet this requirement, you may receive a deferment while you are:

- Temporarily totally disabled, or unable to work because you are required to care for a spouse or dependent who is disabled (for a maximum of three years);
- On active duty in the U.S. Armed Forces, on active duty in the National Oceanic and Atmospheric Administration (NOAA), or serving full-time as an officer in the Commissioned Corps of the Public Health Service (for a combined maximum of three years);
- Serving in the Peace Corps (for a maximum of three years);
- A full-time paid volunteer for a tax-exempt organization or an ACTION program (for a maximum of three years);
- In a medical internship or residency program (for a maximum of two years);
- Teaching in a designated teacher shortage area (for a maximum of three years);
- On parental leave (for a maximum of six months);
- A working mother entering or re-entering the workforce (for a maximum of one year); or
- While the student for whom you borrowed a PLUS loan is dependent and is enrolled at least half-time at an eligible school, or is in an approved full-time rehabilitation training program for individuals with disabilities.

You may receive a deferment based on your enrollment in school on at least a half-time basis if (1) you submit a deferment request form to the Direct Loan Servicing Center along with documentation of your eligibility for the deferment, or (2) the Direct Loan Servicing Center receives information from the school you are attending that indicates you are enrolled at least half-time. If the Direct Loan Servicing Center processes a deferment based on information received from your school, you will be notified of the deferment and will have the option of canceling the deferment and continuing to make payments on your loan.

For all other deferments, you (or, for a deferment based on active military duty or qualifying National Guard duty during a war or other military operation or national emergency, your representative) must submit a deferment request form to the Direct Loan Servicing Center, along with documentation of your eligibility for the deferment. In certain circumstances, you may not be required to provide documentation of your eligibility if the Direct Loan Servicing Center confirms that you have been granted the same deferment for the same period of time on a FFEL Program loan. The Direct Loan Servicing Center can provide you with a deferment request form that explains the requirements for the type of deferment you are requesting. You may also obtain deferment request forms and information on deferment eligibility requirements from the Direct Loan Servicing Center's web site at www.dl.ed.gov.

If you are in default on your loan, you are not eligible for a deferment.

You are responsible for paying the interest on a Direct Unsubsidized Consolidation Loan during a deferment period. You are not responsible for paying the interest on a Direct Subsidized Consolidation Loan during a deferment period.

**Forbearance**

We will give you a forbearance if: You are serving in a medical or dental internship or residency program, and you meet specific requirements;

- You are serving in a national service position for which you receive a national service education award under the National and Community Service Act of 1990 (AmeriCorps);
- You qualify for partial repayment of your loans under the Student Loan Repayment Program, as administered by the Department of Defense.
- You are performing service that would qualify you for loan forgiveness under the teacher loan forgiveness program that is available to certain Direct Loan and FFEL program borrowers; or
- The total amount you owe each month for all of the student loans you received under Title IV of the Act is 20 percent or more of your total monthly gross income (for a maximum of three years).

In addition, we may give you a forbearance if you are temporarily unable to make your scheduled loan payments for reasons including, but not limited to, financial hardship or illness.

To request a forbearance, contact the Direct Loan Servicing Center. The Direct Loan Servicing Center can provide you with a forbearance request form that explains the requirements for the type of forbearance you are requesting. You may also obtain forbearance request forms and information on forbearance eligibility requirements from the Direct Loan Servicing Center's web site at www.dl.ed.gov.

Under certain circumstances, we may also give you a forbearance without requiring you to submit a request or documentation. These circumstances include, but are not limited to, the following:

- Periods necessary for us to determine your eligibility for a loan discharge;
- A period of up to 60 days in order for us to collect and process documentation related to your request for a deferment, forbearance, change in repayment plan, or consolidation loan (we do not capitalize interest charged during this period); or
- Periods when you are involved in a military mobilization, or a local or national emergency.

You are responsible for paying the interest on your entire Direct Consolidation Loan during a forbearance period.

**16. Discharge (having your loan forgiven).** We will discharge (forgive) your Direct Consolidation Loan if:

- The Direct Loan Servicing Center receives acceptable documentation of your death. We will also discharge the portion of a Direct Consolidation Loan that repaid one or more Direct PLUS Loans or Federal PLUS Loans obtained on behalf of a student who dies.
- Your loan is discharged in bankruptcy. However, federal student loans are not automatically discharged if you file for bankruptcy. To have your loan discharged in bankruptcy, you must prove to the bankruptcy court, in an adversary proceeding, that repaying the loan would cause undue hardship.
- We determine that you are totally and permanently disabled (as defined in the Act), based on a physician's certification, and you meet additional requirements during a 3-year conditional discharge period. During that period, your earnings from work must not exceed the poverty line amount for a family of two, and you must not receive any additional loans under the Direct Loan, FFEL, or Federal Perkins Loan programs. You may not receive a discharge due to total and permanent disability based on a condition that existed before you received any of the loans that you consolidated, unless a doctor certifies that the condition substantially deteriorated after the loan was made.

In certain cases, we may also discharge all or a portion of your Direct Consolidation Loan if:

- One or more Direct Loan Program, FFEL Program, or Federal Perkins Loan Program loans that you consolidated was used to pay for a program of study that you (or the dependent student for whom you borrowed a PLUS loan) were unable to complete because the school closed;
- Your eligibility (or the eligibility of the dependent student for whom you borrowed a PLUS loan) for one or more of the Direct Loan Program or FFEL Program loans that you consolidated was falsely certified by the school;
- Your eligibility for one or more of the Direct Loan Program or FFEL Program loans that you consolidated was falsely certified as a result of a crime of identity theft; or
- The school did not pay a required refund of one or more Direct Loan Program or FFEL Program loans that you consolidated.

We may forgive a portion of your Direct Consolidation Loan that repaid Direct Subsidized or Direct Unsubsidized Loans you received after October 1, 1998, or subsidized or unsubsidized Federal Stafford Loans you received under the FFEL program after October 1, 1998 if you teach full time for five consecutive years in certain low-income elementary and/or secondary schools and meet certain other qualifications, and if you did not owe a Direct Loan or FFEL program loan as of October 1, 1998, or as of the date you obtain a loan after October 1, 1998.

A public service loan forgiveness program is available that provides for the cancellation of the remaining balance due on your eligible Direct Loan Program loans after you have made 120 payments (after October 1, 2007) on those loans under certain repayment plans while you are employed in certain public service jobs.

To request a loan discharge based on one of the conditions described above (except for discharges due to death or bankruptcy), you must complete an application that you may obtain from the Direct Loan Servicing Center or from the Direct Loan Servicing Center's web site at www.dl.ed.gov.

In some cases, you may assert, as a defense against collection of your loan, that the school did something wrong or failed to do something that it should have done. You can make such a defense against repayment only if the school's act or omission directly relates to your loan or to the educational services that the loan was intended to pay for, and if what the school did or did not do would give rise to a legal cause of action against the school under applicable state law. If you believe that you have a defense against repayment of your loan, contact the Direct Loan Servicing Center.

We do not guarantee the quality of the academic programs provided by schools that participate in federal student financial aid programs. You must repay your loan even if you do not complete your education, are unable to obtain employment in your field of study, or are dissatisfied with, or do not receive, the education you paid for with the loan.

**17. Department of Defense and other federal agency loan repayment.** Under certain circumstances, military personnel may have educational loans repaid by the Secretary of Defense. This benefit is offered as part of a recruitment program that does not apply to individuals based on their previous military service or to those who are not eligible for enlistment in the U.S. Armed Forces. For more information, contact your local military service recruitment office.

Other agencies of the federal government may also offer student loan repayment programs as an incentive to recruit and retain employees. Contact the agency's human resources department for more information.

*END OF BORROWER'S RIGHTS AND RESPONSIBILITIES STATEMENT*

## IMPORTANT NOTICES

### Gramm-Leach-Bliley Act Notice

In 1999, Congress enacted the Gramm-Leach-Bliley Act (Public Law 106-102). This Act requires that lenders provide certain information to their customers regarding the collection and use of nonpublic personal information.

We disclose nonpublic personal information to third parties only as necessary to process and service your loan and as permitted by the Privacy Act of 1974. See the Privacy Act Notice below. We do not sell or otherwise make available any information about you to any third parties for marketing purposes.

We protect the security and confidentiality of nonpublic personal information by implementing the following policies and practices. All physical access to the sites where nonpublic personal information is maintained is controlled and monitored by security personnel. Our computer systems offer a high degree of resistance to tampering and circumvention. These systems limit data access to our staff and contract staff on a "need-to-know" basis, and control individual users' ability to access and alter records within the systems. All users of these systems are given a unique user ID with personal identifiers. All interactions by individual users with the systems are recorded.

### Privacy Act Notice

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authority for collecting the requested information from and about you is §451 et seq. of the Higher Education Act (HEA) of 1965, as amended (20 U.S.C. 1087a et seq.) and the authorities for collecting and using your Social Security Number (SSN) are §484(a)(4) of the HEA (20 U.S.C. 1091(a)(4)) and 31 U.S.C. 7701(b). Participating in the William D. Ford Federal Direct Loan (Direct Loan) Program and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge, or forgiveness) under the Direct Loan Program, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect and report on your loan(s) if your loan(s) become delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed, on a case by case basis or under a computer matching program, to third parties as authorized under routine uses in the appropriate systems of records notices. The routine uses of this information include, but are not limited to, its disclosure to federal, state, or local agencies, to private parties such as relatives, present and former employers, business and personal associates, to consumer reporting agencies, to financial and educational institutions, and to guaranty agencies in order to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan, to permit the servicing or collection of your loan(s), to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, or to locate you if you become delinquent in your loan payments or if you default. To provide default rate calculations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to state agencies. To provide financial aid history information, disclosures may be made to educational institutions. To assist program administrators with tracking refunds and cancellations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal or state agencies. To provide a standardized method for educational institutions to efficiently submit student enrollment status, disclosures may be made to guaranty agencies or to financial and educational institutions. To counsel you in repayment efforts, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal, state, or local agencies.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary

actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may be made to our contractors for the purpose of performing any programmatic function that requires disclosure of records. Before making any such disclosure, we will require the contractor to maintain Privacy Act safeguards. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

### Financial Privacy Act Notice

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), ED will have access to financial records in your student loan file maintained in compliance with the administration of the Direct Loan Program.

### Paperwork Reduction Notice

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0053. The time required to complete this information collection is estimated to average 1.0 hour (60 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed, and complete and review the information collection. **If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to:** U.S. Department of Education, Washington, DC 20202-4700.

**If you have any questions regarding the status of your individual submission of this form, write directly to:**

**U.S. Department of Education**
**Consolidation Department**
**P.O. Box 242800**
**Louisville, KY 40224-2800**

# EXHIBIT D

# MANDATORY FORBEARANCE REQUEST

**STUDENT LOAN DEBT BURDEN**

**William D. Ford Federal Direct Loan (Direct Loan) Program / Federal Family Education Loan (FFEL) Program / Federal Perkins Loan (Perkins Loan) Program**

OMB No. 1845-0018
Form Approved
Exp. Date 9/30/2018

**SLDB**

**WARNING**: Any person who knowingly makes a false statement or misrepresentation on this form or on any accompanying document is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

## SECTION 1: BORROWER INFORMATION

Please enter or correct the following information.

☐ **Check this box if any of your information has changed.**

SSN _____

Name _____

Address _____

City _____ State _____ Zip Code _____

Telephone - Primary _____

Telephone - Alternate _____

Email (Optional) _____

## SECTION 2: BORROWER DETERMINATION OF FORBEARANCE ELIGIBILITY

**Carefully read the entire form before completing it. Complete Section 2 in its entirety. Maximum eligibility is 36 months.** As an alternative to this forbearance, you may qualify for a deferment or for a repayment plan that determines your monthly payment amount based on your income. Visit **StudentAid.gov/IDR** for more information.

**1.** Do you currently have taxable income?

Check "No" if you do not have any income or only receive untaxed income.

☐ Yes - Continue to Item 2.
☐ No - Skip to Section 3.

**2.** What is your total monthly taxable income?

_____

You must attach documentation of your monthly income, such as a tax return, W-2s, or dividend statements. Monthly income is either (you choose):

- Your gross taxable income from all sources or;
- One-twelfth of the Adjusted Gross Income from your most recent federal income tax return.

**3.** Multiply the amount in Item 2 by 20% (0.20):

_____

**4.** What is the total amount of your monthly payments on all of your Title IV loans?

_____

You must attach documentation of your most recent monthly payments due on each of your Title IV loans, such as a monthly statement or repayment schedule.

**5.** Is the amount reported in Item 4 equal to or greater than the amount calculated in Item 3?

☐ Yes - Continue to Section 3.
☐ No - You are not eligible for this forbearance.

**Borrower Name** _____     **Borrower SSN** _____

---

## SECTION 3: BORROWER REQUESTS, UNDERSTANDINGS, CERTIFICATIONS, AND AUTHORIZATION

**I request:**

- My loan holder grant forbearance for the period during which I meet the qualifications for the forbearance. If approved for a forbearance, I would like to:
  - ☐ Temporarily stop making payments; or
  - ☐ Make smaller payments in the amount of _____ per month.
- My forbearance begin on the following date: _____ .
- My loan holder grant my forbearance for up to 12 months unless I specify an earlier end date: _____ .
- ☐ If indicated, to make interest payments on my loans during forbearance.

**I understand:**

- I am not required to make payments of loan principal or interest during forbearance.
- My forbearance will begin on the later of the date I became eligible for the forbearance or the date I requested.
- My forbearance will end on the earlier of the date I exhaust my maximum eligibility for the forbearance, 12 months from the date my forbearance begins, on the date I am no longer eligible for the forbearance, or the end date I requested.
- My forbearance will only be granted in increments of up to 12 months, and I must reapply for the forbearance if I continue to meet the eligibility requirements and want to extend my forbearance.
- Interest may capitalize on my loans during or at the expiration of my forbearance, but interest never capitalizes on Perkins Loans.
- If I do not qualify for this forbearance, my loan holder may apply a discretionary forbearance for the same period if I am eligible.

**I certify that:**

- The information I have provided on this form is true and correct.
- I will provide additional documentation to my loan holder, as required, to support my forbearance eligibility.
- I will notify my loan holder immediately when my eligibility for the forbearance ends.
- I have read, understand, and meet the eligibility requirements in Section 2.

**I authorize** the entity to which I submit this request and its agents to contact me regarding my request or my loans at any cellular telephone number that I provide now or in the future using automated telephone dialing equipment or artificial prerecorded voice or text messages.

**Borrower's or Endorser's Signature** _____     **Date** _____

---

## SECTION 4: INSTRUCTIONS FOR COMPLETING THE FORM

Type or print using dark ink. Enter dates as month-day-year (mm-dd-yyyy). Example: March 14, 2015 = 03-14-2015. Include your name and account number on any documentation that you submit with this form. If you want to apply for a forbearance on loans that are held by different loan holders, you must submit a separate forbearance request to each loan holder. **Return the completed form and any required documentation to the address shown in Section 6.**

Endorsers may request forbearance only when you are required to repay the loan because the borrower is not making payments. For those who have loans made jointly (as co-makers), both borrowers must individually meet the requirements for a forbearance and each of you must submit a separate forbearance request.

## SECTION 5: DEFINITIONS

**Capitalization** is the addition of unpaid interest to the principal balance of your loan. Capitalization causes more interest to accrue over the life of your loan and may cause your monthly payment amount to increase. Interest never capitalizes on Perkins Loans. Table 1 (below) provides an example of the monthly payments and the total amount repaid for a $30,000 unsubsidized loan. Interest never capitalizes on Perkins Loans. The example loan has a 6% interest rate and the example deferment or forbearance lasts for 12 months and begins when the borrower entered repayment. The example compares the effects of paying the interest as it accrues or allowing it to capitalize.

A **co-maker** is one of the two individuals who are joint borrowers on a Direct or Federal Consolidation Loan or a Federal PLUS Loan. Both co-makers are equally responsible for repaying the full amount of the loan.

An **endorser** is an individual who signs a promissory note and agrees to pay the loan if the borrower does not.

The **Federal Family Education Loan (FFEL) Program** includes Federal Stafford Loans, Federal PLUS Loans, Federal Consolidation Loans, and Federal Supplemental Loans for Students (SLS).

The **Federal Perkins Loan (Perkins Loan) Program** includes Federal Perkins Loans, National Direct Student Loans (NDSL), and National Defense Student Loans (Defense Loan).

A **forbearance** is a period during which you are allowed to postpone making payments temporarily, allowed an extension of time for making payments, or temporarily allowed to make smaller payments than scheduled. A forbearance can be a mandatory forbearance, meaning that your loan holder must grant the forbearance if you qualify for the forbearance and supply all supporting documentation. A forbearance can also be a discretionary forbearance, meaning that your loan holder may grant the forbearance, but is not required to do so.

The **holder** of your Direct Loans is the Department. The holder of your FFEL Program loans may be a lender, guaranty agency, secondary market, or the Department. The holder of your Perkins Loans is an institution of higher education or the Department. Your loan holder may use a servicer to handle billing and other communications related to your loans. References to "your loan holder" on this form mean either your loan holder or your servicer.

**Title IV loans** are student loans that you received under the Direct Loan Program, the FFEL Program, and the Perkins Loan Program.

The **William D. Ford Federal Direct Loan (Direct Loan) Program** includes Federal Direct Stafford/Ford (Direct Subsidized) Loans, Federal Direct Unsubsidized Stafford/Ford (Direct Unsubsidized) Loans, Federal Direct PLUS (Direct PLUS) Loans, and Federal Direct Consolidation (Direct Consolidation) Loans.

**Table 1. Capitalization Chart.**

| Treatment of Interest with Deferment/Forbearance | Loan Amt. | Capitalized Interest | Outstanding Principal | Monthly Payment | Number of Payments | Total Repaid |
|---|---|---|---|---|---|---|
| Interest is paid | $30,000 | $0 | $30,000 | $333 | 120 | $41,767 |
| Interest is capitalized at the end | $30,000 | $1,800 | $31,800 | $353 | 120 | $42,365 |
| Interest is capitalized quarterly and at the end | $30,000 | $1,841 | $31,841 | $354 | 120 | $42,420 |

## SECTION 6: WHERE TO SEND THE COMPLETED FORBEARANCE REQUEST

Return the completed form and any documentation to:
(If no address is shown, return to your loan holder.)

If you need help completing this form, call:
(If no phone number is shown, call your loan holder.)

## SECTION 7: IMPORTANT NOTICES

**Privacy Act Notice.** The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authorities for collecting the requested information from and about you are §421 et seq., §451 et seq., or §461 of the Higher Education Act of 1965, as amended (20 U.S.C. 1071 et seq., 20 U.S.C. 1087a et seq., or 20 U.S.C. 1087aa et seq.) and the authorities for collecting and using your Social Security Number (SSN) are §§428B(f) and 484(a)(4) of the HEA (20 U.S.C. 1078-2(f) and 1091(a)(4)) and 31 U.S.C. 7701(b). Participating in the William D. Ford Federal Direct Loan (Direct Loan) Program, Federal Family Education Loan (FFEL) Program, or Federal Perkins Loan (Perkins Loan) Program and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge, or forgiveness) under the Direct Loan, FFEL, or Federal Perkins Loan Programs, to permit the servicing of your loans, and, if it becomes necessary, to locate you and to collect and report on your loans if your loans become delinquent or default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed, on a case-by-case basis or under a computer matching program, to third parties as authorized under routine uses in the appropriate systems of records notices. The routine uses of this information include, but are not limited to, its disclosure to federal, state, or local agencies, to private parties such as relatives, present and former employers, business and personal associates, to consumer reporting agencies, to financial and educational institutions, and to guaranty agencies in order to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan, to permit the servicing or collection of your loans, to enforce the terms of the loans, to investigate possible fraud and to verify compliance with federal student financial aid program regulations, or to locate you if you become delinquent in your loan payments or if you default. To provide default rate calculations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to state agencies. To provide financial aid history information, disclosures may be made to educational institutions.

To assist program administrators with tracking refunds and cancellations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal or state agencies. To provide a standardized method for educational institutions to efficiently submit student enrollment statuses, disclosures may be made to guaranty agencies or to financial and educational institutions. To counsel you in repayment efforts, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal, state, or local agencies.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may be made to our contractors for the purpose of performing any programmatic function that requires disclosure of records. Before making any such disclosure, we will require the contractor to maintain Privacy Act safeguards. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

**Paperwork Reduction Notice.** According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless such collection displays a valid OMB control number. The valid OMB control number for this information collection is 1845-0018. Public reporting burden for this collection of information is estimated to average 12 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this collection is required to obtain a benefit in accordance with 34 CFR 674.33, 682.211, or 685.205. If you have comments or concerns regarding the status of your individual submission of this form, please contact your loan holder directly (see Section 6).

# EXHIBIT E

| SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30 | | | | 1. REQUISITION NUMBER EDOFSA-09-000621 | | PAGE 1 OF 72 | |
|---|---|---|---|---|---|---|---|
| 2. CONTRACT NO. ED-FSA-09-D-0014 | 3. AWARD/EFFECTIVE DATE JUN 17, 2009 | 4. ORDER NUMBER | | 5. SOLICITATION NUMBER | | 6. SOLICITATION ISSUE DATE | |

| 7. FOR SOLICITATION INFORMATION CALL: | a. NAME Nicholas Chung nicholas.chung@ed.gov | b. TELEPHONE NUMBER *(No collect calls)* 202-377-3635 | 8. OFFER DUE DATE/ LOCAL TIME |
|---|---|---|---|

| 9. ISSUED BY | CODE | FSA-FS2 |
|---|---|---|
| United States Department of Education Federal Student Aid/Mission Support Group 830 First St NE - Suite 91F3 Washington DC 20202 | | |

10. THIS ACQUISITON IS

☐ UNRESTRICTED OR ☐ SET ASIDE: ____ % FOR:

NAICS: ☐ SMALL BUSINESS ☐ EMERGING SMALL BUSINESS

SIZE STANDARD: ☐ HUBZONE SMALL BUSINESS

☐ SERVICE-DISABLED VETERAN- OWNED SMALL BUSINESS ☐ 8(A)

| 11. DELIVERY FOR FOB DESTINA- TION UNLESS BLOCK IS MARKED ☐ SEE SCHEDULE | 12. DISCOUNT TERMS 0 Days 0% Net 30 | 13a. ☐ THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700) | 13b. RATING |
|---|---|---|---|
| | | | 14. METHOD OF SOLICITATION ☐ RFQ ☐ IFB ☐ RFP |

| 15. DELIVER TO | CODE | 16. ADMINISTERED BY | CODE | FSA-FS2 |
|---|---|---|---|---|
| | | United States Department of Education Federal Student Aid/Mission Support Group 830 First St NE - Suite 91F3 | | |

| 17a. CONTRACTOR/ OFFEROR | CODE | 00030774 | FACILITY CODE | 18a. PAYMENT WILL BE MADE BY | CODE |
|---|---|---|---|---|---|

HIGHER EDUCATION ASSISTANCE AGENCY, PA DUNS: 041693362
1200 NORTH 7TH STREET      CAGE: 41UK7
FINANCIAL MANAGEMENT 5TH FLOOR DUNS: 007368103
HARRISBURG PA 171021444

TELEPHONE NO.

☐ 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED ☐ SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| Please | see continuation page for line item details. | | | | |
| | *(Use Reverse and/or Attach Additional Sheets as Necessary)* | | | | |

| 25. ACCOUNTING AND APPROPRIATION DATA See Schedule | 26. TOTAL AWARD AMOUNT *(For Govt. Use Only)* $5,000,000.00 |
|---|---|

| ☐ 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA | ☐ ARE | ☐ ARE NOT ATTACHED |
|---|---|---|
| ☒ 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA | ☒ ARE | ☐ ARE NOT ATTACHED |

☒ 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ___1___ COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED

☐ 29. AWARD OF CONTRACT: REF. _____ OFFER DATED _____ . YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

| 30a. SIGNATURE OF OFFEROR/CONTRACTOR | 31a. UNITED STATES OF AMERICA *(SIGNATURE OF CONTRACTING OFFICER)* |
|---|---|
| ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | |

| 30b. NAME AND TITLE OF SIGNER *(Type or print)* ▇▇▇▇▇▇▇▇▇ | 30c. DATE SIGNED 06/17/09 | 31b. NAME OF CONTRACTING OFFICER *(Type or print)* Mike Whisler | 31c. DATE SIGNED 6/17/09 |
|---|---|---|---|

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION IS NOT USABLE

STANDARD FORM 1449 (REV. 3/2005)
Prescribed by GSA - FAR (48 CFR) 53.212

| 19.<br>ITEM NO. | 20.<br>SCHEDULE OF SUPPLIES/SERVICES | 21.<br>QUANTITY | 22.<br>UNIT | 23.<br>UNIT PRICE | 24.<br>AMOUNT |
|---|---|---|---|---|---|
| | | | | | |

32a. QUANTITY IN COLUMN 21 HAS BEEN

☐ RECEIVED ☐ INSPECTED ☐ ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED: _____

| 32b. SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE | 32c. DATE | 32d. PRINTED NAME AND TITLE OF AUTHORIZED GOVERNMENT REPRESENTATIVE |
|---|---|---|
| 32e. MAILING ADDRESS OF AUTHORIZED GOVERNMENT REPRESENTATIVE | | 32f. TELPHONE NUMBER OF AUTHORZED GOVERNMENT REPRESENTATIVE |
| | | 32g. E-MAIL OF AUTHORIZED GOVERNMENT REPRESENTATIVE |

| 33. SHIP NUMBER | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR | 36. PAYMENT | 37. CHECK NUMBER |
|---|---|---|---|---|
| ☐ PARTIAL ☐ FINAL | | | ☐ COMPLETE ☐ PARTIAL ☐ FINAL | |
| 38. S/R ACCOUNT NO. | 39. S/R VOUCHER NUMBER | 40. PAID BY | | |

| 41a. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT | | 42a. RECEIVED BY (Print) |
|---|---|---|
| 41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER | 41c. DATE | 42b. RECEIVED AT (Location) |
| | | 42c. DATE REC'D (YY/MM/DD) \| 42d. TOTAL CONTAINERS |

**STANDARD FORM 1449** (REV. 3/2005) **BACK**

**SCHEDULE Continued**

| ITEM NO. | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE $ | AMOUNT $ |
|---|---|---|---|---|---|
| | Accounting and Appropriation Data: | | | | |
| | 0198M2009.A.2009.ENB00000.6P2.2572A.C26.000.0000 000000 | | | | |
| | Cost Applied: $5,000,000.00 | | | | |
| 0001 | IDIQ Base Ordering Period Award Minimum Guarantee | 1.00 | SE | 5,000,000.00 | 5,000,000.00 |
| | Period of Performance:  06/17/2009 - 06/16/2014 | | | | |
| 0002 | OPTION - Optional Ordering Period | 1.00 | EA | 0.00 | 0.00 |
| | Optional Period of Performance:  06/17/2014 - 06/16/2019 | | | | |

## A.     ADDENDUM 1 – SF 1449 CONTINUATION PAGE

(This page left blank intentionally.)

**B.      ADDENDUM 2 – 52.212-4, CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (MAR 2009)**

**B.1    52.212-4      Contract Terms And Conditions—Commercial Items (Mar 2009)—TAILORED**

(c)(1) *Changes.* The Contracting Officer may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract in any one or more of the following:

     (i)     Description of services to be performed.

     (ii)    Time of performance (i.e., hours of the day, days of the week, etc.).

     (iii)   Place of performance of the services.

     (2)    If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the order, the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.

     (3)    The Contractor must assert its right to an adjustment under this clause within 30 days from the date of receipt of the written order. However, if the Contracting Officer decides that the facts justify it, the Contracting Officer may receive and act upon a proposal submitted before final payment of the contract.

     (4)    If the Contractor's proposal includes the cost of property made obsolete or excess by the change, the Contracting Officer shall have the right to prescribe the manner of the disposition of the property.

     (5)    Failure to agree to any adjustment shall be a dispute under the Disputes clause. However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.

**B.2    52.252-2      Clauses Incorporated By Reference (Feb 1998)**

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. The full text of a clause may also be accessed electronically at: http://www.arnet.gov/far/

-      52.203-13  Contractor Code of Business Ethics and Conduct (Dec 2008)
-      52.203-14  Display of Hotline Poster(s) (Dec 2007)
-      52.209-6  Protecting the Government's Interest when Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (SEP 2006)
- 52.216-18 Ordering (OCT 1995)
  -      (a)    the effective date of award,  the end of the current period of performance
- 52.216-19 Ordering Limitations (OCT 1995)
  -      (a)    One Borrower
  -      (b)(1)  Five Million Borrowers
  -      (b)(2)  Five Million Borrowers
  -      (b)(3)  Two Days
  -      (d)    One Day
- 52.216-22      Indefinite Quantity (OCT 1995)

  (d)  the end of the current period of performance
- 52.216-27  Single Or Multiple Awards (OCT 1995)
- 52.217-8  Option To Extend Services (NOV 1999)
- 52.217-9  Option to Extend the Term of the Contract (MAR 2000)
- 52.224-1  Privacy Act Notification (APR 1984)
- 52.224-2  Privacy Act (APR 1984)

## B.3  EDAR 3452.202-1  Definitions (Aug 1987) – TAILORED

(a) The term "Secretary" or "Head of the Agency" (also called "Agency Head") means the Secretary of the Department of Education; and the term "his/her duly authorized representative" means any person, persons, or board authorized to act for these officials.

(b) "Chief Acquisition Officer" or "CAO" means the official responsible for monitoring the agency's acquisition activities, evaluating them based on applicable performance measurements, increasing the use of full and open competition in agency acquisitions, making acquisition decisions consistent with applicable laws, and establishing clear lines of authority, accountability, and responsibility for acquisition decision-making and developing and maintaining a acquisition career management program.

(c) "Chief of the Contracting Office" means an official serving in the contracting activity (CAM or FSA Acquisitions) as the manager of a group that awards and administers contracts for a principal office of the Department. See also definition of "Head of Contracting Activity" below.

(d) "Contracting Officer's Representative" or "COR" means a government employee appointed in writing ONLY by a contracting officer and delegated limited responsibilities to perform specified contract management duties related to technical oversight and administration of a specific contract. CORs may serve in a full-time or part-time capacity. The COR performs the contract management duties assigned by the CO in a written "Contracting Officer's Representative Designation Memorandum" for each particular contract. Multiple CORs may be appointed for a single contract when the area of expertise necessary requires such appointments. The CO may appoint alternate or assistant CORs to serve in the COR's absence. For the purpose of this program, the term Contracting Officer's Technical Representative (COTR) will be used for assistant CORs.

(e) "Head of the Contracting Activity" or "HCA" means those officials within the Department of Education who have responsibility for and manage an acquisition organization and usually hold unlimited procurement authority. The Director, Federal Student Aid Acquisitions, is the HCA for FSA. The Director, Contracts and Acquisitions Management (CAM) is the HCA for all other Departmental program offices and all boards, commissions, and councils under the management control of the Department.

(f) "Performance-Based Organization" or "PBO" is the office within the Department that is mandated by Public Law 105-244 to carry out Federal student assistance or aid programs and report to Congress on an annual basis. It may also be referred to as "Federal Student Aid."

(g) "Senior Procurement Executive" or "SPE" means the single agency official appointed as such by the head of the agency and delegated broad responsibility for acquisition functions, including issuing agency acquisition policy and reporting on acquisitions agency-wide. The SPE also acts as the official one level above the contracting officer when the HCA is acting as a contracting officer.

(h) "Department" or "ED" means the United States Department of Education.

**B.4    ED 307-17    Conflicts Of Interest (Aug 2007)**

(a) The contractor, subcontractor, employee or consultant, has certified that, to the best of their knowledge and belief, there are no relevant facts or circumstances which could give rise to an organizational or personal conflict of interest, (see FAR Subpart 9.5 for organizational conflicts of interest), (or apparent conflict of interest) for the organization or any of its staff, and that the contractor, subcontractor, employee or consultant has disclosed all such relevant information if such a conflict of interest appears to exist to a reasonable person with knowledge of the relevant facts (or if such a person would question the impartiality of the contractor, subcontractor, employee or consultant). Conflicts may arise in the following situations:

(1) Unequal access to information – a potential contractor, subcontractor, employee or consultant has access to non-public information through its performance on a government contract.

(2) Biased ground rules – a potential contractor, subcontractor, employee or consultant has worked, in one government contract, or program, on the basic structure or ground rules of another government contract,

(3) Impaired objectivity – a potential contractor, subcontractor, employee or consultant, or member of their immediate family (spouse, parent or child) has financial or other interests that would impair, or give the appearance of impairing, impartial judgment in the evaluation of government programs, in offering advice or recommendations to the government, or in providing technical assistance or other services to recipients of Federal funds as part of its contractual responsibility.

"Impaired objectivity" includes but is not limited to the following situations that would cause a reasonable person with knowledge of the relevant facts to question a person's objectivity:

(i) financial interests or reasonably foreseeable financial interests in or in connection with products, property, or services that may be purchased by an educational agency, a person, organization, or institution in the course of implementing any program administered by the Department;

(ii) significant connections to teaching methodologies that might require or encourage the use of specific products, property or services; or

(iii) significant identification with pedagogical or philosophical viewpoints that might require or encourage the use of a specific curriculum, specific products, property or services,

Offerors must provide the disclosure described above on any actual or potential conflict (or apparent conflict of interest) of interest regardless of their opinion that such a conflict or potential conflict (or apparent conflict of interest) would not impair their objectivity.

In a case in which an actual or potential conflict (or apparent conflict of interest) is disclosed, the Department will take appropriate actions to eliminate or address the actual or potential conflict (or apparent conflict of interest), including but not limited to mitigating or neutralizing the conflict, when appropriate, through such means as ensuring a balance of views, disclosure with the appropriate disclaimers, or by restricting or modifying the work to be performed to avoid or reduce the conflict. In this clause, the term "potential conflict" means reasonably foreseeable conflict of interest.

(b) The contractor, subcontractor, employee or consultant agrees that if "impaired objectivity, or an actual or potential conflict of interest (or apparent conflict of interest) is discovered after the award is made, it will make a full disclosure in writing to the Contracting Officer. This disclosure shall include a description of actions that the Contractor has taken or proposes to take, after consultation with the Contracting Officer, to avoid, mitigate, or neutralize the actual or potential conflict (or apparent conflict of interest).

(c) Remedies - The Government may terminate this contract for convenience, in whole or in part, if it deems such termination necessary to avoid the appearance of a conflict of interest. If the Contractor was aware of a potential conflict of interest prior to award or discovered an actual or potential conflict (or apparent conflict of interest) after award and did not disclose or misrepresented relevant information to the Contracting Officer, the Government may terminate the contract for default, or pursue such other remedies as may be permitted by law or this contract. These remedies include imprisonment for up to five years for violation of Title 18, U.S. Code, § 1001 and fines of up to $5000 for violation of Title 31, U.S. Code, § 3802. Further remedies include suspension or debarment from contracting with the federal government. The Contractor may also be required to reimburse the Department for costs the Department incurs arising from activities related to conflicts of interest. An example of such costs would be those incurred in processing Freedom of Information Act requests related to a conflict of interest.

(d) In cases where remedies short of termination have been applied, the contractor, subcontractor, employee or consultant agrees to eliminate the organizational conflict of interest, or mitigate it to the satisfaction of the Contracting Officer.

(e) The Contractor further agrees to insert in any subcontract or consultant agreement hereunder, provisions which shall conform substantially to the language of this clause, including specific mention of potential remedies and this paragraph (e).

## B.5    EDAR 3452.208-70   Printing (Aug 1987)

Unless otherwise specified in this contract, the contractor shall not engage in, nor subcontract for, and printing (as that term is defined in Title I of the Government Printing and Binding Regulations in effect on the effective date of this contract) in connection with the performance of work under this contract; except that performance involving the reproduction of less than 5,000 production units of any one page, or less than 25,000 production units in the aggregate of multiple pages, shall not be deemed to be printing. A production unit is defined as one sheet, size 8 1/2 by 11 inches, and one side and color only.

## B.6    FSA 24-1       Release Of Information Under The Freedom Of Information Act (Jan 2008)—TAILORED

By entering into a contract with the Department of Education and as permitted/authorized by existing statutes and applicable case law, without regard to proprietary markings, the contractor approves the release of the entire contract and all related modifications and task orders, including, but not limited to:

(1)     Unit prices, including labor rates,
(2)     Statements of Work/Performance Work Statement generated by the contractor,
(3)     Performance requirements, including incentives, performance standards, quality levels and service level agreements,

(4)     Reports, deliverables and work products delivered in performance of the contract (including quality of service, performance against requirements/standards/service level agreements),

(5)     Any and all information, data, software and related documentation first provided under the contract,

(6)     Proposals or portions of proposals incorporated by reference, and

(7)     Other terms and conditions.

**B.7     FSA 27-1     Labeling Of Documents (June 2007)—TAILORED**

The Contractor shall not label any data, as defined in the clause at 52.227-14, produced in performance of this contract in a way that would restrict the Government's right to use or release the information. If applicable, the Contractor shall include a legend that identifies sensitive data that should not be released for security reasons. Under FAR 52.227-14, Rights in Data-General (or 52.227-15, -16, -17) clause, this data may be used for any public purpose. Deliverables shall not contain vendor-specific logos, mottos, watermarks, or holograms.

The Contractor shall not use, particularly for proposals, U.S. Government logos, such as the U.S. Department of Education or Federal Student Aid.

**B.8     FSA 27-2     Limitations On The Use Or Disclosure Of Government-Furnished Information Marked With Restrictive Legends (Dec 2006)**

(a)  For contracts under which data are to be produced, furnished, or acquired, the terms "limited rights" and "restricted rights" are defined in the Rights in Data - General clause of this contract.

(b)  Proprietary data, technical data or computer software provided to the Contractor as Government furnished information (GFI) under this contract may be subject to restrictions on use, modification, reproduction, release, performance, display, or further disclosure.

(1) *Proprietary data with legends that serve to restrict disclosure or use of data*. The Contractor shall use, modify, reproduce, perform, or display proprietary data received from the Government with proprietary or restrictive legends only in the performance of this contract. The Contractor shall not, without the express written permission of the party who owns the data, release or disclose such data or software to any person.

(2) *GFI marked with limited or restricted rights legends*. The Contractor shall use, modify, reproduce, perform, or display technical data received from the Government with limited rights legends or computer software received with restricted rights legends only in the performance of this contract. The Contractor shall not, without the express written permission of the party whose name appears in the legend, release or disclose such data or software to any person.

(3) *GFI marked with specially negotiated license rights legends*. The Contractor shall use, modify, reproduce, release, perform, or display proprietary data, technical data or computer software received from the Government with specially negotiated license legends only as permitted in the license. Such data or software may not be released or disclosed to other persons unless permitted by the license and, prior to release or disclosure, the intended recipient has completed the use and non-disclosure agreement. The Contractor shall modify paragraph (1)(c) of the use and non-disclosure agreement to reflect the recipient's obligations regarding use, modification, reproduction, release,

performance, display, and disclosure of the data or software.

(c) Indemnification and creation of third party beneficiary rights.

  (1) The Contractor agrees to indemnify and hold harmless the Government, its agents, and employees from every claim or liability, including attorneys fees, court costs, and expenses, arising out of, or in any way related to, the misuse or unauthorized modification, reproduction, release, performance, display, or disclosure of proprietary data, technical data or computer software received from the Government with restrictive legends by the Contractor or any person to whom the Contractor has released or disclosed such data or software.

  (2) The Contractor agrees that the party whose name appears on the restrictive legend, in addition to any other rights it may have, is a third party beneficiary who has the right of direct action against the Contractor, or any person to whom the Contractor has released or disclosed such data or software, for the unauthorized duplication, release, or disclosure of proprietary data, technical data or computer software subject to restrictive legends.

## B.9    FSA 27-3    Use And Non-Disclosure Agreement

(a) Except as provided in paragraph (b) of this clause, proprietary data, technical data or computer software delivered to the Government with restrictions on use, modification, reproduction, release, performance, display, or disclosure may not be provided to third parties unless the intended recipient completes and signs the use and non-disclosure agreement at paragraph (c) of this clause prior to release or disclosure of the data.

  (1) The specific conditions under which an intended recipient will be authorized to use, modify, reproduce, release, perform, display, or disclose proprietary data or technical data subject to limited rights, or computer software subject to restricted rights must be stipulated in an attachment to the use and non-disclosure agreement.

  (2) For an intended release, disclosure, or authorized use of proprietary data, technical data or computer software subject to special license rights, modify paragraph (1)(d) of the use and non-disclosure agreement to enter the conditions, consistent with the license requirements, governing the recipient's obligations regarding use, modification, reproduction, release, performance, display or disclosure of the data or software.

(b) The requirement for use and non-disclosure agreements does not apply to Government contractors which require access to a third party's data or software for the performance of a Government contract that contains the clause, Limitations on the Use or Disclosure of Government Furnished Information Marked with Restrictive Legends.

(c) The prescribed use and non-disclosure agreement is:

### USE AND NON-DISCLOSURE AGREEMENT

The undersigned, ___(Insert Name) ___, an authorized representative of the ___(Insert Company Name) ___, (which is hereinafter referred to as the "Recipient") requests the Government to provide the Recipient with proprietary data, technical data or computer software (hereinafter referred to as "Data") in which the Government's use, modification, reproduction, release, performance, display or disclosure rights are restricted. Those Data are identified in an attachment to this Agreement. In consideration for receiving such Data, the Recipient agrees to use the Data strictly in accordance with this Agreement:

  (1) The Recipient shall —

    (a) Use, modify, reproduce, release, perform, display, or disclose Data marked with SBIR data rights legends only for government purposes and shall not do so for any commercial purpose. The Recipient shall not release, perform, display, or disclose these Data, without the express written permission of the contractor whose name appears in the restrictive legend (the "Contractor"), to any person other than its subcontractors or suppliers, or prospective subcontractors or suppliers, who require these Data to submit offers for, or perform, contracts with the Recipient. The Recipient shall require its subcontractors or suppliers, or prospective subcontractors or suppliers, to sign a use and non-disclosure agreement prior to disclosing or releasing these Data to such persons. Such agreement must be consistent with the terms of this agreement.

    (b) Use, modify, reproduce, release, perform, display, or disclose proprietary data or technical data marked with limited rights legends only as specified in the attachment to this Agreement. Release, performance, display, or disclosure to other persons is not authorized unless specified in the attachment to this Agreement or expressly permitted in writing by the Contractor.

    (c) Use computer software marked with restricted rights legends only in performance of Contract Number ___(insert contract number(s) ___. The Recipient shall not, for example, enhance, decompile, disassemble, or reverse engineer the software; time share, or use a computer program with more than one computer at a time. The recipient may not release, perform, display, or disclose such software to others unless expressly permitted in writing by the licensor whose name appears in the restrictive legend.

    (d) Use, modify, reproduce, release, perform, display, or disclose Data marked with special license rights legends (To be completed by the contracting officer. See (a)(2) of the Use and Non-Disclosure Agreement clause. Omit if none of the Data requested is marked with special license rights legends).

(2) The Recipient agrees to adopt or establish operating procedures and physical security measures designed to protect these Data from inadvertent release or disclosure to unauthorized third parties.

(3) The Recipient agrees to accept these Data "as is" without any Government representation as to suitability for intended use or warranty whatsoever. This disclaimer does not affect any obligation the Government may have regarding Data specified in a contract for the performance of that contract.

(4) The Recipient may enter into any agreement directly with the Contractor with respect to the use, modification, reproduction, release, performance, display, or disclosure of these Data.

(5) The Recipient agrees to indemnify and hold harmless the Government, its agents, and employees from every claim or liability, including attorneys fees, court costs, and expenses arising out of, or in any way related to, the misuse or unauthorized modification, reproduction, release, performance, display, or disclosure of Data received from the Government with restrictive legends by the Recipient or any person to whom the Recipient has released or disclosed the Data.

(6) The Recipient is executing this Agreement for the benefit of the Contractor. The Contractor is a third party beneficiary of this Agreement who, in addition to any other rights it may have, is intended to have the rights of direct action against the Recipient or

any other person to whom the Recipient has released or disclosed the Data, to seek damages from any breach of this Agreement or to otherwise enforce this Agreement.

(7) The Recipient agrees to destroy these Data, and all copies of the Data in its possession, no later than 30 days after the date shown in paragraph (8) of this Agreement, to have all persons to whom it released the Data do so by that date, and to notify the Contractor that the Data have been destroyed.

(8) This Agreement shall be effective for the period commencing with the Recipient's execution of this Agreement and ending upon ___(Insert Date) ___. The obligations imposed by this Agreement shall survive the expiration or termination of the Agreement.

_____
Recipient's Business Name


_____          _____
Authorized Representative                                            Date


_____
Representative's Typed Name and Title

## B.10   FSA 31-1   Proposal Cost And/Or Pricing Data (August 2008)

Federal Student Aid intends to collect cost, pricing and technical information submitted in response to proposals. Information will be evaluated and stored in Federal Student Aid's Cost Library in order to expand the organizations historical pricing data and cost estimating capabilities.

## B.11   FSA 32-1   Invoice Procedures (August 2007)

The Contractor must submit a physical invoice via either mail, fax or e-mail for this contract in order to be paid for products and/or services rendered.

Federal Student Aid's "designated billing office" is:

> US Department of Education
> Union Center Plaza
> Federal Student Aid Administration
> 830 First Street, NE, Suite 54B1
> Washington, D.C. 20202-0001
>
> E-mail: InvoiceAdmin@ed.gov
> Fax: 202-275-3477

The Contractor shall also simultaneously submit copies of the invoice to the Contracting Officer and one to the Contracting Officer's Representative (COR). The CO and COR should receive copies via the same means as the invoice sent to the Budget Group.

When submitting an invoice via mail, the Contractor shall submit the original invoice AND two copies of the invoice.

At a minimum the following items must be addressed in order for the invoice to be considered "proper" for payment:

(1) Name and Address of the Contractor.
(2) Invoice Number and Invoice Date (Date invoices as close as possible to the date of mailing or transmission. The date and actual submission must occur after receipt, inspection and acceptance of the supplies or services.)
(3) The Contract number, contract line item, and if applicable, the order number must be included on the invoice and be correct.
(4) Description, quantity, unit of measure, unit price, and extended price of the item delivered must agree with the contract or order.
(5) Terms of any prompt payment discount offered.
(6) Name, title, and phone number of persons to be notified in event of defective invoice.
(7) The period of time covered by the invoice must include the first and last day of the period.
(8) Totals must be supported by subtotals and subtotals should be supported by detail, (i.e. documentation for categories of labor, hours performed, unit prices) and deliverables provided.
(9) If required by this contract or order, receipts must be provided to support documentation of "other direct costs" (ODCs) or materials.

**B.12  AMERICAN RECOVERY AND REINVESTMENT ACT OF 2009 (Pub.L. 111-5)**
In the event funds are utilized on this contract originating from the American Recovery and Reinvestment Act of 2009, or other discrete legislation, the following clauses, or similar clauses, shall apply:

- 52.203-15   Whistleblower Protections Under The American Recovery And Reinvestment Act Of 2009 (Mar 2009)
- 52.204-11   American Recovery And Reinvestment Act—Reporting Requirements (Mar 2009)
- 52.212-5   Contract Terms and Conditions Required to Implement Statutes or Executive Orders—Commercial Items (Mar 2009)—Alternate II (Mar 2009)
- 52.215-2   Audit And Records—Negotiation—Alternate I (Mar 2009)
- EDAR 3403-1 Self Reporting Of Violations – Recovery Act (Feb 2009)
  The contractor and subcontractor shall promptly refer to an appropriate inspector general any credible evidence that a principal, employee, agent, contractor, sub-grantee or subcontractor has committed a violation of Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations found in Title 18 U.S.C. or a violation of the civil False Claims Act (31 U.S.C. 3729-3733).

**B.13  ADDITIONAL TERMS AND CONDITIONS**
A. **Contract Type**—Indefinite Delivery/Indefinite Quantity (IDIQ).  During the course of the basic ordering period, the Government will provide a minimum of $5,000,000.00 in revenue, provided that the contractor is in compliance with the requirements for servicing federally held debt, and the maximum volume for the basic ordering period agreement will be 50 million borrowers.  The Optional Ordering Period will have a minimum of $0 and a maximum of an additional 50 million borrowers
B. **Ordering Period**—The ordering period for this contract will be one (1), five (5) year Base Ordering Period, with one (1) additional five (5) year Optional Ordering Period.

C. **Requirements Deadlines**—The contractor shall comply with the following compliance requirements deadlines:
  (1) The contractor shall meet the Initial Requirements by August 31, 2009 for servicing federally held debt. If these are met, FFEL servicing may begin.
  (2) The contractor shall meet the Intermediate Requirements by March 31, 2010 (unless otherwise noted within the Intermediate Requirements document), for servicing federally held debt. If all requirements are not met, the Government may elect to not assign further volume to the contractor. Furthermore, the Government may transfer currently held accounts to another servicer. The contractor losing the accounts shall bear the costs of any such transfer.
  (3) The contractor shall meet the Full Requirements by August 31, 2010 for Direct Loan servicing. If the Government determines the requirements are not met, the Government may elect to not assign further volume to the contractor. Furthermore, the Government may transfer currently held accounts to another servicer. The contractor losing the accounts shall bear the costs for any such transfer.
D. **Quarterly Compliance Monitoring**—[Reserved]
E. **Annual Compliance Audit**—[Reserved]
F. **Allocation Methodology**—See Attachments A-4 and A-5.
G. **Allocation Metrics**— See Attachments A-4 and A-5.
H. **Performance Incentives/Metrics**—[Reserved]
I. **Price Definitions**—See Attachment A-6.
J. **Work Performed Outside the Continental United States**—The Contractor has represented to the Department that it will perform all work required under this Contract within the United States. If, at any time, the Contractor wishes to perform any Contract work outside the United States, the Contractor shall inform the Contracting Officer, in advance and in writing, of its intention and request the Department's approval. The Contractor shall not perform any Contract work outside the United States unless and until it has received the Contracting Officer's explicit, written approval to perform such work. In order to give proper consideration to the Contractor's request, the Department may ask for, and the Contractor shall provide, information relevant to the proposed performance outside the United States, including but not limited to a detailed description of the physical, personnel and management resources to be used and any potential difficulties or constraints in performing in the foreign jurisdiction. The Department may refuse to approve Contract performance outside the United States to the extent that, solely in the Department's judgment, the Contractor has not shown that performance outside the United States would satisfy the Contract requirements and would not impair or degrade performance. Further, the Department may refuse to approve any performance outside the United States for any other reason, or for no reason, except as otherwise required by the laws and treaties of the United States. The Department also may approve performance outside the United States subject to certain conditions, to which conditions the Contractor shall strictly adhere. Neither performance within the United States, nor the Department's refusal to allow performance outside the United States shall ever constitute a change to this Contract or give rise to any entitlement to additional compensation or excuse any failure of performance by the Contractor. Nothing in this clause shall be interpreted to impose any obligation on the Department to allow or to refuse a request for performance of this Contract outside the United States.

K. **Branding/Marketing Material**—Contractors may not solicit or promote other services/products they, or their affiliates, offer while servicing Department of Education borrowers, or Federally held debt. This includes all communication channels and touch points, such as but not limited to: inbound and outbound calls/email, web pages, any mailings specific to the status of their account, direct personal and automated interaction, etc.

Scenarios: (1) if the servicer services Federally and non-Federally held debt and offers combined billing, no marketing envelopes or inserts for other services/products may be issued; (2) if the servicer services Federally and non-Federally held debt and does NOT use combined billing, normal marketing may be provided for non- Federally held debt for other services/products; and (3) if the servicer services Federally and non-Federally held debt and is in personal contact, no marketing for other services/products may be discussed. If a borrower with in-school status seeks information regarding other products or services from the servicer, the borrower shall be directed to their school's Student Financial Assistance Office.

Any exception or ambiguity regarding the above shall be reviewed and approved by the Contracting Officer in advance.

L. **Invoicing and Non-Compliance** – Borrowers whose loans are not being serviced in compliance with the Requirements, Policy and Procedures for servicing federally held debt due to the fault of the servicer (i.e. correct interest calculations, correct balances, interest determination and calculations, notices sent properly, proper due diligence, etc.), will not be billable to the Government from the initial point of non-compliance. Any funds that have been invoiced for these borrowers and paid shall be returned to the Government via a credit on the next invoice.

M. **Contracting Officer's Representative** – The following individual is designated as Contracting Officer's Representative (COR) for this contract:

   Mr. James McMahon
   Federal Student Aid
   830 First Street, NE
   Suite 111G5
   Washington, DC 20202
   Email: james.mcmahon@ed.gov
   Phone: (202) 377-3124

N. **Additional Terms:**

1. The Title IV Servicing contracts are for any potential services to manage all types of Title IV student aid obligations, including, but not limited to, servicing and consolidation of outstanding debt. However, they are not Requirements contracts.
2. Each contractor will provide, at a minimum, the services provided within their proposal, in accordance with the pricing identified in Term #3 below.
3. The Government will set and manage the common pricing, including tier structure, below:

---

| Status | Volume Low | Volume High | Unit Price |
|---|---|---|---|
| Borrowers in In-school Status | N/A | N/A | $ 1.050 |
| Borrowers in Grace or Current Repayment Status | 1 | 3,000,000 | $ 2.110 |
| | 3,000,001 | UP | $ 1.900 |
| Borrowers in Deferment or Forbearance | 1 | 1,600,000 | $ 2.070 |
| | 1,600,001 | UP | $ 1.730 |
| Borrowers 31-90 Days Delinquent | N/A | N/A | $ 1.620 |
| Borrowers 91-150 Days Delinquent | N/A | N/A | $ 1.500 |
| Borrowers 151-270 Days Delinquent | N/A | N/A | $ 1.370 |
| Borrowers 270+ Days Delinquent | N/A | N/A | $ 0.500 |

Out year pricing will follow the methodology described utilizing the subsequent terms. There will be no set declination in pricing at the time of award.

4. The Government has included an escalation methodology based upon the Bureau of Labor Statistics' (BLS) Employment Cost Index (ECI) for Total Compensation, Private Industry, Service Occupations (Not Seasonally Adjusted), to account for significant inflation and/or deflation. When the ECI exceeds 3.0% (plus or minus) in any given year the Government will adjust the established common pricing by any amount in excess of this rate. The calculated rate of escalation will equal the average of the 12-month percent change for the previous four quarters, ending June 30th. This ECI escalation will be applied beginning in September of the same calendar year. Further, this escalation will compound for all remaining years of the Base and Optional Ordering Periods.

For example, ECI rate released in June 2010 is 3.6%. The Government will increase unit pricing by .6% for the contract beginning September 1, 2010 and all remaining years of the Base Ordering Period, as well as the Optional Ordering Period.

A decreasing rate of inflation would follow the same pattern as above. For example, if the ECI decreases by more than 3.0%, then the unit prices for the remaining out-years will also decrease by the percentage in excess of 3.0%. For example, ECI rate released in June 2010 is -4.2%. The Government will decrease unit pricing by 1.2% for the contract period beginning September 1, 2010 and all remaining years of the Base Ordering Period, as well as the Optional Ordering Period.

5. Common pricing includes all supplies, services and other costs to deliver Title IV servicing under this contract, including:
   • Costs for bringing contractor systems into compliance for handling federally held debt.
   • Costs for legislative, regulatory or policy changes that affect the FFEL community as a whole, as is commercially accepted practice in the FFEL community.
   • For all other costs, the Department and the contractor(s) may come to an agreement via change order process or negotiation, as necessary.

6. The Government makes no guarantee to any contractor that their organization will retain their current loan servicing volume. In addition, the Government makes no minimum

volume guarantees to any contractor. The Government does guarantee a minimum dollar/revenue amount of $5,000,000 over the base ordering period under this Indefinite Delivery, Indefinite Quantity contract, regardless of the number of loans serviced by a contractor.

7. The Government reserves the right to periodically review and equitably adjust the rate structure to maintain effectiveness of the services provided (i.e., different volume breaks, different ties, cost allocations, etc)

8. The Government reserves the right to equitably introduce, eliminate, or modify loan deliverables/status items that are in the best interest of the Government or Borrower. (i.e., in-school deferments moved into the In-School deliverable; new deferment or forbearance categories; etc).

9. The Government reserves the right to unilaterally shift borrowers in the best interest of the Government or Borrowers, at no additional cost to the Government. It is anticipated that this will be done only with reasonable and prudent cause.

10. The Government retains the unilateral right to resolve split-borrowers as deemed appropriate by the Government, at no additional cost to the Government.

**B.14    52.212-5        Contract Terms And Conditions Required To Implement Statutes Or Executive Orders—Commercial Items (Dec 2008)**

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

(1) 52.233-3, Protest After Award (Aug 1996) (31 U.S.C. 3553).

(2) 52.233-4, Applicable Law for Breach of Contract Claim (Oct 2004) (Pub. L. 108-77, 108-78)

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

_X_ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Sept 2006), with Alternate I (Oct 1995) (41 U.S.C. 253g and 10 U.S.C. 2402).

_X_ (2) 52.203-13, Contractor Code of Business Ethics and Conduct (Dec 2008) (Pub. L. 110 252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

__ (3) 52.219-3, Notice of Total HUBZone Set-Aside (Jan 1999) (15 U.S.C. 657a).

__ (4) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (July 2005) (if the offeror elects to waive the preference, it shall so indicate in its offer) (15 U.S.C. 657a).

__ (5) [Reserved]

__ (6)(i) 52.219-6, Notice of Total Small Business Set-Aside (June 2003) (15 U.S.C. 644).

        __ (ii) Alternate I (Oct 1995) of 52.219-6.

        __ (iii) Alternate II (Mar 2004) of 52.219-6.

__ (7)(i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003) (15 U.S.C. 644).

        __ (ii) Alternate I (Oct 1995) of 52.219-7.

        __ (iii) Alternate II (Mar 2004) of 52.219-7.

_X_ (8) 52.219-8, Utilization of Small Business Concerns (May 2004) (15 U.S.C. 637(d)(2) and (3)).

_X_ (9)(i) 52.219-9, Small Business Subcontracting Plan (Apr 2008) (15 U.S.C. 637(d)(4)).

        __ (ii) Alternate I (Oct 2001) of 52.219-9.

        _X_ (iii) Alternate II (Oct 2001) of 52.219-9.

__ (10) 52.219-14, Limitations on Subcontracting (Dec 1996) (15 U.S.C. 637(a)(14)).

__ (11) 52.219-16, Liquidated Damages—Subcontracting Plan (Jan 1999) (15 U.S.C. 637(d)(4)(F)(i)).

__ (12)    (i) 52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns (Oct 2008) (10 U.S.C. 2323) (if the offeror elects to waive the adjustment, it shall so indicate in its offer).

        __ (ii) Alternate I (June 2003) of 52.219-23.

__ (13) 52.219-25, Small Disadvantaged Business Participation Program—Disadvantaged Status and Reporting (Apr 2008) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

__ (14) 52.219-26, Small Disadvantaged Business Participation Program— Incentive Subcontracting (Oct 2000) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

__ (15) 52.219-27, Notice of Total Service-Disabled Veteran-Owned Small Business Set-Aside (May 2004) (15 U.S.C. 657 f).

__ (16) 52.219-28, Post Award Small Business Program Rerepresentation (June 2007) (15
U.S.C. 632(a)(2)).

_X_ (17) 52.222-3, Convict Labor (June 2003) (E.O. 11755).

_X_ (18) 52.222-19, Child Labor—Cooperation with Authorities and Remedies (Feb 2008) (E.O.
13126).

_X_ (19) 52.222-21, Prohibition of Segregated Facilities (Feb 1999).

_X_ (20) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

_X_ (21) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam
Era, and Other Eligible Veterans (Sept 2006) (38 U.S.C. 4212).

_X_ (22) 52.222-36, Affirmative Action for Workers with Disabilities (Jun 1998) (29 U.S.C.
793).

_X_ (23) 52.222-37, Employment Reports on Special Disabled Veterans, Veterans of the Vietnam
Era, and Other Eligible Veterans (Sept 2006) (38 U.S.C. 4212).

_X_ (24) 52.222-39, Notification of Employee Rights Concerning Payment of Union Dues or
Fees (Dec 2004) (E.O. 13201).

_X_ (25)    (i) 52.222-50, Combating Trafficking in Persons (Aug 2007) (Applies to all contracts).
__ (ii) Alternate I (Aug 2007) of 52.222-50.

__ (26)    (i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-
Designated Items (May 2008) (42 U.S.C. 6962(c)(3)(A)(ii)).
__ (ii) Alternate I (May 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)).

__ (27) 52.223-15, Energy Efficiency in Energy-Consuming Products (Dec 2007) (42 U.S.C.
8259b).

__ (28)   (i) 52.223-16, IEEE 1680 Standard for the Environmental Assessment of Personal
Computer Products (Dec 2007) (E.O. 13423).
__ (ii) Alternate I (Dec 2007) of 52.223-16.

__ (29) 52.225-1, Buy American Act—Supplies (June 2003) (41 U.S.C. 10a-10d).

__ (30)   (i) 52.225-3, Buy American Act—Free Trade Agreements—Israeli Trade Act (Aug
2007) (41 U.S.C. 10a-10d, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, Pub. L 108-
77, 108-78, 108-286, 109-53 and 109-169).
__ (ii) Alternate I (Jan 2004) of 52.225-3.
__ (iii) Alternate II (Jan 2004) of 52.225-3.

__ (31) 52.225-5, Trade Agreements (Nov 2007) (19 U.S.C. 2501, et seq., 19 U.S.C. 3301 note).

_X_ (32) 52.225-13, Restrictions on Certain Foreign Purchases (June 2008) (E.O.'s,
proclamations, and statutes administered by the Office of Foreign Assets Control of the
Department of the Treasury).

__ (33) 52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C.
5150).

__ (34) 52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (Nov
2007) (42 U.S.C. 5150).

__ (35) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002) (41
U.S.C. 255(f), 10 U.S.C. 2307(f)).

__ (36) 52.232-30, Installment Payments for Commercial Items (Oct 1995) (41 U.S.C. 255(f),
10 U.S.C. 2307(f)).

_X_ (37) 52.232-33, Payment by Electronic Funds Transfer—Central Contractor Registration
(Oct 2003) (31 U.S.C. 3332).

__ (38)  52.232-34, Payment by Electronic Funds Transfer—Other than Central Contractor Registration (May 1999) (31 U.S.C. 3332).

__ (39)  52.232-36, Payment by Third Party (May 1999) (31 U.S.C. 3332).

_X_ (40)  52.239-1, Privacy or Security Safeguards (Aug 1996) (5 U.S.C. 552a).

__ (41)  (i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631).

         __ (ii) Alternate I (Apr 2003) of 52.247-64.

(c)  The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

_X_ (1)  52.222-41, Service Contract Act of 1965 (Nov 2007) (41 U.S.C. 351, et seq.).

_X_ (2)  52.222-42, Statement of Equivalent Rates for Federal Hires (May 1989) (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

_X_ (3)  52.222-43, Fair Labor Standards Act and Service Contract Act—Price Adjustment (Multiple Year and Option Contracts) (Nov 2006) (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

__ (4)  52.222-44, Fair Labor Standards Act and Service Contract Act—Price Adjustment (Feb 2002) (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

__ (5)  52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment—Requirements (Nov 2007) (41 U.S.C. 351, et seq.).

__ (6)  52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Services—Requirements (Nov 2007) (41 U.S.C. 351, et seq.).

__ (7)  52.237-11, Accepting and Dispensing of $1 Coin (Sept 2008) (31 U.S.C. 5112(p)(1)).

(d)  *Comptroller General Examination of Record*. The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records—Negotiation.

     (1)  The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

     (2)  The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

     (3)  As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require

the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e) (1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c), and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in paragraphs (e)(1)(i) through (xi) of this paragraph in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause—

    (i)    52.203-13, Contractor Code of Business Ethics and Conduct (Dec 2008) (Pub. L. 110-252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

    (ii)    52.219-8, Utilization of Small Business Concerns (May 2004) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $550,000 ($1,000,000 for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

    (iii)    52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

    (iv)    52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Sept 2006) (38 U.S.C. 4212).

    (v)    52.222-36, Affirmative Action for Workers with Disabilities (June 1998) (29 U.S.C. 793).

    (vi)    52.222-39, Notification of Employee Rights Concerning Payment of Union Dues or Fees (Dec 2004) (E.O. 13201).

    (vii)    52.222-41, Service Contract Act of 1965 (Nov 2007) (41 U.S.C. 351, et seq.).

    (viii)    52.222-50, Combating Trafficking in Persons (Aug 2007) (22 U.S.C. 7104(g)).

Flow down required in accordance with paragraph (f) of FAR clause 52.222-50.

    (ix)    52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment-Requirements (Nov 2007) (41 U.S.C. 351, et seq.).

    (x)    52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Services-Requirements (Nov 2007) (41 U.S.C. 351, et seq.).

    (xi)    52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(2) While not required, the contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

## C. STATEMENT OF OBJECTIVES (SOO)

### C.1 General Description Of Scope/Purpose

#### C.1.1 Federal Student Aid Background/Overview

Federal Student Aid (FSA), an office of the Department, plays a central and essential role in America's postsecondary education community.

FSA's core mission is to ensure that all eligible individuals benefit from federal financial assistance—grants, loans and work-study programs—for education beyond high school. The programs FSA administers comprises the nation's largest source of student aid: during the 2007-08 school year alone, FSA provided approximately $83 billion in new aid to nearly 10 million postsecondary students and their families. FSA's staff of 1,100 is based in 10 cities, in addition to its Washington, D.C. headquarters.

#### C.1.2 Current Need

With the current economic and liquidity uncertainty facing financial markets, many student loan lenders are dropping out of the market. With more than $65 billion in 2008-09 loans and approximately $130 billion in eligible 2003-07 student loans on bank balance sheets and auction rate securitizations, the capital markets are currently unable to generate adequate funds at prices that will ensure 2009-10 loans can be made.

Recent legislation including the College Cost Reduction Authorization Act of 2008 (CCRAA) (Pub. Law 110-84) and the Ensuring Continued Access to Student Loans Act of 2008 (ECASLA) (Pub. Law 110-227) enabled the Department to accept former Federal Family Education Loan Program (FFELP) loans in the form of additional Direct Loan (DL) capacity, and to purchase FFELP loans as far back as 2003, in an effort to bring liquidity and stability back to the student loan market.

With the sudden increase in current and potential loan volume that the Department will be responsible for servicing, the need for increasing the Title IV student aid servicing vehicles is determined appropriate at this time.

#### C.1.3 Objective

Acquire efficient and effective commercial contract services to manage all types of Title IV student aid obligations, including, but not limited to, servicing and consolidation of outstanding debt.

#### C.1.4 Constraints

C.1.4.1 Specific compliance activities for servicing Federally held assets include, but are not limited to, Attachments A-1 through A-3 provided herein.

C.1.4.2 In order to manage the costs associated with such a potentially large portfolio, the service must provide innovative measures to ensure portfolio growth is not the key driver of total cost. Contractor incentives must be based on performing assets, rather than transaction or activity based delinquency incentives. Costs may also be managed through redistribution of customers to self-service options, as approved by the Government. Performance measures will help ensure that the complete service operates as efficiently and effectively as possible and that it is achieving the desired

business outcomes. These measurements will be flexible to allow for regular reviews and revisions as necessary.

**C.1.4.3** The contractor(s) will be responsible for maintaining a full understanding of all federal and state laws and regulations and FSA requirements and ensuring that all aspects of the service continue to remain in compliance as changes occur.

**C.1.4.4** The contractor(s) will provide a service flexible enough to handle new requirements generated by Congress and respond to legislative mandates and policy changes. Please see Appendix A – Standards and Relevant Documents for historical and current representative information.

**C.1.4.5** The contractor(s) will provide timely (as defined by FSA and contractor) responses to Office of Inspector General (OIG), General Accounting Office (GAO), budget, data, and management requests.

**C.1.4.6** It is understood and mutually agreed that the Department of Education has exclusive ownership of all information stored in, retrieved, modified, and/or archived in as part of this service. The contractor shall have no rights in such information and no rights to such information shall vest on the contractor by virtue of its performance of this contract. No other party has the right to copy, delete, archive, or transfer such information without the prior express written consent of the Department of Education. The contractor shall not use such information for any marketing or solicitation purpose including, but not limited to, commercial advertising, credit offers, or similar campaigns.

**C.2**   **Attachments/Supplemental Documents**

| Number | Title |
|--------|-------|
| A-1 | Additional Servicer—Initial Requirements Document (Version 21.0) |
| A-2 | Additional Servicer—Intermediate Requirements Document (Version 6.0) |
| A-3 | Additional Servicer—Full Requirements Document (Version 6.0) |
| A-4 | Ongoing Allocation Methodology |
| A-5 | Sample—Ongoing Allocation Metric Calculation |
| A-6 | Servicing Pricing Definitions (Version 9.0) |

**Attachment A-1**

# Additional
# Servicer
## INITIAL Requirements

All_InitialReq_v21.0.doc

Attachment A-1

# <u>Additional Servicer – Initial Requirements</u>

### Required by 8/31/09 unless otherwise noted

## <u>TABLE OF CONTENTS</u>

General Statement ........................................................................... 3

Financial Reporting ......................................................................... 3

Treasury ............................................................................................ 5

Transaction Management ............................................................... 6

Internal Controls ............................................................................. 7

Accounting ........................................................................................ 9

Reconciliations ................................................................................ 9

Additional Reporting ...................................................................... 12

Security .............................................................................................. 12

NSLDS ................................................................................................ 13

Unique Client/Lender Requirements for Federally Serviced Portfolio ........... 14

Loan Conversion ............................................................................. 16

## Attachment A-1

## General Statement
It is the intent of the Department to procure a performance-based contract(s) that promotes competition and provides best of business services. To achieve this goal, the Department expects each servicer to provide commercially available services that will yield high performing portfolios and high levels of customer satisfaction. The following statements apply:

- Servicers will be required to meet all statutory and legislative requirements.
- Servicers will use their own discretion in deciding to provide services or business functionality that is recommended but not required.
- Servicers may leverage all borrower repayment channels while maintaining existing branding provided all federally held loans are clearly distinguished and identified, and borrowers are directed to make payment directly to the Department via a U.S. Treasury lockbox or electronic payment service.
- Small differences due to rounding in various calculations are understood and accepted providing the calculation itself is in compliance with federal regulation.
- The Department will allocate volume based on defined and understood performance metrics.
- The Department does not intend to provide additional service level requirements. The Department does, however, expect best of business practices to be deployed.
- The Department will not require the use of the Department or FSA logo on letters, web sites, etc.
- Servicers will have full discretion to promote or not promote services as long as they meet legislative and regulatory requirements and are cost neutral to the Government.
- Servicers will have discretion to provide services to schools.
- Servicers may use their own authentication process as long as the process is fully compliant with federal IT security guidelines.
- With regard to split borrowers, it is acceptable for servicers to handle requests, phone calls, etc. for all loans being serviced by that servicer, regardless of the holder (Federal or Non-Federal), as long as all federal laws and regulations are met.

## Financial Reporting
1. The servicer shall uniquely identify each specific activity (e.g., Collection of Principal, Collection of Interest, etc.) in the transaction level data.
2. The servicer shall provide required accounting reports. A preliminary list is presented below.
   a) Trial Balance by Fund & a Working Trial Balance By Fund
   b) Detailed Trial Balance by Transaction Type
   c) Sub ledger Reconciliation Reports
   d) Transaction Tables and mapping (Crosswalk) to the Department's general ledger system, the Financial Management System (FMS), including transaction descriptions and amount fields.
   e) Cash Receipt Detail
   f) Cash Disbursement Detail
   g) Report of Debts Assigned by Assignor (Lender, GA, Intra-Fund Transfers)

## Attachment A-1

    h) Report of Loans Consolidated (by Fund, Cohort Year, Loan Program Type, Risk Category)

    i) Report of Loans Rehabilitated (if applicable)

    j) Loan portfolio performance reports (by Fund, Loan Type, cohort year and risk category).

    k) Collection Activity Report - The report summarizes by Current Month, Current Quarter, and Year to Date for each Loan Type, the number of loans and the amount of loans for each delinquency stage.

    l) Loans Transferred to and from the Department's Default Management Collection System (DMCS)- The report has 3 parts:

        a. Loans Transferred to DMCS - Displays by transfer date the total number of borrowers, total number of loans, total principal balance at time of transfer, and date DMCS accepts the loans for each weekly transmission to DMCS.

        b. Rejected and Re-transfer to DMCS - Displays by re-transfer date the total number of loans, total number of borrowers, total principal balance, and date DMCS accepts the loans for each weekly transmission to DMCS.

        c. Transfers by Loan Type - Displays by transfer date, total number of borrowers, and total number of PLUS, Stafford, and Consolidation.

    m) DMCS Recall and Rehabilitation Tracking Report - The report displays by month/year the total number of borrowers recalled from DMCS, total number of loans recalled, total number of Rehabilitated loans and borrowers received from DMCS.

    n) System Balancing Reporting of daily, weekly and monthly activity sent and received with each interfacing partner at the Batch level and at the Transaction Type, Transaction Count, Transaction Amount levels. Reports activity sent and activity received; and balances activity received to activity accepted and rejected.

    o) Financial Transactions Reconciliation Report of all daily, weekly and monthly transactions posted on the servicing system for each interfacing partner. Displays summary data by financial transaction type, number, and dollar amounts.

    p) Work in Process Reports of activity received and accepted into the servicing system, but not posted to borrower accounts for each interfacing partner. Displays detail level transactions at the loan level for all financial transactions received but not posted. Includes applicable dollar amounts and reflects aging of each transaction. Reporting can include, but is not limited to, pending disbursements, loan adjustments, consolidation payoffs, etc. (See below for specific unapplied cash reporting). Daily cumulative reporting with the last daily report for the month reflecting the WIP balances as of month end.

    q) Unapplied Cash Payment Recycle report: Payment and Payment adjustment activity received and accepted into the servicing system but not posted to borrower accounts. Reporting is by payment source (including, but not limited to: lockbox, electronic debit, IPAC, etc.) Displays detail level cash payment and payment return/adjustment transactions at the borrower level and includes

# Attachment A-1

Treasury document information (schedule number, schedule amount and schedule type) and aging of each transaction. Daily cumulative reporting with the last daily report for the month reflecting the WIP balances as of month end.

r)  Ad-hoc reporting capability and access for the Department (see "Reconciliations").

## Treasury

3.  The servicer shall require entities making payments on Government loans (borrowers, lenders, etc) to direct payments to a Treasury designated service including:

    a)  Treasury lockbox
    b)  Pay.gov
    c)  Remittance Express
    d)  IPAC.
        *Note: Receipts must be processed in accordance with guidance provided in Treasury Financial Management (TFM), available at www.fms.treas.gov/tfm/index.htm*

4.  The servicer shall establish an interface with the Treasury lockbox service for the receipt of payment posting file and returned payments files.

5.  The servicer shall establish an interface with Pay.gov for the receipt of ACH debits and credit card payments.

6.  The servicer shall establish an interface for Remittance Express (REX) to support receipt of ACH credits. REX provides FSA and the servicer with download capability of an activity file with optional fields for identifying borrower accounts.

7.  The servicer shall establish an interface for the receipt and processing of Inter-Governmental Payment and Collection (IPAC) systems payments. IPAC provides FSA and the servicer with download capability of an activity file with optional fields for identifying borrower accounts.

8.  The servicer shall post payments to the borrower accounts on the same date of receipt of payment information from Treasury. If the servicer directly receives payments, those payments will be deposited to Treasury on the day of receipt.

9.  The servicer shall maintain a recycle or unapplied file of any payment/payment return transactions that cannot be posted to a borrower account. The servicer shall perform due diligence to research payments held in suspense for the purpose of resolving the unposted items including: posting payment to appropriate borrower account; refunding to remitter; or escheatment to Treasury.

10. The servicer shall obtain daily deposit information from Treasury's Ca$hLinkII system to support accounting processes and controls, such as daily and monthly reconciliations.

11. The servicer shall maintain proper controls over payment posting and accounting activities, and perform daily and monthly required reconciliations.

12. Issuance of Refunds - The servicer shall promptly manage credit balance accounts, and other payments and accounts requiring a refund. The Servicer shall process refund transactions to borrowers (borrower overpayments), lenders (such as consolidation overpayments), etc.

# Attachment A-1

a) The servicer shall establish an interface and process payments refunds via interface via interface with FSA's Financial Management System (FMS) using the FMS standard file format (see FMS Attachment A).
b) Batches of refunds shall be subject to FSA review and approval.
c) The servicer shall receive and work from a Treasury Confirmation Report available through Treasury's Government-Wide Accounting System (GWA). This confirmation data will be used to provide information to borrower inquiries on refund status. The GWA report confirms the completion of processing on a batch, and provides the first and last check number for the batch.
d) The servicer shall receive a report of Treasury Cancellations, maintain cancellation data, and shall provide information for borrower inquiries and support re-issuance of refunds.
e) The servicer shall perform due diligence on cancelled refunds, on issuance of validated refunds, and will follow Treasury guidelines for escheatment.
f) The servicer shall request FSA to cancel refunds, when appropriate.
g) The servicer shall use FSA's student application internet gateway (SAIG) to transmit refund requests to FMS.
h) The servicer shall pass Treasury cancellation data to FMS using the FMS standard file format (see FMS Attachment A).

## Transaction Management

13. The servicer shall establish a system and processes to correctly record all transactions on their database and to post summary transactions to the FSA's general ledger (FMS) on the same business day they are generated.
14. All servicer transactions shall include all fields as required by FMS and all amounts applicable to each transaction type.
15. All servicer transactions must pass all FMS edits for posting into the general ledger.
16. The servicer shall ensure all transactions are reversible.
17. The servicer shall provide unique transaction reporting for each type of loan activity.
18. All servicer transactions will be accurately translated (mapped) from the Servicer's subsidiary ledger to FSA's general ledger (FMS).
19. The servicer shall maintain both the posting date and effective date of the transactions on their system.
20. The servicer shall provide an audit trail that efficiently links their detailed transactions in the subsidiary ledger to summarized transactions in FSA's general ledger. Transactions must have sufficient audit trail to support efficient tracing.
21. The servicer shall include original Treasury document numbers on applicable transactions, in addition to any system created document numbers (including but not limited to: SF215, SF5515, SF1166, SF1098, and SF1081). The usage of Treasury documents is described on the web site http://fms.treas.gov/index.html.
22. The servicer shall assign and retain the Credit Reform Code (CRC), recording and reporting on all loan related transactions at the CRC level. Federal Credit Reform Act legislation and Treasury guidelines for reporting are described on the web site http://fms.treas.gov/index.html. Appendix A (CRC Codes) of Attachment C (FMS File Layouts) describes how CRC codes are generated.

## Attachment A-1

## Internal Controls

23. The servicer shall incorporate a system of internal controls consistent with federal laws, regulations, policies and authoritative guidance. These laws, regulations, and guidances include, but are not limited to: Federal Financial Management Improvement Act (FFMIA); Federal Managers' Financial Integrity Act (FMFIA); CFO Act; Government Performance and Results Act (GPRA); GAO's Green Book; OMB Circulars A-123, 1-127, and A-130; Joint Financial Management Improvement Program (JFMIP); and Treasury Financial Manual (TFM).

24. The servicer's procedures and systems shall include a system of internal controls that ensures resource use is consistent with laws, regulations and policies; resources are safeguarded against waste, loss, and misuse; and reliable data are obtained, maintained, and disclosed in reports. Appropriate internal controls shall be applied to all system inputs, processing and outputs.

Examples of Internal Control Standards to be implemented by the servicer include the following:

a) Review and Reconciliation: Records are examined and reconciled to determine that transactions were properly processed and approved.

b) Execution of Transactions: Independent evidence is required to be maintained to ensure that authorizations are issued by persons acting within the scope of their authority and transactions conform with such authority.

c) Segregation of Duties: Proper segregation of duties is required to exist among functions including: authorization, execution, recording and reviewing transactions, custody of assets, and performing reconciliations.

d) Qualified and continuous supervision is required to be provided to ensure that proper internal control is maintained.

e) Access to and Accountability for Resources: Access to resources and custody and use of resources is required to be assigned and maintained.

25. The servicer shall provide FSA with supporting documentation for FSA's OMB Circular A-123 annual review, the annual Financial Statement Audit, and other audits and reviews (as further described in the Requirement #29 below on Audit Support Services and in Audit Attachment A, "Audit Support Requirements").

26. The servicer shall consult with FSA during FSA's OMB Circular A-123 annual review process and for other audits, so that FSA can: (a) maintain its understanding of the servicers controls (in the context of GAO Internal Control Standards and the Committee on Sponsoring Organizations (COSO) control framework), (b) maintain FSA documentation depicting the servicer's controls and process flows (as further described in Requirement #29 below on Audit Support Services and in the attachment, "Audit Support Requirements"), and (c ) maintain FSA's test plan, which will call for the provision of supporting materials from the servicer.

27. The servicer shall be responsible for resolving all deficiencies identified during audits and participating in corrective action plans as needed.

28. The servicer shall provide FSA with support for conducting FSA site visits to servicer centers of operation. The purpose of the site visits will be to enable and enhance FSA's plans for the conduct of its A-123 review. In addition, during the site visit, FSA

## Attachment A-1

will observe the execution of selected processes for compliance with stated procedures and system function.

29. The servicer shall provide Audit Support Services, upon request, including but not limited to the following audits and reviews.  The "Audit Support Requirements" document attached provides additional information on the annual Financial Statement Audit and describes the "Prepared by client" (or PBC) process that will be used by the auditor and/or FSA to submit requests for documentation, data, and/or walkthroughs and for the servicer to fulfill these requests.:

   a) FSA's annual Financial Statement audits;
   b) Assessments of internal controls in accordance with FMFIA and OMB Circular A-123, Appendix A;
   c) Program-specific financial and compliance audits conducted by GAO, OIG, and/or OMB;
   d) FISMA audits;
   e) Certification and Accreditation reviews;
   f) Internal reviews;
   g) Contract oversight activities; and
   h) Agreed Upon Procedures Audits for Loan Purchase Programs.

      *This support generally includes, but is not limited to: making resources and facilities available, participating in audit planning (such as to determine when resources would be made available and for what purpose), responding to "prepared-by-client" (PBC) requests, reporting status, and remediating deficiencies identified. At a minimum, PBC requests will include: interviews, access to process and system documentation, standard and ad hoc queries and reports, and general questions on processes, systems, data, and/or other matters.*

30. The servicer shall meet requirements for a Type II SAS 70 audit. It is anticipated that performance of the Type II SAS 70 audit with an unqualified opinion and submission of the resulting work papers will eliminate or substantially reduce audit work performed by various auditors, internal and external to the Department, as part of the Department-wide and Government-wide annual audits. As part of their contracts with various lenders, servicers also normally have a SAS 70 audit performed annually by a qualified independent auditor.

   a) For IT controls, the servicer shall supplement the Type II SAS 70 with additional agreed-upon procedures resulting in an audit consistent with GAO's Federal Information System Control Audit Manual (FISCAM).  The results of these procedures should be conducted and reported at least annually, with a year-end of 6/30.  Further, the servicer shall provide FSA with a "bridge letter" covering the period from 6/30 to 9/30 indicating no changes to the control environment.
   b) For operational controls, the servicer shall ensure that the Type II SAS 70 covers all GAO Internal Control Standards or COSO Components (e.g., control environment, risk assessment, control activities, information and communication, and monitoring) for those transactions processed by the servicer.  The results of these procedures should be conducted and reported at least semi-annually covering the periods 1/1 – 6/30 and 7/1 – 12/31.

## Attachment A-1

## Accounting

31. The servicer shall create a financial interface between the FSA servicer and FSA Financial Management System (FMS) to provide financial data to FMS on a daily, weekly and monthly basis.
    a) The data and data layouts to be provided within this interface are described in the FMS Attachment C – FMS File Layouts
    b) Submission / send rules for these transmissions are:
        1. In addition to daily transaction files, servicer shall send weekly (summary) and monthly (interest and adjustment) files to FMS.
        2. Servicer shall use secure FSA's SAIG mailbox to place daily, weekly and monthly files on the FMS server for processing in FMS.
32. The servicer shall conduct accountancy, ensuring that transactions of the servicer's subsidiary ledger are accurately recorded in the FMS general ledger, to include:
    a) Managing the accounting transaction processing between the subsidiary ledger and the general ledger.
    b) Preparing procedural instructions and execution of manual procedures related to the preparation of accounting transactions.
    c) Reconciling cash, accounts receivable, accounts payable, and other general ledger accounts.
    d) Correcting all differences between the subsidiary ledger balances and the control account balances in the general ledger.
    e) Assisting FSA, FMS, and CFO in posting financial data and recommending alternatives to resolve rejected activity and variances.

## Reconciliations

33. The servicer shall perform reconciliations of balances and activity as requested, that meet the following general requirements:
    a) Reconciliation activity should demonstrate that all required data is transmitted to the Department and that all omissions, duplications of data, and recording errors are detected and corrected timely.
    b) All reconciliations and financial accounting will be inclusive of principal, interest and fee amounts.
    c) Monthly reconciliation between Servicing Trial Balance by Portfolio and FSA's general ledger (FMS) trial balance for each individual balance sheet account (balances and activity).
    d) All programs are to be accounted, reported and reconciled individually (distinct portfolios).
    e) Portfolio balances must be supportable at the loan level.
    f) Unless otherwise instructed, all reconciliation processes must identify and define specific transactions causing differences.
    g) Unless otherwise instructed, all requirements apply to each portfolio.
    h) Monthly reconciliations are due to FSA by the 8th calendar day of the subsequent month. (e.g. Reconciliations for the month of June are due July 8th.)
    i) Monthly reconciliations require contractor review by at least one level of management.

## Attachment A-1

j) Monthly reconciliations require the signature of the preparer and reviewer and the date of signatures.

k) Signed monthly reconciliations and all necessary supporting documentation are to be provided to FSA in Adobe .pdf format.

l) The servicer shall provide reports in the file format requested by FSA. File format types would include, but are not limited to: the Microsoft Office Professional Suite (Excel, Word, Access, etc.), Adobe (.pdf), text (.txt), comma delimited (.csv) etc.

m) Daily reconciliations are not standard deliverables to FSA but are considered operational processes and subject to internal control testing.

n) Unless otherwise instructed, all reconciling items arising from monthly reconciliations are to be researched and cleared within the month subsequent to the reconciled period. For example, reconciling items for the month of June must be cleared within July. This eliminates repeat reconciling items.

o) Unless otherwise instructed, all reconciling items arising from daily reconciliations are to be researched and cleared within 48 hours.

p) Daily reconciliations include tracking and resolution of all work in process activity.

34. The servicer shall reconcile loan sales as follows:

a) Perform daily 3-way reconciliation between invoice (pre-sale report), Bill of Sale from selling lender, and conversion reports from servicing system. Offeror must be able to produce the reconciliation at the deal, invoice, lender and summary level.

b) Perform daily and monthly over/underpayment reconciliation between the Selling lender, servicing system, FMS and Treasury.

c) Maintain resulting accounts receivable/accounts payable reconciliation of over/underpayment activity between the Selling lender & FMS.  To include:

  1. Maintain balance of receivables from sellers and payables to sellers.
  2. Invoice sellers for accounts receivables.
  3. Process FMS accounts payable refund request to sellers (see Refund Reconciliations for specific requirements).
  4. Process overpayment refund collections from Selling lenders.
  5. Maintain clear audit trail of overpayment refund transactions processed to Treasury deposits.

d) Daily reconciliation to assure that the FMS net funding transactions purchasing loans equal the net loans accepted and either posted or pending posting (traceable in work in process files) to the servicing system by the next day.

e) Daily reconciliation of activity sent from sellers to accepted and either posted or pending posting (traceable in work in process files) on the servicing system.

35. The servicer shall reconcile transfers as follows:

a) Servicer will provide for loan exchange and reconciliations between servicing system and FSA servicing systems. Servicer will maintain portfolio integrity upon re-entry into the servicing system.

b) Perform daily reconciliation on transfers of loans between the Servicing system and each FSA servicing system.

## Attachment A-1

    c) Perform monthly reconciliation of transfers of loans between the servicing system and each FSA servicing system.

36. The servicer shall reconcile cash collections as follows:

    NOTE: The terms "recycle file", "suspense account" and "unapplied file" are defined as the transactional level cash payments and payment adjustments received but not posted to borrower accounts on the servicing system.

    a) Record all incoming check & electronic collections received (deposits) to the cash clearing account (level 1); reverse collection transactions from cash clearing account when posted to borrower accounts (level 2).

    b) The application process for postable cash payments and payment returns must be completed within 48 hours of collection receipt.

    c) Reconcile all cash activity to Treasury daily. This includes, but is not limited to: electronic funds transfer (EFT), checks (SF 1166), Intra-governmental Payment and Collection (IPAC) System/SF 1081 payments, internal electronic cash transactions, and any other payments to or deposits with Treasury.

    d) Perform daily collection reconciliation among the various Treasury receipt channels (i.e. Lockbox, Pay.gov, Remittance Express, and IPAC), servicing system and FMS general ledger. Collection transactions are to be posted to FMS daily.

    e) Daily reconciliation to ensure Total Cash Received (check and electronic) = (Total Cash Payments Posted to Borrower's accounts + New Recycle File Items).

    f) Daily reconciliation to ensure Outstanding Recycle File Balance = Beginning Recycle File Balance + New Recycle File Items - Recycle File Items Posted to Borrower Accts - Refunds of Misdirected Payments - Treasury Escheatment.

    g) Monthly reconciliation of the Servicer's unapplied cash payment recycle file balance at the servicing system to the FMS Unapplied Collections general ledger account.

    h) Monthly reconciliation of Treasury bank statement to FMS and Treasury.

37. The servicer shall reconcile refunds as follows:

    a) Maintain daily and monthly three-way reconciliation of refund activity among the servicing system, FMS accounts payable system and Treasury.

      1. Process overpayment refunds, refund cancellations, and stop payments posted to borrower accounts.

      2. Refund transactions processed on the servicing system for misdirected payments.

      3. Track and reconcile refund transactions to refund requests (FMS accounts payables) to Treasury confirmations.

      4. Track and reconcile refund cancellation transactions processed on servicing to refund reversals in FMS to Treasury cancellations.

38. The servicer shall provide ad hoc reporting tools to support reconciliations: Servicing Trial Balance by Portfolio – using FSA/FMS transactional account mapping, must be capable of producing daily, weekly, ad hoc, and monthly trial balances at a summary and detailed transactional. If multiple databases are employed each database will be reported individually as well as on a consolidated basis.

## Attachment A-1

39. The servicer shall perform daily, weekly and monthly system balancing of all data transmitted to and from the servicing system.
    a) Balancing will be done at the transaction type, transaction count and transaction amount(s) levels.
    b) Balancing will ensure data sent = data received; and data received will = the sum of data accepted and rejected.
    c) Rejected data will be researched, resolved/resent by the originating system.

## Additional Reporting

40. The servicer shall provide a data file (daily for the previous day's activity, monthly for previous month's activity) to FSA containing standard data elements needed for additional financial and portfolio analysis. FSA will determine the type of file, transfer specifications, and specific data elements to be included in the file.
41. The Servicer shall ensure that the balances reported to FSA within the daily/monthly data files reconcile to the balances reported in the Servicer's servicing system as well as to the Servicer's FMS accounting interface file.
42. The servicer shall provide reasonable additional support as needed (e.g., data files, reports, source documents) to substantiate reported activity and balances.

## Security

43. The Servicer shall restrict access to FSA held loans being serviced from all other loans on their system. Access must be limited to personnel who have obtained proper clearances and who are specifically authorized to view or perform transactions and services on loans held by FSA.
44. The servicer shall provide previous security information from the past three years to include a discussion of security incidents; and audits like SAS 70s, Sarbanes Oxley reviews, independent security assessments, risk assessments, and/or internal reviews along with the applicable remediation plans.
45. The servicer shall provide its system's most current vulnerability scan results, and remediation plan.
46. The servicer shall provide existing security documentation like its security organizational structure, its system's boundary, existing security policy, procedures, and plans.
47. The servicer shall complete personnel background screening requirements ASAP.
    a) All personnel are required to complete a federal background clearance based on their position risk level. Background clearances are submitted on line via Office of Personnel Management (OPM)'s Electronic Questionnaire for Investigations Process (e-Qip). Contractor employees who have undergone appropriate personnel security screening for another federal agency may submit proof of personal security screening for validation. (Attached Security Attachment A - Department of Education's Directive for Contractor Employee Personnel Security Screenings.)
    b) Preliminary clearances must be completed for high-risk positions prior to working on Federal Student Aid systems or data (This process can take 2-6 weeks).

## Attachment A-1

Moderate and low risk positions must submit background clearance paperwork prior to working on Federal Student Aid computer resources.

c) Non-U.S. Citizen may be assigned to a High Risk IT (6C) level position, provided: he/she is a Lawful Permanent Resident of the United States and has resided continuously in the United States for a minimum of three (3) years. Non-U.S. Citizens living outside of the United States cannot have the capability to access Federal Student Aid systems or data.

48. The servicer shall complete a self-assessment of it's system and facilities based on NIST SP 800-53 controls, identify security deficiencies/gaps, and create a remediation plan for the identified deficiencies.

49. The servicer shall agree to provide support for all actions required for a formal security authorization and continuous monitoring program as defined by NIST SP 800-37.

50. The servicer shall create a project plan that they will follow to develop a NIST SP 800-18 compliant System Security Plan created in the Department of Education format.

51. The servicer shall bundle the requested information in requirements 39 - 45 above as attachments to a discussion document that provides a discussion for each requirement and artifact submitted. The cover page for this package will include a self-certification document identifying the system's security posture to include its overall security risk. The cover page will be signed by the servicer's senior security official and program manager attesting that the information within the package is accurate.

## NSLDS

52. The servicer shall report in the same format as a Guaranty Agency (GA) for all loans serviced for Federal Student Aid by creating an NSLDS data base extract file containing FFEL loans and transmit the FFEL Loans data to NSLDS using the reporting requirements detailed in the GA Data Provider Instructions with minimal differences. The Servicers will be provided a GA and Lender Code to be associated with each loan. The Servicers will report the date of default and loan status for default as day 271, using NSLDS loans status fields. The Cohort Default Rate date will be reported at day 361, using the NSLDS Claim Payment fields. A list of these filed changes will be provided. The GA Data Provider Index of fields that are required of the FFEL servicers in addition to more information on Guaranty Agency Data Provider Instructions can be found at the GA DPI Link (http://ifap.ed.gov/nsldsmaterials/0605DPInstNSLDS.html).

53. The servicer shall use the NSLDS provided DataPrep software (or equivalent) to perform Extract Validation and create a Submittal file.

54. The servicer shall send the submittal file to NSLDS on an established weekly schedule.

55. Once loans have been reported, the servicer shall report to NSLDS all FFEL open loans. Closed loans must be continually reported until closed status is successfully accepted by NSLDS. This includes loans that are closed prior to initial NSLDS reporting.

## Attachment A-1

56. The servicer shall retrieve the Load Process Error file from NSLDS for each submittal. The servicer must review errors and correct as many as possible before the next weekly submittal.
57. The servicer shall identify when key borrower indicators have change and report on both the old data and the new data.
58. The servicer shall work with other data providers—including other GAs, the Direct Loan Program, the Debt Management Collection System, Perkins schools, and the Common Origination Disbursement System—to resolve identifier conflicts including assigning pseudo SSNs where appropriate (see NSLDS DPI).
59. The servicer shall update date, amount and reason for defaults based on current default criteria if the loans are transferred to DMCS or CDDTS. Once a loan has transferred to DMCS or CDDTS, stop reporting on the loan unless it is transferred back. When transferring loans the borrower and loan identifiers must be the same identifiers reported to NSLDS. For Rehabilitated Loans, the Date or Maturity should not change.
60. The servicer shall report as a GA for all loans serviced for Federal Student Aid.
61. The servicer shall utilize NSLDS on-line updating functionality to resolve customer service issues and to report loan discharge and Teacher Loan Forgiveness information.
62. The Servicer shall transmit data to and from NSLDS via the Student Aid Internet Gateway (SAIG) or other approved secure transmission methods. Additional information on SAIG transmissions can be found at https://www.fsadownload.ed.gov/mainframeguide.htm.
63. The servicer shall meet NSLDS reporting requirements and quality standards. All data submitted to NSLDS must be as complete and correct as possible.
64. The servicer shall accept and store enrollment data and updates from NSLDS as the official source of such data.
65. The servicer shall continue to follow Common Manual Delinquency reporting to schools.
66. The servicer shall provide additional data elements to the re-engineered NSLDS. These elements will include, but not be limited to: delinquency data, discharge data, forgiveness data, and school/ISIR data. This data has been worked through the community on the FFEL Data Standards Team and can be found online.
67. The servicer shall work with FSA data providers on changes to interfaces as re-engineering projects occur.
68. The servicer shall accept a file from NSLDS when receiving loans from DMCS and CDDTS in order to update the records with missing data elements.


## Unique Client/Lender Requirements for Federally Serviced Portfolio
69. The servicer shall use the client name Department of Education for this portfolio.
70. The servicer shall use the Government assigned client LID for this portfolio.
71. The servicer shall use the Government assigned Guarantor Code for this portfolio.
72. Each servicer will be assigned a unique code.

## Attachment A-1

73. The servicer shall maintain unique standard reporting for loans within each Program (i.e. 08/09 Loan Purchase Program, Puts from 08/09 Participation Program, 09/10 Loan Purchase program, Conduit, Direct Loan, etc.)

74. The servicer shall process refunds via Treasury checks. Refunds are required for overpayments greater than or equal to $5.00.

75. The servicer shall perform small balance processing as follows:
    a) Overpaid Amount – Small balance write-ups of overpaid balances less than $5.00.
    b) Underpaid Amount – Small balance write-off of underpaid balances less than $25.00.

76. The servicer shall have the ability to charge late charges, but no assessment of late charges on loans in the ED portfolio is to be assessed at this time.

77. The servicer shall have the ability to charge other fees (i.e. NSF), but no charges for other fees on loans in the ED portfolio are to be assessed at this time.

78. The servicer shall have the ability to support borrower benefit plans required by each loan purchase (PUT) program.

79. 799/LARS reporting is not required for ED portfolio.

80. The servicer shall have the ability to perform collection and due diligence activities "as required by legislation and/or regulations." Servicers will be required to provide collection and default aversion activity on loans serviced under this contract as long as the loan remains on the servicer's system. If a borrower reaches the 360 days delinquent, the servicer will be required to transfer the loan to the DMCS.
    a) The servicer shall send and electronic transfer file to DMCS with required information about the defaulted borrower and the defaulted loan.
    b) The servicer shall provide access to all required collateral information for the defaulted loan.
    c) The servicer shall accept and resolve rejected records received from DMCS.

81. The servicer shall process discharge transactions with required supporting documentation following the required regulatory guidelines. The servicer is required to facilitate the timely and accurate processing of discharge requests by ensuring that complete loan discharge documentation for the individual is submitted. The servicer is also required to make a determination based on complete loan discharge documentation and applicable guidelines. Depending on the discharge type, the Department reviews discharge decisions through a sampling methodology or conducts a complete review.

82. The servicer shall transfer loans to the Conditional Disability and Discharge System once loans have been determined as eligible to be transferred.

83. The servicer shall obtain school information needed from the Postsecondary Education Participants System (PEPS).

84. The servicer shall be prepared to provide procedure and/or training materials when requested by ED. ED may review these documents to ensure regulatory and legislative requirements are met.

85. The servicer shall be required to transfer loans to, or accept loans from, another servicer at the request of ED.

## Attachment A-1

86. The servicer shall provide access to account level information and collateral for all federally held loans using technology supported by ED (web-based, terminal emulation, etc.).

## Loan Conversion

The loan conversion process occurs when a seller requests ED to purchase loans, and ED validates the seller's approval to participate, checks the eligibility of the loans, provides payment to the seller, and takes ownership of the loans as federally held assets.

Below are the requirements a servicer must complete in addition to the existing requirements to service an FFEL loan:

87. The servicer shall create and maintain a Loan Purchases Tracking Log - to include: Checklist of loan purchase activities, status of activities, and loan counts/amounts. SEE Conversion ATTACHMENT A – Sample of Loan Purchases Tracking Log.
88. The servicer shall provide Loan Purchases Tracking Log to FSA, CFO, and OCFO on a periodic basis.
89. The servicer shall accept 45-day notices submitted by sellers via email. SEE Conversion ATTACHMENT B – Sample of 45 Day Notice.
90. The servicer shall inform FSA when a 45-day notice has been received.
91. The servicer shall send an acknowledgement of receipt of the 45 Day notice to the Seller via email.
92. The servicer shall validate, with FSA contact, the status of the seller's Master Loan Sales Agreement (MLSA).
93. The servicer shall notify seller if any additional MSLA approvals or documentation are needed for the sale and schedule the sale date with the seller's Servicer.
94. The servicer shall notify FSA of the status of the MLSA package, if necessary.
95. The servicer shall perform testing of the loan conversion transfer file process with sellers. SEE Conversion ATTACHMENT C – Sample of a loan conversion transfer file layout.
96. The servicer shall receive loan conversion transfer file from the seller via FTP or other approved transfer method.
97. The servicer shall review the loan conversion transfer file and notify FSA, CFO, OCFO of differences between the 45-day notice and loan conversion file as needed.
98. The servicer shall perform edits on the loan conversion transfer file. Note: edits may vary based on purchase program.
99. The servicer shall prepare report identifying any errors with the loan conversion file and/or any loans not eligible for sale.
100. The servicer shall provide results of edit errors to the seller, FSA, and designated parties. The servicer shall work with the seller to resolve errors.
101. The servicer shall send an acknowledgement of receipt of the 45 Day notice to the Seller via email."
102. The servicer shall work with the Seller to confirm sales parameters, including but not limited to:
     a) Identify any loans in the sale have any liens on them.

## Attachment A-1

> b) Identify if the loans are part of a Put from Participation or a straight Put to the Department.
> c) Identify timing for receipt of Loan Conversion Transfer file from the Servicer, if needed.

103.   The servicer shall calculate pre-sale totals and final purchase price after errors have been resolved.

104. The servicer shall create a pre-sale detail loan report including loan details for all loans included in the sale. SEE Conversion ATTACHMENT D – Sample of pre-sale detail loan report.

105. The servicer shall transmit pre-sale detail loan schedule to seller for validation by seller.

106. The servicer shall create invoice total file and submit to SAIG mailbox to be 'swept' by FSA CFO. SEE ATTACHMENT Conversion E – Invoice total file layout.

107. The servicer shall receive Bill of Sale and related documents. SEE Master Loan Sale Agreement – Exhibit B – Sample of Bill of Sale.

108. The servicer shall validate Bill of Sale package is authorized and complete.

109. The servicer shall validate Schedule and Security Release Certificate (SRC) has been received if loans are subject to a security lien. SEE Master Loan Sale Agreement – Exhibit E – Sample of Schedule and SRC.

110. The servicer shall flag loans subject to a security lien in Tracking Log.

111. The servicer shall accept Notice of Assignments from seller and notify FSA that payment will be sent to designee if a Notice of Assignment is received. SEE Conversion ATTACHMENT F – Sample of Notice of Assignment.

112. The servicer shall compare FSA Servicer pre-sale totals to seller's pre-sale detailed listing of loans sold - identify and resolve differences.

113. The servicer shall request seller to provide updated Bill of Sale documents as needed.

114. The servicer shall validate FSA approves/disapproves invoice of payment.

115. The servicer shall process the loan sale transaction on servicing system when notified payment has been made. Loans now reside on FSA Servicer's system.

116. The servicer shall reconcile the Servicing System balance and activity to FMS for each purchase deal. Resolve and differences and provide the reconciliation to FSA.

117. The servicer shall reconcile the Servicing System balance and activity to FMS on a monthly basis. Resolve and differences and provide the reconciliation to FSA.

118. The servicer shall receive collateral documentation and review for completeness.

119. The servicer shall identify and notify seller of missing collateral documentation, work with seller to obtain required documentation.

120. The servicer shall notify FSA of receipt of collateral and completeness of documentation.

121. The servicer shall provide storage for, and access to, collateral documentation.

122. The servicer shall accept, edit and process loan adjustment files from Servicer after close of sale.

123. The Servicer shall coordinate with the Seller to receive and process any sales transition and post sale transactions, including but not limited to, borrower

## Attachment A-1

payments, loan cancellations, school refunds, NSF transactions for loans purchased by the Department.

124. The Servicer shall provide a process to Put any ineligible loans back to the Seller, as needed (process "Unput" transactions).

**Attachment A-2**

# Additional

# Servicer

# INTERMEDIATE

# Requirements

All_IntermediateReq_v6.0

Attachment A-2

# Additional Servicer – Intermediate Requirements

Required by 3/31/10 unless otherwise noted

## TABLE OF CONTENTS

General Statement ...................................................................................3
Financial Reporting .................................................................................4
Treasury ..................................................................................................4
Transaction Management .........................................................................5
Internal Controls .....................................................................................5
Accounting ..............................................................................................5
Reconciliations ........................................................................................5
Additional Reporting ..............................................................................5
Security ...................................................................................................6
NSLDS ..................................................................................................10
Additional Requirements for Federally Held Portfolio..........................10
Loan Conversion ...................................................................................11
Records Management .............................................................................11

## Attachment A-2

## General Statement

It is the intent of the Department to procure a performance based contract(s) that promotes competition and provides best of business services. To achieve this goal, the Department expects each servicer to provide commercially available services that will yield high performing portfolios and high levels of customer satisfaction. The following statements apply:

- Servicers will be required to meet all statutory and legislative requirements.
- Servicers will use their own discretion in deciding to provide services or business functionality that is recommended but not required.
- Servicers may leverage all borrower repayment channels while maintaining existing branding provided all federally held loans are clearly distinguished and identified.
- Small differences due to rounding in various calculations are understood and accepted providing the calculation itself is in compliance with federal regulation.
- The department will allocate volume based on defined and understood performance metrics.
- The Department does not intend to provide additional service level requirements. The Department does, however, expect best of business practices to be deployed.
- The Department will not require the use of the Department or FSA logo on letters, web sites, etc.
- Servicers will have full discretion to promote or not promote services as long as they meet legislative and regulatory requirements and are cost neutral to the government.
- Servicers will have discretion to provide services to schools.
- Services may use their own authentication process as long as the process is fully compliant with federal IT security guidelines.
- With regard to split borrowers, it is acceptable for servicers to handle requests, phone calls, etc. for all loans being serviced, regardless of the holder as long as all federal laws and regulations are met.

## Attachment A-2

## Financial Reporting

The following Financial Reporting Requirements are required to be implemented by September 30, 2009:

1. The servicer shall produce the Treasury Report on Receivables (TROR), for each portfolio, on a monthly basis. The report must meet all Treasury/FMS guidance (See Treasury attachments A & B). The TROR must also:
   a. Be provided in Microsoft Excel Format;
   b. Be provided for the previous month by the 8th business day of the current month;
   c. Include all supporting data / documentation. The supporting documentation must also be provided for the previous month (e.g., aging information, status information, etc.) in Microsoft Excel format, by the 8th business day of the current month.
2. The servicer shall provide all remaining required accounting reports.
   a. Consolidating Trial Balance (All Funds)
   b. Monthly & Annual Sub ledger Reports (to include Closing reports)
   c. Accounting Distribution Reports
   d. Specific Collection Reports (e.g. Lockbox, ACH Credits, ACH Debits, Web payments, Credit Cards, etc.)
   e. Receivable Aging Reports (by Fund, Cohort Year, Loan Program Type, Risk Category)
   f. Loan Portfolio Analysis
   g. SF-224 for cash transactions with Treasury ED Form
   h. Trial balance reports indicated under Reconciliation
   i. Loan portfolio performance reports (by Fund, Loan Type, cohort year, & Risk Category)
   j. Others as determined

## Treasury

In 2010, Treasury will implement the Transaction Reporting System (TRS). TRS will be a centralized repository of detailed collection transaction information. TRS will provide integrated transaction and deposit reporting of revenue activity across all collection systems. Therefore, the servicer will be required to migrate its data recipient interfaces for the Lockbox (checks and ACH credits), Pay.gov (ACH debits and credit card payments), and CA$HLINKII (which reports detail for ACH credits that are not processed via the lockbox servicer, and reports summary for all deposits from all sources) to TRS. This requirement is estimated to be effective by September 30, 2010. Treasury's web site contains further information on the TRS project at http://www.fms.treas.gov/trs/index.html.

## Attachment A-2

## Transaction Management

NO Additional Requirements beyond the Initial Requirements

## Internal Controls

3. Effective from the first government fiscal year of operations (i.e., as of 9/30/2009), the servicer shall develop and execute the following reports in response to financial statement audit "Prepared-by-Client" (PBC) data requests or as requested by management to support other audits or reviews:
   a. Collections Download
   b. Write-Offs activity – Download Requirements & Documentation Requirements
   c. Download of Transfers activity to DCMS
   d. Additional work products to support responses to auditor inquiries and requests

   ** Refer to the FMS_Attachment_D document attached for additional details on these requirements.

4. The Servicer shall provide support to FSA in compliance with OMB Circular A-123, Appendix C, which incorporates the Improper Payments Information Act of 2002 (IPIA).

## Accounting

NO Additional Requirements beyond the Initial Requirements

## Reconciliations

5. The servicer must demonstrate that all data transfers (e.g., interfaces, files) are balanced across systems and reconciled at the transaction and balance level and all exceptions noted are aged and resolved timely. The servicer shall report aging of reconciling items on all reconciliations. The servicer shall resolve errors and/or variances timely, generally within one month.

## Additional Reporting

6. The Servicer shall provide a Disbursement Date Change (Cohort Year) Report (required to be implemented by September 30, 2009) - The report

## Attachment A-2

      displays all disbursement date changes after each quarter end that crossed cohort years. It displays the Account Number, Loan Identification Number, Principal Balances Outstanding, Interest Receivable Balances, Principal Paid, and Interest Paid.

7. The servicer shall support the FSA implementation of a 'Data Warehouse' including the conversion of the daily/monthly file transfers to the warehouse. FSA will determine the type of file, transfer specifications, and specific data elements to be included in the file.

## Security

Federal Student Aid agrees with the Office of Management and Budget (OMB) and Congress that the security of its data and IT resources is one of our highest priorities. Recognizing the need for agencies to have effective information security programs, Congress passed the Federal Information Security Management Act (FISMA) of 2002. FISMA provides the overall framework for ensuring the effectiveness of information security controls that support federal computer operations and assets. **FISMA requirements apply to all federal contractors and organizations or sources that possess or use federal information or that operate, use, or have access to federal information systems on behalf of an agency.** FISMA mandates the use of the standards created by the National Institute of Standards and Technology (NIST). and Federal Student Aid has adopted those standards and guidance for securing its information technology resources.

Federal Student Aid security requirements indicated below ensure the confidentiality, integrity and availability of its data at a high level. System controls need to be tested and system documentation reviewed using an independent source. If adequate security is in place, Federal Student Aid will provide a formal security authorization to operate (ATO). Additional detailed requirements can be found in NIST security standards, special publications, and bulletins; OMB memorandums; and the Department of Education (DoED) policies and procedures. The primary document Federal Student Aid uses to identify and implement controls is NIST SP 800-53. The latest version of this guidance can be found at: **http://csrc.nist.gov/publications/nistpubs/800-53-Rev2/sp800-53-rev2-final.pdf**

Personnel
8. All personnel are required to complete a federal background clearance based on their position risk level. Background clearances are submitted on line via Office of Personnel Management (OPM)'s Electronic Questionnaire for Investigations Process (e-Qip). Contractor employees who have undergone appropriate personnel security screening for another

# Attachment A-2

federal agency may submit proof of personal security screening for validation. (Attached: Department of Education's Directive for *Contractor Employee Personnel Security Screenings*)

9. Preliminary clearances must be completed for high-risk positions prior to working on Federal Student Aid systems or data (This process can take 2-6 weeks). Moderate and low risk positions must submit background clearance paperwork prior to working on Federal Student Aid computer resources.

10. Non-U.S. Citizen may be assigned to a High Risk IT (6C) level position, provided: he/she is a Lawful Permanent Resident of the United States and has resided continuously in the United States for a minimum of three (3) years. Non-U.S. Citizens living outside of the United States cannot have the capability to access Federal Student Aid systems or data.

11. All personnel are required to successfully complete initial security awareness training within two weeks of employment and annual refresher training. The training can be completed on line using DoED's security training program.

12. Annual specialized training is required that is appropriate to job function.

Facility

13. Data Centers supporting Federal Student Aid systems are required to have controlled access with working security cameras..

14. Data center access control lists must be kept current. .

15. Visitors must be logged and escorted at all times.

16. Power equipment and power cabling for the information system must be protected from damage and destruction. Facility failover power and lighting are required for emergencies.

17. The facility must employ and maintain fire suppression and detection, water damage controls, and temperature and humidity controls.

18. Alternate data center worksites are required to have the same protections as the primary data center site.

Telecommunications

19. Data transfers of PII or other sensitive information must be encrypted using NIST certified encryption methods (see NIST standard, FIPS 140-2)

20. All interconnections must be documented and have an Interconnection Security Agreement in place. (see NIST SP 800-47)

21. Wireless communication containing Federal Student Aid information is not permitted within the data center.

22. The Federal Student Aid System Security Officer must approve all remote access.

Contingency Planning and Recovery

23. A contingency / disaster recovery plan is required to provide continued operational service within 72 hours of a major catastrophe.

Attachment A-2

24. Contingency plans must be tested at a recovery site annually using both DoED and Contractor personnel.
25. The recovery site(s) must be geographically separated from the production site(s).
26. Data sanitation at the recovery site is required after testing. (see NIST SP 800-88)
27. System backups must be encrypted and kept at an alternate location with secured access. Sensitive backup tapes must be marked and have a secure transfer. (Attached: Federal Student Aid's *General Support System and Major Application Backup Media Handling Policy & Procedures*)

Risk Management
28. Annual self-assessment of security controls is required.
29. Independent risk assessments will be completed prior to system's operation and then reassessed at a minimum of every three years.
30. Independent security controls assessment will be completed.
31. All identified vulnerabilities and security weaknesses will be captured and corrective actions tracked through Federal Student Aids Operational Vulnerability Management Solution (OVMS). Security remediations must be implemented to correct security deficiencies and appropriate evidence must be provided to close actions.
32. Contractors will make themselves and the site available for security audits and control assessments. This includes interviews with key security staff, data gathering and submissions, scanning support, and escort activities.
33. Federal Student Aid will have the right to test controls through independent scanning within the boundaries of the Federal Student Aid system and by other means like interviews, observations, and to document reviews.

Security Documentation
34. The contactor will develop, implement, and maintain a current system security plan (SSP) for the information system to provide an overview of the security requirements for the system and a description of the security controls in place or planned for meeting those requirements. Designated officials within Federal Student Aid will review and approve the plan. (see NIST SP 800-18)
35. A contingency plan must be created, approved, and tested annually.
36. A configuration management plan must be created, approved, and implemented.
37. Documented system boundaries are required. A documented inventory of hardware and software utilized, telecommunication interconnections and a network topology are required. (Attached: Federal Student Aid's Boundary Definition template).
38. System access authorizations and signed rules of behavior must be maintained.

## Attachment A-2

39. Plans of Actions and Milestones that address security remediations are maintained in Federal Student Aid's Operational Vulnerability Management Solution.

Security Monitoring and Detection

40. Network intrusion detection systems (NIDS) and host-based intrusion detection systems (HIDS) are configured appropriately and continuously monitored and updated if necessary.
41. Systems will have appropriate auditing capabilities enabled.
42. System logs are to be analyzed for suspicious activity. Logs will be made available to Federal Student Aid upon request.
43. Compliance monitoring established for configuration settings.
44. Routine network and database scans are scheduled. The scan results are analyzed and vulnerabilities identified. The identified vulnerabilities and actions taken will be documented in OVMS.
45. Scans that identify web vulnerabilities will be completed. Scan results will be provided to FSA upon request. The identified vulnerabilities and actions taken will be documented in OVMS.
46. Security remediations must be implemented to correct security deficiencies and appropriate evidence must be provided to close actions.

Incident Response

47. Contractor must maintain an incident response plan that correlates to the DoED plan.
48. Compromises of personal identifiable information (PII) must be reported immediately so that the Department can comply with its reporting requirements to report to U.S. Computer Emergency Readiness Team (CERT) within one hour of the incident.
49. Contractor must preserve evidence and allow external forensic analysis either on-site or through shipment of components.
50. Contractor must take appropriate actions for alerts and warnings provided by DoED or through other sources. Contractor will report status of their actions as requested.

Security Configurations

51. Federal Student Aid data must be segregated from non-Federal Student Aid data.
52. Security patches must be kept current and appropriately tested prior to moving into production.
53. Server and device security configurations must be maintained in accordance with NIST security configuration standards (See: http://checklists.nist.gov/).
54. Passwords must meet Federal Student Aid's password standards. (Attached: Federal Student Aid's *Password Parameters Policy & Procedures*)

## Attachment A-2

55. Change control management procedures must be documented and followed.
56. Federal Student Aid must approve system changes prior to production implementation.
57. Data will be safeguarded commensurate with the highest categorization level based on FIPS 199.

Access Control

58. Federal Student Aid must approve all access to Federal Student Aid data and all contractor access that can affect any component within the system's boundary.
59. Application access reports need to be sent quarterly to Federal Student Aid for certification of access.
60. A listing of IT personnel responsible for operations and maintenance of any Federal Student Aid system must be provided on a quarterly basis to FSA for certification of access.
61. Access must be restricted based on least privilege. Role based access controls should be defined and documented.

## NSLDS

62. The Servicer shall provide the National Student Loan Clearinghouse monthly updates to their federally serviced portfolio. National Student Clearinghouse (NCS) will provide weekly updates to NSLDS for all FFEL and DL loans in the FSA portfolio. NSLDS will provide the servicer with weekly enrollment data that include NSC updates.

## Additional Requirements for Federally Held Portfolio

63. The servicer shall receive collateral in imaged and paper format and if received in paper format image it should be imaged in a format that can be ported easily to another system (Non-proprietary)
64. The servicer shall verify collateral for all loans received in a sale within 45 days and if any collateral is missing the missing collateral will be obtained from the seller.
65. The servicer shall provide for FSA access to the imaging and serving system to view images, make annotations on borrower accounts and have complete access to view FSA data.
66. The servicer shall provide a means for FSA to make a final determination on eligibility of borrowers for entitlements, such as discharge due to Closed School, Death, etc., and compromise offers.
67. The servicer shall report loans to NSLDS and credit bureaus.
68. The servicer shall cancel loans and make all financial adjustments when needed.
69. The servicer shall place loans, where the borrower has applied for bankruptcy, into a bankruptcy status, prepare a Proof-of-Claim and

## Attachment A-2

provide any additional support needed to defend the loan against bankruptcy discharge.

70. The servicer shall accurately prepare and respond to control correspondence (correspondence sent to FSA from the White House, Congress, and other high government officials) and meet control turnaround times established by the U.S. Department for FSA.

71. The servicer shall respond to written and email questions and requests timely and accurately.

72. The servicer shall respond and resolve customer complaints; and create and execute a plan to escalate complaints to FSA and the Ombudsman.

73. The servicer shall have the ability to provide borrower interest rate discounts and assess late fees if directed to do so by FSA.

74. The servicer shall accurately and timely complete and return Loan Verification Certificates received from consolidating lenders.

75. The servicer shall assign loans to DMCS for collection once they reach 360 days delinquent. If a loan is assigned in error the loan will be reinstated onto the servicer's system.

76. The servicer shall have the ability to accept and service loans that undergo rehabilitation from the DMCS.

77. The servicer shall provide FSA the ability to monitor phone calls remotely.

78. The servicer shall support quarterly monitoring reviews completed by FSA.

79. The servicer shall support annual program compliance reviews done by FSA, or by an agent of FSA.

## Loan Conversion

NO Additional Requirements beyond the Initial Requirements

## Records Management

80. The Servicer shall comply with all of the following standard items related to records management:

   a. Citations to pertinent laws, codes and regulations such as 44 U.S.C chapters 21, 29, 31 and 33; Freedom of Information Act (5 U.S.C. 552); Privacy Act (5 U.S.C. 552a); 36 CFR Part 1222 and Part 1228.

   b. Contractor shall treat all deliverables under the contract as the property of the U.S. Government for which the Government Agency shall have unlimited rights to use, dispose of, or disclose such data contained therein as it determines to be in the public interest.

**Attachment A-2**

    c.  Contractor shall not create or maintain any records that are not specifically tied to or authorized by the contract using Government IT equipment and/or Government records.

    d.  Contractor shall not retain, use, sell, or disseminate copies of any deliverable that contains information covered by the Privacy Act of 1974 or that which is generally protected by the Freedom of Information Act.

    e.  Contractor shall not create or maintain any records containing any Government Agency records that are not specifically tied to or authorized by the contract.

    f.  The Government Agency owns the rights to all data/records produced as part of this contract.

    g.  The Government Agency owns the rights to all electronic information (electronic data, electronic information systems, electronic databases, etc.) and all supporting documentation created as part of this contract. Contractor must deliver sufficient technical documentation with all data deliverables to permit the agency to use the data.

    h.  Contractor agrees to comply with Federal and Agency records management policies, including those policies associated with the safeguarding of records covered by the Privacy Act of 1974. These policies include the preservation of all records created or received regardless of format [paper, electronic, etc.] or mode of transmission [e-mail, fax, etc.] or state of completion [draft, final, etc.].

    i.  No disposition of documents will be allowed without the prior written consent of the Contracting Officer. The Agency and its contractors are responsible for preventing the alienation or unauthorized destruction of records, including all forms of mutilation. Willful and unlawful destruction, damage or alienation of Federal records is subject to the fines and penalties imposed by 18 U.S.C. 2701. Records may not be removed from the legal custody of the Agency or destroyed without regard to the provisions of the agency records schedules.

    j.  Contractor is required to obtain the Contracting Officer's approval prior to engaging in any contractual relationship (sub-contractor) in support of this contract requiring the disclosure of information, documentary material and/or records generated under, or relating to, this contract. The Contractor (and any sub-contractor) is

## Attachment A-2

required to abide by Government and Agency guidance for protecting sensitive and proprietary information.

## Attachment A-2

**Additional Information regarding records management:**
Extract from 36 CFR Part 12, regarding records management responsibilities of contractors.

§1222.48 Data created or received and maintained for the Government by contractors.

(a) Contractors performing Congressionally mandated program functions are likely to create or receive data necessary to provide adequate and proper documentation of these programs and to manage them effectively. Agencies shall specify the delivery of the Government of all data needed for the adequate and proper documentation of contractor-operated programs in accordance with requirements of the Federal Acquisition Regulation (FAR) and, where applicable, the Defense Federal Acquisition Regulation Supplement (DFARS).

(b) When contracts involve the creation of data for the Government's use, in addition to specifying a final product, agency officials may need to specify the delivery of background data that may have reuse value to the Government. Before specifying the background data that contractors must deliver to the agency, program and contracting officials shall consult with agency records and information managers and historians and, when appropriate, with other Government agencies to ensure that all agency and Government needs are met, especially when the data deliverables support a new agency mission or a new Government program.

(c) Deferred ordering and delivery-of-data clauses and rights-in-data clauses shall be included in contracts whenever necessary to ensure adequate and proper documentation or because the data have reuse value to the Government.

(d) When data deliverables include electronic records, the agency shall require the contractor to deliver sufficient technical documentation to permit the agency or other Government agencies to use the data.

(e) All data created for Government use and delivered to, or falling under the legal control of, the Government are Federal records and shall be managed in accordance with records management legislation as codified at 44 U.S.C. chapters 21, 29, 31, and 33, the Freedom of Information Act (5 U.S.C. 552), and the Privacy Act (5 U.S.C. 552a), and shall be scheduled for disposition in accordance with 36 CFR part 1228.

## 36 CFR Part 1228, Subpart K - Facility Standards for Records Storage Facilities.

NARA requires that the requirements of Subpart K be incorporated into the contract requirements when records storage facilities are included in the contract. This covers direct contracts with commercial storage vendors such as Iron Mountain; it also covers contractors who store ED records as part of a larger service contract. http://www.archives.gov/about/regulations/part-1228/k.html

**Attachment A-3**

# Additional Servicer FULL Requirements

Full_Req_v6.0

Attachment A-3

# **Additional Servicer – FULL Requirements**

### Required by 8/31/10 unless otherwise noted

## **TABLE OF CONTENTS**

General Statement..........................................................................3
Direct Loans ................................................................................4

## Attachment A-3

## General Statement

It is the intent of the Department to procure a performance based contract(s) that promotes competition and provides best of business services.   To achieve this goal, the Department expects each servicer to provide commercially available services that will yield high performing portfolios and high levels of customer satisfaction. The following statements apply:

- Servicers will be required to meet all statutory and legislative requirements.
- Servicers will use their own discretion in deciding to provide services or business functionality that is recommended but not required.
- Servicers may leverage all borrower repayment channels while maintaining existing branding provided all federally held loans are clearly distinguished and identified.
- Small differences due to rounding in various calculations are understood and accepted providing the calculation itself is in compliance with federal regulation.
- The department will allocate volume based on defined and understood performance metrics.
- The Department does not intend to provide additional service level requirements.  The Department does, however, expect best of business practices to be deployed.
- The Department will not require the use of the Department or FSA logo on letters, web sites, etc.
- Servicers will have full discretion to promote or not promote services as long as they meet legislative and regulatory requirements and are cost neutral to the government.
- Servicers will have discretion to provide services to schools.
- Services may use their own authentication process as long as the process is fully compliant with federal IT security guidelines.
- With regard to split borrowers, it is acceptable for servicers to handle requests, phone calls, etc. for all loans being serviced, regardless of the holder as long as all federal laws and regulations are met.

**Attachment A-3**

## Direct Loans

1. The servicer shall meet all legislative and regulatory requirements for the Direct Loan program (DL). In some cases Direct Loans will need to be serviced differently than FFEL loans, a few examples of these differences are listed below (not an all inclusive list):
   a. The interest rate for a Federal Direct PLUS loan is fixed at 7.9% for loans first disbursed after July 1, 2006.
   b. Public service loan forgiveness is only offered in the DL.
   c. There are two repayment plans unique to the DL: Income Contingent Repayment (ICR) and the Alternative Repayment.
   d. DL provides a 0.25% interest rate reduction for borrowers making payments through electronic debit accounts.
   e. As of July 1, 2009 the up front interest rebate for direct subsidized and unsubsidized loans will be 1.00%.
   f. There is an origination fee but no Federal default fee in the DL. As of July 1, 2009, the origination fee will be 1.5% for direct subsidized and direct unsubsidized loans.
   g. There is authority in the DL for unlimited discretionary forbearances. DL servicers must be able to offer borrowers additional administrative forbearance after the 3-year limit and upon receipt of additional documentation from the borrowers.
2. The servicer shall meet all previously identified requirements for Federally Held Debt (i.e. Accounting, Treasury, Reconciliation, Internal Controls, etc.) for the Direct Loan portfolio.
3. The servicer shall interface with Common Origination and Disbursement System (COD) & Electronic Master Promissory Note (eMPN) for newly originated loans.
4. The servicer shall interface with the Direct Loan Consolidation System (DLCS) for Direct Consolidation Loans.
5. The servicers shall accept loan and disbursement level adjustments from the originating system(s) and/or directly from schools as necessary. The majority of Direct Loan adjustments & cancellations are passed from the school to COD, and then from COD to the servicing system via the servicing system/COD interface. Direct Consolidation Loan adjustments & cancellations are received by the servicing system from the Direct Loan Consolidation System (DLCS) via the servicing system/DLCS interface
6. The servicer shall interface with Internal Revenue Service (IRS) as needed to support income contingent or income based programs.
7. The servicer shall support servicing of all Direct Loans, including Direct Consolidation Loans.

Attachment A-4

# Ongoing Allocation Methodology

The allocation of ongoing volume will be determined based on the performance of each servicer in relation to the other servicers awarded. While the total number of awarded servicers has not yet been determined, this methodology works with any number of servicers (as shown in examples).

Quarterly scores will be compiled for each servicer based on various performance factors; five high-level metrics, and some sub-metric categories, have been defined (see below). An average of the quarterly scores available on July 1 of each year will be used to determine the ranking of each servicer in each of the five high-level metric categories. By combining each servicer's ranking in all categories, each servicer will be given a percentage of the total new volume of Federally Held Debt to be distributed for the upcoming year.

Servicers will be informed of their allocation percentage of new volume by July 15 of each year. This allocation will become effective on August 15 of each year. The first ongoing allocation will be provided by August 15, 2010.

The allocation of ongoing volume will be determined based on the following factors:

1. Percentage of "In Repayment" Portfolio Dollars that go into default (as transferred to DMCS – 360+ days) – Measured as a percentage of the servicer's current Federally held portfolio
   a. Percentage at Public Schools
   b. Percentage at Private Schools
   c. Percentage at Proprietary Schools
2. Percentage of unique "In Repayment" Portfolio borrowers that go into default (as transferred to DMCS – 360+ days) – Measured as a percentage of the servicer's current Federally held portfolio
   a. Percentage at Public Schools
   b. Percentage at Private Schools
   c. Percentage at Proprietary Schools
3. Borrower Surveys
   a. In School Borrowers
   b. In Grace Borrowers
   c. In Repayment Borrowers
4. School Surveys
   a. Public Schools
   b. Private Schools
   c. Proprietary Schools
5. Survey of FSA personnel

**Allocation Metric # 1** – to be measured Quarterly (calendar quarters beginning with October 1, 2009). Calculation = (Total Principal Balance Outstanding (or "PBO") + Interest of all loans sent to DMCS during the quarter or > 360 days delinquent at the end of the quarter) DIVIDED BY (Total PBO + Interest of all of the servicer's Federally held debt portfolio in repayment status). Resulting value is a percentage rounded to the nearest hundredth for each category of schools (Public, Private, Proprietary). All available quarterly scores in each category (1a, 1b, 1c) will be averaged together on July 1 of each year to calculate the Final Score for this allocation metric.

**Allocation Metric # 2** – to be measured Quarterly (calendar quarters beginning with October 1, 2009). Calculation = (Total number of borrowers sent to DMCS during the quarter or > 360 days delinquent at

Attachment A-4

the end of the quarter) DIVIDED BY (Total number of borrowers within the servicer's Federally held debt portfolio in repayment status). Resulting value is a percentage rounded to the nearest hundredth for each category of schools (Public, Private, Proprietary). All available quarterly scores in each category (2a, 2b, 2c) will be averaged together on July 1 of each year to calculate the Final Score for this allocation metric.

**Allocation Metric # 3** – Surveys will be conducted quarterly of borrowers in each category (In School, In Grace, and In Repayment). The survey will measure borrower satisfaction with the servicer and results will be based on a scale of 0 – 100%, with 100% representing a perfect score. FSA, or an agent of FSA will conduct surveys. All available quarterly scores in each category (3a, 3b, 3c) will be averaged together on July 1 of each year to calculate the Final Score for this allocation metric.

**Allocation Metric # 4** – Surveys will be conducted quarterly of schools in each category (Public, Private, and Proprietary). The survey will measure school satisfaction with the servicer and results will be based on a scale of 0 – 100%, with 100% representing a perfect score. FSA, or an agent of FSA will conduct surveys. All available quarterly scores in each category (4a, 4b, 4c) will be averaged together on July 1 of each year to calculate the Final Score for this allocation metric.

**Allocation Metric # 5** – Surveys will be conducted quarterly of FSA personnel. The survey will measure FSA satisfaction with the servicer and results will be based on a scale of 0 – 100%, with 100% representing a perfect score. FSA, or an agent of FSA will conduct surveys. All available quarterly scores will be averaged together on July 1 of each year to calculate the Final Score for this allocation metric.

**Allocation Metric Score Comparison Among Servicers**

The above calculation will result in a set of 5 scores for each servicer, one score in each metric category (1-Defaulted borrower dollars, 2-Defaulted borrower count, 3-Borrower Survey, 4-School Survey, 5-FSA Survey).

FSA will compare all servicers' scores in each allocation metric category and provide a ranking for each servicer in that category, with the best score in each category receiving the highest possible value and the worst score receiving the lowest possible value (highest / lowest values will be determined by the number of servicers selected --- Highest score possible will be the total number of servicers selected, lowest score will be 1).

Once a ranking value has been assigned to each servicer in each allocation category, all scores for a servicer will be added together to provide the "Total Score" for that servicer for the year. Each servicer will have one Total Score for each year.

**Allocation of New Volume of Federally Held Debt**

Each servicer will be assigned an allocation of new volume by dividing that servicer's total score by the combined total scores of all servicers. The resulting percentage will determine each servicer's percentage of new volume of Federally Held Debt.

The servicer's percentage of new volume will determine the percentage of new borrowers that will be sent to the servicer for servicing (loans for existing borrowers may, to the maximum extent practicable, be sent to the servicer already holding that borrower's other loans).

*NOTE: If a servicer is out of compliance (for example, but not limited to, financial management or reporting, security, OMB Circular A-123, Legislative Mandates, Program Compliance, etc.), that*

Attachment A-4

*servicer's new volume may be re-allocated to one or more other servicers until compliance has been achieved. In addition, that servicer's current account volume may be transferred to another servicer, at the non-compliant servicer's expense.*

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 1 - 6 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

|  | METRIC | Servicers | | | | | |
|---|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 | 6 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% | 4.40% | 5.50% | 6.60% |
| 2 | Defaulted borrower amount | 1.10% | 2.20% | 3.30% | 4.40% | 5.50% | 6.60% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% | 89.00% |
| 4 | School Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% | 89.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% | 89.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

|  | METRIC | Servicers | | | | | |
|---|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 | 6 |
| 1 | Defaulted borrower count | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 3 | Borrower Survey | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 5 | FSA Survey | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

|  | Servicers | | | | | |
|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| TOTAL SCORE | 30.0 | 25.0 | 20.0 | 15.0 | 10.0 | 5.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

|  | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 30.0 | 28.57% | 1,714,286 |
| Servicer 2 | 25.0 | 23.81% | 1,428,571 |
| Servicer 3 | 20.0 | 19.05% | 1,142,857 |
| Servicer 4 | 15.0 | 14.29% | 857,143 |
| Servicer 5 | 10.0 | 9.52% | 571,429 |
| Servicer 6 | 5.0 | 4.76% | 285,714 |
| Combined Total | 105 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 2 - 5 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

|  | METRIC | Servicers | | | | |
|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% | 4.40% | 5.50% |
| 2 | Defaulted borrower amount | 1.10% | 2.20% | 3.30% | 4.40% | 5.50% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% |
| 4 | School Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

|  | METRIC | Servicers | | | | |
|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 1 | Defaulted borrower count | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 3 | Borrower Survey | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 5 | FSA Survey | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

|  | Servicers | | | | |
|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 |
| TOTAL SCORE | 25.0 | 20.0 | 15.0 | 10.0 | 5.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

|  | Total Score | % of new volume Servicer will receive (Total Score / Combined totals) | New borrowers (based on 6M total new born) |
|---|---|---|---|
| Servicer 1 | 25.0 | 33.33% | 2,000,000 |
| Servicer 2 | 20.0 | 26.67% | 1,600,000 |
| Servicer 3 | 15.0 | 20.00% | 1,200,000 |
| Servicer 4 | 10.0 | 13.33% | 800,000 |
| Servicer 5 | 5.0 | 6.67% | 400,000 |
| Combined Totals | 75 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 3 - 4 Servicers selected

### FINAL SCORE BY ALLOCATION METRIC

| | METRIC | Servicers | | | |
| --- | --- | --- | --- | --- | --- |
| | | 1 | 2 | 3 | 4 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% | 4.40% |
| 2 | Defaulted borrower amount | 1.10% | 2.20% | 3.30% | 4.40% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% | 91.00% |
| 4 | School Survey | 97.00% | 95.00% | 93.00% | 91.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% | 91.00% |

### SERVICER RANKING BY ALLOCATION METRIC

| | METRIC | Servicers | | | |
| --- | --- | --- | --- | --- | --- |
| | | 1 | 2 | 3 | 4 |
| 1 | Defaulted borrower count | 4.0 | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 4.0 | 3.0 | 2.0 | 1.0 |
| 3 | Borrower Survey | 4.0 | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 4.0 | 3.0 | 2.0 | 1.0 |
| 5 | FSA Survey | 4.0 | 3.0 | 2.0 | 1.0 |

### TOTAL SCORE BY SERVICER

| | Servicers | | | |
| --- | --- | --- | --- | --- |
| | 1 | 2 | 3 | 4 |
| TOTAL SCORE | 20.0 | 15.0 | 10.0 | 5.0 |

### ALLOCATION EACH SERIVER WILL RECEIVE

| | Total Score | % of new volume Servicer will receive (Total Score ÷ Combined Totals) | New borrowers (based on 6M total new born) |
| --- | --- | --- | --- |
| Servicer 1 | 20.0 | 40.00% | 2,400,000 |
| Servicer 2 | 15.0 | 30.00% | 1,800,000 |
| Servicer 3 | 10.0 | 20.00% | 1,200,000 |
| Servicer 4 | 5.0 | 10.00% | 600,000 |
| Combined Totals | 50 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 4 - 3 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

| | METRIC | Servicers | | |
|---|---|---|---|---|
| | | 1 | 2 | 3 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% |
| 2 | Defaulted borrower amount | 1.10% | 2.20% | 3.30% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% |
| 4 | School Survey | 97.00% | 95.00% | 93.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

| | METRIC | Servicers | | |
|---|---|---|---|---|
| | | 1 | 2 | 3 |
| 1 | Defaulted borrower count | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 3.0 | 2.0 | 1.0 |
| 3 | Borrower Survey | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 3.0 | 2.0 | 1.0 |
| 5 | FSA Survey | 3.0 | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

| | Servicers | | |
|---|---|---|---|
| | 1 | 2 | 3 |
| TOTAL SCORE | 15.0 | 10.0 | 5.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

| | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 15.0 | 50.00% | 3,000,000 |
| Servicer 2 | 10.0 | 33.33% | 2,000,000 |
| Servicer 3 | 5.0 | 16.67% | 1,000,000 |
| Combined Totals | 30 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
# Scenario 5 - 2 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

|  | METRIC | Servicers | |
|---|---|---|---|
|  |  | 1 | 2 |
| 1 | Defaulted borrower count | 1.10% | 2.20% |
| 2 | Defaulted borrower amount | 1.10% | 2.20% |
| 3 | Borrower Survey | 97.00% | 95.00% |
| 4 | School Survey | 97.00% | 95.00% |
| 5 | FSA Survey | 97.00% | 95.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

|  | METRIC | Servicers | |
|---|---|---|---|
|  |  | 1 | 2 |
| 1 | Defaulted borrower count | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 2.0 | 1.0 |
| 3 | Borrower Survey | 2.0 | 1.0 |
| 4 | School Survey | 2.0 | 1.0 |
| 5 | FSA Survey | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

|  | Servicers | |
|---|---|---|
|  | 1 | 2 |
| TOTAL SCORE | 10.0 | 5.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

|  | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new born) |
|---|---|---|---|
| Servicer 1 | 10.0 | 66.67% | 4,000,000 |
| Servicer 2 | 5.0 | 33.33% | 2,000,000 |
| Combined Totals | 15 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 6 - 6 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

| METRIC | | Servicers | | | | | |
|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% | 4.40% | 5.50% | 6.60% |
| 2 | Defaulted borrower amount | 6.60% | 5.50% | 3.30% | 4.40% | 2.20% | 1.10% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% | 89.00% |
| 4 | School Survey | 89.00% | 90.00% | 93.00% | 91.00% | 95.00% | 97.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% | 89.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

| METRIC | | Servicers | | | | | |
|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 |
| 1 | Defaulted borrower count | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 1.0 | 2.0 | 4.0 | 3.0 | 5.0 | 6.0 |
| 3 | Borrower Survey | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 1.0 | 2.0 | 4.0 | 3.0 | 5.0 | 6.0 |
| 5 | FSA Survey | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

| | Servicers | | | | | |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| TOTAL SCORE | 20.0 | 19.0 | 20.0 | 15.0 | 16.0 | 15.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

| | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 20.0 | 19.05% | 1,142,857 |
| Servicer 2 | 19.0 | 18.10% | 1,085,714 |
| Servicer 3 | 20.0 | 19.05% | 1,142,857 |
| Servicer 4 | 15.0 | 14.29% | 857,143 |
| Servicer 5 | 16.0 | 15.24% | 914,286 |
| Servicer 6 | 15.0 | 14.29% | 857,143 |
| Combined Total | 105 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 7 - 5 Servicers selected

### FINAL SCORE BY ALLOCATION METRIC

| | METRIC | Servicers | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | 1 | 2 | 3 | 4 | 5 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% | 4.40% | 5.50% |
| 2 | Defaulted borrower amount | 6.60% | 5.50% | 3.30% | 4.40% | 2.20% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% |
| 4 | School Survey | 89.00% | 90.00% | 93.00% | 91.00% | 95.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% |

### SERVICER RANKING BY ALLOCATION METRIC

| | METRIC | Servicers | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | 1 | 2 | 3 | 4 | 5 |
| 1 | Defaulted borrower count | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 1.0 | 2.0 | 4.0 | 3.0 | 5.0 |
| 3 | Borrower Survey | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 1.0 | 2.0 | 4.0 | 3.0 | 5.0 |
| 5 | FSA Survey | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |

### TOTAL SCORE BY SERVICER

| | Servicers | | | | |
| --- | --- | --- | --- | --- | --- |
| | 1 | 2 | 3 | 4 | 5 |
| TOTAL SCORE | 17.0 | 16.0 | 17.0 | 12.0 | 13.0 |

### ALLOCATION EACH SERIVER WILL RECEIVE

| | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
| --- | --- | --- | --- |
| Servicer 1 | 17.0 | 22.67% | 1,360,000 |
| Servicer 2 | 16.0 | 21.33% | 1,280,000 |
| Servicer 3 | 17.0 | 22.67% | 1,360,000 |
| Servicer 4 | 12.0 | 16.00% | 960,000 |
| Servicer 5 | 13.0 | 17.33% | 1,040,000 |
| Combined Total | 75 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 8 - 4 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

| | METRIC | Servicers | | | |
| --- | --- | --- | --- | --- | --- |
| | | 1 | 2 | 3 | 4 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% | 4.40% |
| 2 | Defaulted borrower amount | 6.60% | 5.50% | 3.30% | 4.40% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% | 91.00% |
| 4 | School Survey | 89.00% | 90.00% | 93.00% | 91.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% | 91.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

| | METRIC | Servicers | | | |
| --- | --- | --- | --- | --- | --- |
| | | 1 | 2 | 3 | 4 |
| 1 | Defaulted borrower count | 4.0 | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 1.0 | 2.0 | 4.0 | 3.0 |
| 3 | Borrower Survey | 4.0 | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 1.0 | 2.0 | 4.0 | 3.0 |
| 5 | FSA Survey | 4.0 | 3.0 | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

| | Servicers | | | |
| --- | --- | --- | --- | --- |
| | 1 | 2 | 3 | 4 |
| TOTAL SCORE | 14.0 | 13.0 | 14.0 | 9.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

| | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
| --- | --- | --- | --- |
| Servicer 1 | 14.0 | 28.00% | 1,680,000 |
| Servicer 2 | 13.0 | 26.00% | 1,560,000 |
| Servicer 3 | 14.0 | 28.00% | 1,680,000 |
| Servicer 4 | 9.0 | 18.00% | 1,080,000 |
| Combined Total | 50 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 9 - 3 Servicers selected

### FINAL SCORE BY ALLOCATION METRIC

|  | METRIC | Servicers | | |
|---|---|---|---|---|
|  |  | 1 | 2 | 3 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% |
| 2 | Defaulted borrower amount | 6.60% | 5.50% | 3.30% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% |
| 4 | School Survey | 89.00% | 90.00% | 93.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% |

### SERVICER RANKING BY ALLOCATION METRIC

|  | METRIC | Servicers | | |
|---|---|---|---|---|
|  |  | 1 | 2 | 3 |
| 1 | Defaulted borrower count | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 1.0 | 2.0 | 3.0 |
| 3 | Borrower Survey | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 1.0 | 2.0 | 3.0 |
| 5 | FSA Survey | 3.0 | 2.0 | 1.0 |

### TOTAL SCORE BY SERVICER

|  | Servicers | | |
|---|---|---|---|
|  | 1 | 2 | 3 |
| TOTAL SCORE | 11.0 | 10.0 | 9.0 |

### ALLOCATION EACH SERIVER WILL RECEIVE

|  | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 11.0 | 36.67% | 2,200,000 |
| Servicer 2 | 10.0 | 33.33% | 2,000,000 |
| Servicer 3 | 9.0 | 30.00% | 1,800,000 |
| Combined Total | 30 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 10 - 2 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

| | METRIC | Servicers | |
|---|---|---|---|
| | | 1 | 2 |
| 1 | Defaulted borrower count | 1.10% | 2.20% |
| 2 | Defaulted borrower amount | 6.60% | 5.50% |
| 3 | Borrower Survey | 97.00% | 95.00% |
| 4 | School Survey | 89.00% | 90.00% |
| 5 | FSA Survey | 97.00% | 95.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

| | METRIC | Servicers | |
|---|---|---|---|
| | | 1 | 2 |
| 1 | Defaulted borrower count | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 1.0 | 2.0 |
| 3 | Borrower Survey | 2.0 | 1.0 |
| 4 | School Survey | 1.0 | 2.0 |
| 5 | FSA Survey | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

| | Servicers | |
|---|---|---|
| | 1 | 2 |
| TOTAL SCORE | 8.0 | 7.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

| | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 8.0 | 53.33% | 3,200,000 |
| Servicer 2 | 7.0 | 46.67% | 2,800,000 |
| Combined Total | 15 | 100.00% | 6,000,000 |

Federal Student Aid

Attachment A-6-- Servicing Pricing Definitions

U.S. Department of Education

Title IV Student Loan Servicing/Management

| Deliverable | Definition |
|---|---|
| Borrowers in In-school Status | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have not separated from school as of the last day of the billing period |
| Borrowers in Grace or Current Repayment Status | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school and are less than 31 days delinquent and are not in deferment, forbearance, or conditionally discharged as of the last day of the billing period |
| Borrowers in Deferment or Forbearance | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school, are in deferment or forbearance and who are not conditionally discharged as of the last day of the billing period |
| Borrowers 31-90 Days Delinquent | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school, are 31 or more days, but less than 91 days delinquent, and who are not conditionally discharged as of the last day of the billing period |
| Borrowers 91-150 Days Delinquent | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school, are 91 or more days, but less than 151 days delinquent, and who are not conditionally discharged as of the last day of the billing period |
| Borrowers 151-270 Days Delinquent | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school are 151 or more days, but less than 271 days delinquent, and who are not conditionally discharged as of the last day of the billing period |
| Borrowers 270+ Days Delinquent | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school and 271 or more days and who are not conditionally discharged as of the last day of the billing period. This may include borrowers over 360 day that are considered in Default Status, but for some reason have not been transferred through no fault of the Servicer. |

NOTES:
1. Common pricing shall apply regardless of program (i.e. Direct Loan, Federal Family Education Loan) or volume serviced, unless otherwise noted in the contract.
2. Reporting is required for the number of borrowers and/or loans and dollar amount of each program, in addition to any other reporting requirements provided in the contract.
3. Borrowers in multiple statuses shall be billed once, in the lowest performing deliverable status. The lowest performing deliverable status is defined as the lowest unit priced deliverable.
4. Borrowers pending discharge, which include, but are not limited to: conditional disability, death, or bankruptcy, shall be, for billing purposes, counted in the deliverable status at the time of the discharge request.
5. "The last day of the billing period" is defined as the last day of the Department of Education's monthly billing period.
6. The annual pricing period shall begin on September 1, 2009.

## USE AND NON-DISCLOSURE AGREEMENT

The undersigned, ███████████ an authorized representative of the Pennsylvania Higher Education Assistance Agency, (which is hereinafter referred to as the "Recipient") requests the Government to provide the Recipient with proprietary data, technical data or computer software (hereinafter referred to as "Data") in which the Government's use, modification, reproduction, release, performance, display or disclosure rights are restricted. Those Data are identified in an attachment to this Agreement. In consideration for receiving such Data, the Recipient agrees to use the Data strictly in accordance with this Agreement:

(1)     The Recipient shall —

   (a)     Use, modify, reproduce, release, perform, display, or disclose Data marked with SBIR data rights legends only for government purposes and shall not do so for any commercial purpose. The Recipient shall not release, perform, display, or disclose these Data, without the express written permission of the contractor whose name appears in the restrictive legend (the "Contractor"), to any person other than its subcontractors or suppliers, or prospective subcontractors or suppliers, who require these Data to submit offers for, or perform, contracts with the Recipient. The Recipient shall require its subcontractors or suppliers, or prospective subcontractors or suppliers, to sign a use and non-disclosure agreement prior to disclosing or releasing these Data to such persons. Such agreement must be consistent with the terms of this agreement.

   (b)     Use, modify, reproduce, release, perform, display, or disclose proprietary data or technical data marked with limited rights legends only as specified in the attachment to this Agreement. Release, performance, display, or disclosure to other persons is not authorized unless specified in the attachment to this Agreement or expressly permitted in writing by the Contractor.

   (c)     Use computer software marked with restricted rights legends only in performance of Contract Number EDOFSA-09-D-0014. The Recipient shall not, for example, enhance, decompile, disassemble, or reverse engineer the software; time share, or use a computer program with more than one computer at a time. The recipient may not release, perform, display, or disclose such software to others unless expressly permitted in writing by the licensor whose name appears in the restrictive legend.

   (d)     Use, modify, reproduce, release, perform, display, or disclose Data marked with special license rights legends (To be completed by the contracting officer. See (a)(2) of the Use and Non-Disclosure Agreement clause. Omit if none of the Data requested is marked with special license rights legends).

1

(2)     The Recipient agrees to adopt or establish operating procedures and physical security measures designed to protect these Data from inadvertent release or disclosure to unauthorized third parties.

(3)     The Recipient agrees to accept these Data "as is" without any Government representation as to suitability for intended use or warranty whatsoever. This disclaimer does not affect any obligation the Government may have regarding Data specified in a contract for the performance of that contract.

(4)     The Recipient may enter into any agreement directly with the Contractor with respect to the use, modification, reproduction, release, performance, display, or disclosure of these Data.

(5)     The Recipient agrees to indemnify and hold harmless the Government, its agents, and employees from every claim or liability, including attorneys fees, court costs, and expenses arising out of, or in any way related to, the misuse or unauthorized modification, reproduction, release, performance, display, or disclosure of Data received from the Government with restrictive legends by the Recipient or any person to whom the Recipient has released or disclosed the Data.

(6)     The Recipient is executing this Agreement for the benefit of the Contractor. The Contractor is a third party beneficiary of this Agreement who, in addition to any other rights it may have, is intended to have the rights of direct action against the Recipient or any other person to whom the Recipient has released or disclosed the Data, to seek damages from any breach of this Agreement or to otherwise enforce this Agreement.

(7)     The Recipient agrees to destroy these Data, and all copies of the Data in its possession, no later than 30 days after the date shown in paragraph (8) of this Agreement, to have all persons to whom it released the Data do so by that date, and to notify the Contractor that the Data have been destroyed.

(8)     This Agreement shall be effective for the period commencing with the Recipient's execution of this Agreement and ending upon August 31, 2019. The obligations imposed by this Agreement shall survive the expiration or termination of the Agreement.

Pennsylvania Higher Education Assistance Agency
Recipient's Business Name

_____          _____
Authorized Representative                Date

_____
Representative's Typed Name and Title

2

# EXHIBIT F

1/13/2018
income based repayment form - Google Search



| income based repayment form | 🔍 | | Sign in |

All    News    Images    Videos    Maps    More          Settings    Tools

About 1,020,000 results (0.49 seconds)

**Apply For Income-Driven Repayment - StudentLoans.gov**
https://studentloans.gov/myDirectLoan/ibrInstructions.action ▾
**Income**-driven **repayment** (IDR) plans are designed to make your student loan debt more manageable by
reducing your monthly payment amount. If you need to make lower monthly payments or if your
outstanding federal student loan debt represents a significant portion of your annual **income**, one of the
following ...

**[PDF] Income-Driven Repayment Plan Request - StudentLoans.gov**
https://static.studentloans.gov/images/idrPreview.pdf ▾
**Income-Based Repayment (IBR)**, and Income-Contingent Repayment (ICR) plans under the William D.
Ford Federal Direct Loan (Direct Loan) Program and Federal Family Education Loan (FFEL) Programs.
WARNING: Any person who knowingly makes a false statement or misrepresentation on this **form** or on.

**Income-Driven Repayment Annual Renewal – Navient**
https://www.navient.com/loan-customers/.../income-driven-repayment-annual-renewal... ▾
If you're repaying federal student loans in an **Income**-Driven **Repayment** plan (IDR) – each year you need
to provide your servicer with updated **income** documentation and certify your family size. Generally, this
is around the same time of the year that you first began **repayment** under the IDR plan that you selected.

**Repayment Plans - MyFedLoan**
https://myfedloan.org/borrowers/repayment-plans/ ▾
We have several **repayment** options available so you can choose which works best with your budget.
Eligibility may vary ... As long as you meet the eligibility requirements and you still have time remaining
in your term, you can request to change your **repayment** plan. NOTE: Make ... **Repayment** Plans **Based**
on Your **Income.**

**[PDF] Income-Based (IBR) - IFAP - U.S. Department of Education**
https://ifap.ed.gov/.../GEN1222AttachFINAL1845dash0102Expires20151131.pdf ▾
**Income-Based (IBR)** / Pay As You Earn / Income-Contingent (ICR) Repayment Plan Request. William D.
Ford Federal Direct Loan (Direct Loan) Program / Federal Family Education Loan (FFEL) Program. Use
this **form** to (1) request an available repayment plan based on your income, (2) provide the required
information for ...

**[PDF] Income–Driven Repayment Plan Request - IFAP - U.S. Department of ...**
https://ifap.ed.gov/dpcletters/attachments/18450102IDRFINALExtended.pdf ▾
For the Revised Pay As You Earn (REPAYE), Pay As You Earn (PAYE), Income-Based. (IBR), and Income-
Contingent (ICR) repayment plans under the William D. Ford. Federal Direct Loan (Direct Loan) and
Federal Family Education Loan (FFEL) Programs. IDR. OMB No. 1845-0102. Form Approved. Exp. Date
10/31/2018.

**How to Apply for Income-driven Repayment - Great Lakes**
https://mygreatlakes.org/educate/knowledge-center/income-driven-repayment.html ▾
**Income**-driven **repayment** plans, like **Income-Based** or **Income**-Contingent **Repayment**, can lower your
federal student loan payment. Learn more and how to apply. ... the details of each IDR plan. Keep in
mind that your **income-driven repayment application** will not be processed if you're still in school more
than half-time.

**Income-Based Repayment (IBR) - Edfinancial Services**
https://www.edfinancial.com/HelpCenter/.../Income...Repayment-Information.../IBR ▾
If you are approved for **IBR**, you are required to reapply each year by submitting a new **Income**-Driven
Repayment Plan Request **form** that will provide us with your updated income and family size
information. If your annual income and family size information is not received by your annual renewal
date, your payment will ...

**IBRinfo :: New! Online IBR Application and Renewal Process; Pay-As ...**
www.ibrinfo.org/update_11512.vp.html ▾
Earlier this year, the White House announced it would streamline the **application** process for the **Income-**
**Based Repayment (IBR)** plan, and we're happy to report that the new online **application** tool is now
available at Studentloans.gov. A key feature is that borrowers can retrieve and transfer their own tax
information into the ...

**How to Recertify Your Income-Driven Repayment Plan Application ...**
https://studentloanhero.com/.../income-driven-repayment-plan-application-recertify/ ▾
Mar 10, 2017 - If your loan payments are **based** on your **income**, the government requires you to recertify
your **income-driven repayment** plan **application** each year. Learn how.

1/13/2018                                    income based repayment form - Google Search

Do I qualify for income based repayment?

How does income based repayment work?

Do your student loans get forgiven after 25 years?

What percentage of your income is income based repayment?

*Feedback*

**Income Based Repayment**
[Ad] www.searchnow.com/Search-CBSi-Content ▾
Search for **Income Based Repayment**! Best CBSi Content On SearchNow.com

**Income Based Repayment Form. | Income Based Repayment Form**
[Ad] www.govtsearches.com/SearchNow ▾
Find the Government Answers You're Looking for with GovtSearches.com!
Government Questions · Fast Results · Learn More · Easy to Explore

**Income Based Repayment Form | Search & Find Quick Results.**
[Ad] www.informationvine.com/Results ▾
Informationvine.com connects you to the best results from across the web.
Learn More · Search & Find Now · Find Relevant Information · Quick & Easy Answers
Types: Business, Health, Travel
Loan Consolidation · Student Loan Database · Direct Loans · Student Loan Forgiveness

Searches related to income based repayment form

income based repayment form **fedloan**

**studentloans.gov income-driven** repayment **plan request**

income based repayment form **navient**

income **driven** repayment **plan calculator**

income **driven** repayment **plan request mailing address**

**fedloan** income based repayment form **pdf**

income **driven** repayment **plan request fax number**

income based repayment **disadvantages**

1  2  3  4  5  6  7  8  9  10          Next

60202, Evanston, IL · Reported by this computer - Use precise location - Learn more

Help      Send feedback      Privacy      Terms

# EXHIBIT G

1/13/2018
Case: 1:18-cv-00367 Document #: 1-1 Filed: 01/18/18 Page 115 of 131 PageID #:162
income driven repayment form - Google Search



| income driven repayment form | 🔍 |

All    News    Images    Maps    Videos    More                    Settings    Tools

Sign in

About 16,800,000 results (0.33 seconds)

**Apply For Income-Driven Repayment - StudentLoans.gov**
https://studentloans.gov/myDirectLoan/ibrInstructions.action ▼
**Income-driven repayment** (IDR) plans are designed to make your student loan debt more manageable by
reducing your monthly payment amount. ... **income-driven repayment** plan and would like to switch to
another **income-driven repayment** plan. Log in to Start. CHANGE IDR PLAN. OMB No. 1845-0102. **Form**
Approved.

**[PDF] Income-Driven Repayment Plan Request - StudentLoans.gov**
https://static.studentloans.gov/images/idrPreview.pdf ▼
If I am requesting an **income-driven repayment** plan or seeking to change **income-driven repayment**
plans, I request: • That my loan holder place me on the plan I selected in Section 2 to repay my eligible
Direct Loan or FFEL Program loans held by the holder to which I submit this **form**. • If I do not qualify for
the plan or plans ...

**Income-Driven Repayment Annual Renewal – Navient**
https://www.navient.com/loan-customers/.../income-driven-repayment-annual-renewal... ▼
Select the Complete **Income-Driven Repayment** Plan Request link. If you've filed taxes with the IRS, you
can retrieve your most recent income information electronically. If you have other loans with other
servicers, they will also be notified electronically when you apply online. There is no need to mail or fax a
paper **form** if ...

**[PDF] Income-Driven Repayment Plan Request - IFAP - U.S. Department of ...**
https://ifap.ed.gov/dpcletters/attachments/18450102IDRFINALExtended.pdf ▼
SECTION 2: REPAYMENT PLAN OR RECERTIFICATION REQUEST. READ BEFORE COMPLETING THIS
**FORM**: • You can apply online at StudentLoans.gov. It is faster and easier to complete this **form** online. •
**Income-driven repayment** plans offer many benefits, but may not be right for everyone. • You can learn
more ...

**Repayment Plans - MyFedLoan**
https://myfedloan.org/borrowers/repayment-plans/ ▼
We have several repayment options available so you can choose which works best with your budget.
Eligibility may vary ... As long as you meet the eligibility requirements and you still have time remaining
in your term, you can request to change your repayment plan. NOTE: Make ... **Income-Driven Repayment**
(IDR) Plans.

**How to Apply for Income-driven Repayment - Great Lakes**
https://mygreatlakes.org/educate/knowledge-center/income-driven-repayment.html ▼
**Income-driven repayment** plans, like Income-Based or Income-Contingent Repayment, can lower your
federal student loan payment. Learn more and how to apply.

**[PDF] income-driven repayment plan request - Edfinancial Services**
www.edfinancial.com/media/pdfs/pmt/ibrpayeicr-dl.pdf ▼
IDR. **INCOME-DRIVEN REPAYMENT** PLAN REQUEST: Income-Based Repayment (IBR), Pay As You Earn,
and Income-Contingent. Repayment (ICR) plans for the William D. Ford Federal Direct Loan (Direct
Loan). Program and Federal Family Education Loan (FFEL) Program. OMB No. 1845-0102. **Form**
Approved.

**How to Submit an Income-Driven Repayment Plan Request | Student ...**
https://studentloanhero.com/...repayment.../income-driven-repayment-plan-request/ ▼
Apr 25, 2016 - 1. Ask your student loan servicer for the **income-driven repayment** plan form. Here's a
sample, but be sure to use the one provided by your servicer, as it should include the address to which
the **form** should be mailed. 2. Fill out the **form**, attach necessary documentation, and mail to the address
as instructed.

**New 2016 Income Driven Repayment Plan Request Form Changes**
https://studentloanhero.com/featured/income-driven-repayment-plan-request-changes/ ▼
Nov 10, 2016 - In 2016, the Department of Education released new changes to the **income driven**
**repayment** plan request **form**. Find out how this will impact you.

**How to Recertify Your Income-Driven Repayment Plan Application ...**
https://studentloanhero.com/.../income-driven-repayment-plan-application-recertify/ ▼
Mar 10, 2017 - If your loan payments are based on your income, the government requires you to recertify
your **income-driven repayment** plan application each year. Learn how. ... You can either submit your
request electronically via StudentLoans.gov or submit a paper income-based repayment **form**. 3 tips to
pay off ...

1/13/2018                                     income driven repayment form - Google Search

What is income driven repayment of student loans?

Are income driven repayment plans a good idea?

Do your student loans get forgiven after 25 years?

How does income based repayment work?

Feedback

**Fillable ACS Form IDR | Edit, Sign, Print, Fill Online**
Ad www.pdffiller.com/ ▾
         Rating for pdffiller.com: 4.0 - 7,422 reviews
Download Or Email ACS IDR & More Fillable Forms, Register and Subscribe Now!
5 Star Rated · Edit On Any Device · Fast, Easy & Secure · Cancel Anytime · Paperless Workflow
Edit PDF Documents Online · PDFfiller Account Log In · Write Text in PDF Online
PDFfiller Personal - from $6.00/mo - Fill & e-Sign PDF online · More ▾

**Income Driven Repayment**
Ad www.about.com/Income+Driven+Repayment ▾
         Rating for about.com: 3.5 - 337 reviews
Search for **Income Driven Repayment**. Find Expert Advice on About.com.
100+ Topics · Trusted Guide · Trending News

**Income Driven Repayment Plan | Fast and Reliable**
Ad www.searchnow.com/Amazing_Results/Fast ▾
**Income Driven Repayment** Plan Results Available 24/7 at Searchnow.com!

## Searches related to income driven repayment form

income **based** repayment form **fedloan**

**studentloans.gov income-driven** repayment **plan request**

**ibr recertification** form

income **based** repayment form **navient**

income driven repayment **plan calculator**

income driven repayment **plan request mailing address**

**fedloan** income **based** repayment form **pdf**

income driven repayment **plan request fax number**

1 2 3 4 5 6 7 8 9 10          Next

60202, Evanston, IL - Reported by this computer - Use precise location - Learn more

Help      Send feedback      Privacy      Terms

# **EXHIBIT H**



# INCOME-DRIVEN REPAYMENT PLAN REQUEST:

**For the Revised Pay As You Earn (REPAYE), Pay As You Earn (PAYE), Income-Based (IBR), and Income-Contingent (ICR) repayment plans under the William D. Ford Federal Direct Loan (Direct Loan) and Federal Family Education Loan (FFEL) Programs**

**IDR**

OMB No. 1845-0102
Form Approved
Exp. Date 10/31/2018

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or on any accompanying document is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

## SECTION 1: BORROWER IDENTIFICATION

Please enter or correct the following information.

☑ **Check this box if any of your information has changed.**

|  |  |
|---|---|
| SSN | REDACTED |
| Name | Stacey E Puccini |
| Address |  |
| City, State, Zip Code |  |
| Telephone - Primary |  |
| Telephone - Alternate |  |
| Email (Optional) |  |

## SECTION 2: REPAYMENT PLAN OR RECERTIFICATION REQUEST

**READ BEFORE COMPLETING THIS FORM:**

- You can apply online at StudentLoans.gov. It is faster and easier to complete this form online.
- Income-driven repayment plans offer many benefits, but may not be right for everyone.
- You can learn more about these plans at StudentAid.gov/IDR and by reading Sections 9 and 10.
- It's simple to explore all of your repayment options at StudentAid.gov/repayment-estimator.
- You can find out which types of loans you have and who your loan holder or servicer is at nslds.ed.gov.
- If you need help completing this request, contact your loan holder or servicer for free assistance.
- You may have to pay income tax on any loan amount forgiven under an income-driven plan.

**1. Select the reason you are submitting this form (Check only one):**

- ☐ I am not in an income-driven repayment plan, but want to enter one - Continue to Item 2.
- ☐ I am already in an income-driven repayment plan and am submitting documentation for the annual recalculation of my payment - Skip to Item 5.
- ☐ I am already in an income-driven repayment plan and am submitting documentation early because I want my loan holder to recalculate my payment immediately - Skip to Item 5.
- ☑ I am already in an income-driven repayment plan, but want to change to a different income-driven repayment plan - Continue to Item 2.

**2. Choose a plan and then continue to Item 3.**

- ☑ (Recommended) I want my loan holder to place me on the plan with the lowest monthly payment.
  - ☐ REPAYE   ☐ IBR
  - ☐ PAYE    ☐ ICR

**3. Do you have multiple loan holders or servicers?**

- ☐ Yes - Submit a separate request to each loan holder or servicer. Continue to Item 4.
- ☑ No - Continue to Item 4.

**4. Are you currently in a deferment or forbearance?**

- ☐ No - Continue to Item 5.
- ☑ Yes, but I want to start making payments under my plan immediately - Continue to Item 5.
- ☐ Yes, but I do not want to start repaying my loans until the deferment or forbearance ends - Continue to Item 5.

---

**If you have FFEL Program loans**, they may only be repaid under IBR. If you request a different plan, your loan holder will consider you for IBR on your FFEL Program loans. You may be able to consolidate your FFEL Program loans into a Direct Consolidation Loan to take advantage of other income-driven plans by visiting **StudentLoans.gov**.

| Borrower Name: | Stacey E Puccini | Borrower SSN: |
|---|---|---|

## SECTION 3: FAMILY SIZE INFORMATION

**5.** How many children, including unborn children, are in your family and receive more than half of their support from you?

_1_ . Continue to Item 6.

> A definition of "family size" is available in Section 9. Do not enter a value for you or your spouse. Those values are automatically included, if appropriate.

**6.** How many people, excluding your spouse and children, live with you, and receive more than half of their support from you?

_0_ . Continue to Item 7.

**REDACTED**

**7.** What is your marital status?

☑ Single - <u>Continue to Item 8.</u>

☐ Married - <u>Skip to Item 11.</u>

## SECTION 4A: INCOME INFORMATION FOR SINGLE BORROWERS

**8.** Did you file a federal income tax return for either of the past two tax years?

*(removed)*

☑ Yes - <u>Continue to Item 9.</u>

☐ No - <u>Skip to Item 10.</u>

**9.** Has your income significantly changed since you filed your last federal income tax return? For example, have you lost your job, gotten divorced, or experienced a drop in income?

☐ Yes - <u>Continue to Item 10.</u>

☑ No - Provide your most recent federal income tax return or transcript. <u>Skip to Section 6.</u>

**10.** Do you currently have taxable income? Check "No" if you do not have any income or receive only untaxed income.

☐ Yes - <u>Skip to Section 5.</u>

☐ No - <u>Skip to Section 6.</u>

> Remember, any person who makes a knowingly false statement or misrepresentation on this form may be subject to fines, imprisonment, or both.

## SECTION 4B: LOAN AND INCOME INFORMATION FOR MARRIED BORROWERS

**11.** Does your spouse have federal student loans?

☐ Yes - <u>Continue to Item 12.</u>

☐ No - <u>Skip to Item 14.</u>

**12.** Provide the following information about your spouse and then continue to Item 13:

a. Spouse's SSN:

_____ - __ - ____

b. Spouse's Name

_____

c. Spouse's Date of Birth

_____

**13.** If you are placed on the ICR plan, do you want to repay your Direct Loans jointly with your spouse?

☐ Yes - <u>Continue to Item 14.</u>

☐ No - <u>Continue to Item 14.</u>

**14.** When you filed your last federal income tax return, did you file jointly with your spouse?

☐ Yes - <u>Continue to Item 15.</u>

☐ No - <u>Skip to Item 20.</u>

**15.** Did you and your spouse file a federal income tax return for either of the past two tax years?

☐ Yes - <u>Continue to Item 16.</u>

☐ No - <u>Skip to Item 18.</u>

**16.** Has your income significantly changed since you filed your last federal income tax return? For example, have you lost your job or experienced a drop in income?

☐ Yes - <u>Skip to Item 18.</u>

☐ No - <u>Continue to Item 17.</u>

**17.** Has your spouse's income significantly changed since your spouse filed his or her last federal income tax return? For example, has your spouse lost his or her job or experienced a drop in income?

☐ Yes - <u>Continue to Item 18.</u>

☐ No - Provide your and your spouse's most recent federal income tax return or transcript. <u>Skip to Section 6.</u>

**18.** Do you currently have taxable income? Check "No" if you do not have any income or receive only untaxed income.

☐ Yes - Provide documentation of your income as instructed in <u>Section 5.</u> Continue to Item 19.

☐ No - <u>Continue to Item 19.</u>

> Remember, any person who makes a knowingly false statement or misrepresentation on this form may be subject to fines, imprisonment, or both.

IDRPR-XIBR

| Borrower Name: | Stacey E Puccini | Borrower SSN: | - / - |
|---|---|---|---|

## SECTION 4B: LOAN AND INCOME INFORMATION FOR MARRIED BORROWERS (CONTINUED)

**19. Does your spouse currently have taxable income?**
Check "No" if your spouse has no taxable income or receives only untaxed income.
- ☐ Yes - Provide documentation of your spouse's income as instructed in Section 5.
- ☐ No - Skip to Section 6.

**20. Did you file a federal income tax return for either of the past two years?**
- ☐ Yes - Continue to Item 21.
- ☐ No - Skip to Item 22.

**21. Has your income significantly changed since you filed your last federal income tax return?** For example, have you lost your job or experienced a drop in income?
- ☐ Yes - Continue to Item 22.
- ☐ No - Provide your most recent federal income tax return or transcript. Skip to Item 23.

**22. Do you currently have taxable income?** Check "No" if you have no taxable income or receive only untaxed income.
- ☐ Yes - Provide documentation of your income as instructed in Section 5. Continue to Item 23.
- ☐ No - Continue to Item 23.

**23. Are you separated from your spouse?**
- ☐ Yes - Provide documentation of only your income as instructed in Item 21 or 22 and then skip to Section 6.
- ☐ No - Continue to Item 24.

**24. Are you reasonably able to access information about your spouse's income and able to have your spouse sign this application?**
- ☐ Yes - Continue to Item 25.
- ☐ No - Provide documentation of only your income as instructed in Item 21 or 22 and then skip to Section 6.

**25. Did your spouse file a federal income tax return for either of the past two tax years?**
- ☐ Yes - Continue to Item 26.
- ☐ No - Skip to Item 27.

**26. Has your spouse's income significantly changed since your spouse filed his or her last federal income tax return?** For example, has your spouse lost a job or experienced a drop in income?
- ☐ Yes - Continue to Item 27.
- ☐ No - Provide your spouse's most recent federal income tax return or transcript. This information will only be used for the REPAYE Plan. Skip to Section 6.

**27. Does your spouse currently have taxable income?** Check "No" if your spouse has no taxable income or received only untaxed income.
- ☐ Yes - Provide documentation of your spouse's income as instructed in Section 5. This information will only be used for the REPAYE Plan.
- ☐ No - Skip to Section 6.

> Remember, any person who makes a knowingly false statement or misrepresentation on this form may be subject to fines, imprisonment, or both.

## SECTION 5: INSTRUCTIONS FOR DOCUMENTING CURRENT INCOME

**You only need to follow these instructions if, based on your answers in Section 4, you and your spouse (if applicable) are required to provide documentation of your current income instead of a tax return or tax transcript. After gathering the appropriate documentation, continue to Section 6.**

- You must provide documentation of **all taxable income** you and your spouse currently receive.
- **Documentation will usually include** a pay stub or letter from your employer listing your gross pay.
- You must provide at least **one piece** of documentation for each source of taxable income.
- **Taxable income includes,** for example, income from employment, unemployment income, dividend income, dividend income, interest income, tips, and alimony.
- Do not provide documentation of **untaxed income** such as Supplemental Security Income, child support, or federal or state public assistance.

- **If documentation is not available or you want to explain your income,** attach a signed statement explaining each source of income and giving the name and the address of each source of income.
- Write on your documentation **how often you receive the income,** for example, "twice per month" or "every other week."
- The **date** on any supporting documentation you provide must be **no older than 90 days** from the date you sign this form.
- Copies of documentation are acceptable.

IDRPR-XIBR

| Borrower Name: | Stacey E Puccini | Borrower SSN: |
|---|---|---|

## SECTION 6: BORROWER REQUESTS, UNDERSTANDINGS, AUTHORIZATION, AND CERTIFICATION

If I am requesting an income-driven repayment plan or seeking to change between income-driven repayment plans, **I request:**

- That my loan holder place me on the plan I selected in Section 2 to repay my eligible Direct Loan or FFEL Program loans held by the holder to which I submit this form.

- If I do not qualify for the plan or plans I requested, that my loan holder place me on the plan with the lowest monthly payment amount.

- If I selected more than one plan, that my loan holder place me on the plan with the lowest monthly payment amount from the plans that I requested.

- If more than one of the plans that I selected provides the same initial payment amount, or if my loan holder is determining which income-driven plans I qualify for and I qualify for more than one of those plans, my loan holder will use the following order in choosing my plan: REPAYE (if my repayment period is 20 years), PAYE, REPAYE (if my repayment period is 25 years), IBR and then ICR.

If I am currently repaying my Direct Loans under the IBR plan and am requesting to change to another income-driven plan, I must be placed on the Standard Repayment Plan, and cannot change to the plan that I requested until I make a payment under the Standard Repayment Plan or make a payment under a reduced-payment forbearance.

If I check the box below, **I request** that my loan holder grant me a reduced-payment forbearance for one month so that I can move from the IBR plan to my new income-driven repayment plan.

☐ I want a one-month reduced-payment forbearance in the amount of _____ (must be at least $5).

I understand that:

- If I do not provide my loan holder with this completed form and any other required documentation, I will not be placed on the plan that I requested.

- I may choose a different repayment plan for any student loans that are not eligible for income-driven repayment.

- If I requested a reduced-payment forbearance of less than $5 above, my loan holder will grant my forbearance request in the amount of $5.

- If I am requesting the ICR plan, my initial payment amount will be the amount of interest that accrues each month on my loan until my loan holder receives the income documentation needed to calculate my payment amount. If I cannot afford the initial payment amount, I may request a forbearance by contacting my loan holder.

- If I have FFEL Program loans, my spouse may be required to give my loan holder access to his or her loan information in the National Student Loan Data System (NSLDS). My loan holder will contact me with further instructions.

- My loan holder may grant me a forbearance while processing my application or to cover any period of delinquency that exists when I submit my application.

I **authorize** the loan holder to which I submit this request (and its agents or contractors) to contact me regarding my request or my loan(s), including repayment of my loan(s), at any number that I provide on this form or any future number that I provide for my cellular telephone or other wireless device using automated telephone dialing equipment or artificial or prerecorded voice or text messages.

I **certify** that all of the information I have provided on this form and in any accompanying documentation is true, complete, and correct to the best of my knowledge and belief.

Borrower's Signature _____  Date: _05/24/2017_

Spouse's Signature _____  Date: _____

**If you are married, your spouse is required to sign this form unless you answered "yes" to Item 23 or "no" to Item 24.**

IDRPR-XIBR

# EXHIBIT I

 

**fedloan** SERVICING | U.S. Department of Education
Information about your federal student loan

**WE WERE UNABLE TO PROCESS YOUR REQUEST.**

**YOU MAY STILL HAVE OPTIONS.**

June 22, 2017

STACEY E PUCCINI

Account Number: 5696



REDACTED

We reviewed your Income-Driven Repayment (IDR) plan form and could not process your request for the following reasons. The reasons below will detail what actions you need to take so we can continue processing your request. If we do not receive the updated documentation as soon as possible, we may have to cancel your request and then you will need to start the process of applying for an IDR plan again.

**NOT ELIGIBLE YET:** The version of the form you submitted is expired. The easiest way to reapply is online at StudentLoans.gov. If you prefer, complete and return the enclosed form with all required documents.

**Good to Know**

- We may have applied a forbearance to cover any past due payments and any payments that are actively due. A separate letter detailing the forbearance and the dates it was applied for will be sent. Please note, you will still be responsible for any future payments at your current monthly payment amount. If applicable, return any missing information detailed above as soon as possible so we can continue to process your request for an IDR plan and hopefully reduce your monthly payment amount.

- Your IDR form is only valid for 90 days after the date you originally signed it. Therefore, please return your supporting documentation to us as soon as possible.

# <u>EXHIBIT J</u>



**fedloan** SERVICING

**U.S. Department of Education**
Information about your federal student loan

**WE WERE UNABLE TO PROCESS YOUR REQUEST.**

**YOU MAY STILL HAVE OPTIONS.**

July 27, 2017



STACEY E PUCCINI

**Account Number:** ▮▮▮5696

## REDACTED

We reviewed your Income-Driven Repayment (IDR) plan form and could not process your request for the following reasons. The reasons below will detail what actions you need to take so we can continue processing your request. If we do not receive the updated documentation as soon as possible, we may have to cancel your request and then you will need to start the process of applying for an IDR plan again.

**NOT ELIGIBLE YET:** You provided conflicting information in Section 4 on the form you submitted. The easiest way to reapply is online at StudentLoans.gov. If you prefer, complete and return the enclosed form with all required documents.

**Good to Know**

- We may have applied a forbearance to cover any past due payments and any payments that are actively due. A separate letter detailing the forbearance and the dates it was applied for will be sent. Please note, you will be responsible for any future payments at your current monthly payment amount. If applicable, return any missing information detailed above as soon as possible so we can continue to process your request for an IDR plan and hopefully reduce your monthly payment amount.

- Your IDR form is only valid for 90 days after the date you originally signed it. Therefore, please return your supporting documentation to us as soon as possible.

WEB10    FS06ODNIDR  7605415696    ENOTIFY    27219172070002312

**ELIGIBILITY CRITERIA FOR AN INCOME-BASED REPAYMENT PLAN**
You may qualify to repay your loans under the IBR Plan if you have eligible loans and have a partial financial hardship.

**Partial Financial Hardship**
You are considered to have a partial financial hardship if the annual amount due on all of your eligible loans, as calculated under a standard repayment plan with a 10-year repayment period, is more than 15% (or 10% if you are a new borrower) of the difference between your adjusted gross income (AGI) and 150% of the poverty guideline amount for your family size and state. If you are married and file a joint federal tax return with your spouse, your AGI includes both your income and your spouse's income. In addition, if you file a joint federal tax return and your spouse has eligible loans, those loans can be considered when determining if you have a partial financial hardship.

New Borrower: You are considered a new borrower if you have no outstanding balance on a Direct Loan or FFEL Program Loan as of 7/1/14 or have no outstanding balance on a Direct Loan or FFEL Program Loan when you obtain a Direct Loan on or after 7/1/14.

**Eligible Loans**

- Direct Subsidized Loans
- Direct Unsubsidized Loans
- Direct Consolidation Loans that did not repay a parent PLUS loan
- Direct student PLUS loans made to graduate or professional students
- Federal Family Education Loan (FFEL) Stafford Loans (subsidized and unsubsidized)
- FFEL student PLUS loans made to graduate and professional students
- FFEL SLS Loans
- FFEL Consolidation loans that did not repay a parent PLUS loan

The following loans are not eligible: Direct PLUS Consolidation Loans, Direct parent PLUS Loans, FFEL parent PLUS Loans, Direct Consolidation Loans or FFEL Consolidation Loans that repaid a parent PLUS loan, and loans on which you are in default.

To enroll in the IBR Plan, you must complete the appropriate form and provide a copy of your most recently filed federal income tax form or alternative documentation of your income if you are not required to file federal income taxes or if your situation has changed since you last filed federal income taxes.

**ELIGIBILITY CRITERIA FOR AN INCOME-CONTINGENT REPAYMENT PLANS**
You may qualify to repay your loans under the ICR Plan if you have eligible loans and you provide the required documentation.

**Requirements**

- You must provide a copy of your most recently filed federal income tax return.
- If you are not required to file a federal income tax return, you must provide alternative documentation of your income.
- If you are married and filed a separate federal income tax return, you must provide a copy of your spouse's most recently filed federal tax return, unless you are separated from your spouse.
- You must provide documentation of your (and your spouse's, if applicable) income on an annual basis.

**Eligible Loans**
All Direct Loan Program loans are eligible for the ICR plan except for Direct parent PLUS Loans and Direct PLUS Consolidation Loans *Excludes PLUS Loans made to parent borrowers and PLUS Consolidation Loans. A Direct Consolidation Loan made on or after July 1, 2006 that repaid a parent PLUS Loan is eligible for ICR.

To request the ICR Plan, you must complete the appropriate form and provide a copy of your most recently filed federal income tax form or alternative documentation of your income if you are not required to file federal income taxes or if your situation has changed since you last filed federal income taxes.

**ELIGIBILITY CRITERIA FOR THE PAY AS YOU EARN REPAYMENT PLANS**
You may qualify to repay your eligible Direct Loans under the Pay As You Earn repayment plan if you are a new borrower and have a partial financial hardship.

**New Borrower for Pay As You Earn**
You are a new borrower for the Pay As You Earn plan if **(1)** you have no outstanding balance on a Direct Loan or FFEL program loan as of October 1, 2007, or have no outstanding balance on a Direct Loan or FFEL program loan when you obtain a new loan on or after October 1, 2007, and **(2)** you receive a disbursement of a Direct Subsidized Loan, Direct Unsubsidized Loan, or student Direct PLUS loan on or after October 1, 2011, or you receive a Direct Consolidation Loan based on an application received on or after October 1, 2011. However, you are **not** considered a new borrower if the Direct Consolidation Loan you received repaid loans that would make you ineligible under part **(1)** of this definition.

**Partial Financial Hardship**
You are considered to have a partial financial hardship if the annual amount due on all of your eligible loans, as calculated under a standard repayment plan with a 10-year repayment period, is more than 10% of the difference between your adjusted gross income (AGI) and 150% of the poverty guideline amount for your family size and state. If you are married and file a joint federal tax return with your spouse, your AGI includes both your income and your spouse's income. In addition, if you file a joint federal tax return and your spouse has eligible loans, those loans can be considered when determining if you have a partial financial hardship.

**Eligible Loans for Pay As You Earn**

- Direct Subsidized Loans
- Direct Unsubsidized Loans
- Direct Consolidation Loans that did not repay a parent PLUS loan
- Direct student PLUS Loans made to graduate or professional students

The following loans are not eligible: Direct parent PLUS Loans, Direct Consolidation Loans that repaid a Direct or FFEL parent PLUS Loan, FFEL Program Loans, and loans on which you are in default.

To apply for the **Pay As You Earn** Plan, you must complete the appropriate form and provide a copy of your most recently filed federal income tax form or alternative documentation of your income if you are not required to file federal income taxes or if your situation has changed since you last filed federal income taxes.

**Click the following link to access your form: <u>Income-Driven Repayment Plan Request Form</u>**

# **<u>EXHIBIT K</u>**



# fedloan
## SERVICING

Welcome,

Paperless Inbox

File U...

- Account Summary
- **Paperless Inbox**
- Account Related Letters
- Billing Statements

## Paperless Inbox

## Would you like to Go Paperless?

We've made it easy to go paperless, so there's no reason to keep getting paper communication in the mail. Our FREE service reduces clutter and helps the environment too!

**Go Paperless >**

## Account Related Letters

| Date | Subject | Delivery Method |
|------|---------|-----------------|
| 12/23/2017 | Your Repayment Plan is Ending | Paper |

# **<u>EXHIBIT L</u>**

